IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| CHINESE PROGRESSIVE ASSOCIATION, ) | |
| CHINATOWN RESIDENT ASSOCIATION, ) | |
| CITY LIFE / VIDA URBANA, SIU TSANG, ) | |
| FUNG YUNG, YAN HUI, MARIA ALTRECHE, ) | |
| ) | |
| Proposed Plaintiff-Intervenors ) | |
| ) | CIVIL ACTION No. |
| v. ) | 05-11598WGY |
| ) | |
| CITY OF BOSTON, MASSACHUSETTS; THOMAS M. ) | |
| MENINO, in his official capacity as ) | MEMORANDUM |
| Mayor of the City of Boston; ) | OF LAW |
| BOSTON CITY COUNCIL: MICHAEL F. ) | |
| FLAHERTY, PAUL J. SCAPICCHIO, JAMES M. ) | |
| KELLY, MAUREEN E. FEENEY, CHARLES C. ) | THREE-JUDGE COURT |
| YANCEY, ROB CONSALVO, JOHN TOBIN, CHUCK ) | WGY, SL, PS |
| TURNER, MICHAEL P. ROSS, JERRY P. ) | |
| MCDERMOTT, FELIX D. ARROYO, MAURA ) | |
| HENNIGAN, STEPHEN J. MURPHY; BOSTON ) | |
| ELECTION DEPARTMENT; GERALDINE CUDDYER, ) | |
| in her official capacity as Chair of ) | |
| the Boston Election Department, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
ASIAN AMERICAN AND LATINOS' MOTION TO INTERVENE AS PLAINTIFFS**

PRELIMINARY STATEMENT

Proposed Plaintiff-Intervenors seek permission to intervene in this action by the United States against the City of Boston. The action seeks injunctive and declaratory relief respecting Defendants' violations of the voting rights of certain limited English proficient citizens of the

City of Boston ("City" or "Boston"). Proposed Plaintiff-Intervenors are Chinese American and Latino voters with limited proficiency in English who reside in Boston, and Chinese American and Latino organizations of Boston that represent and advocate for similarly situated Asian American and Latino citizens, all of whom have suffered as a result of these voting rights violations. Intervention would allow these Asian American and Latino citizens and community organizations to protect fundamental voting rights in future elections by (a) presenting personal evidence of conduct by the City that, under the totality of the circumstances, is effectively discriminatory and in violation of the Voting Rights Act of 1965, 28 U.S.C. §1973, (b) obtaining judicial redress to prevent future harm and enhance equal access to the electoral process, and (c) being properly positioned to enforce an appropriate judicial remedy whether implemented by consent decree or judgment. For these and similar reasons, language minorities often are granted leave to intervene in voting rights disputes. See, e.g., Diaz v. Silver, 978 F. Supp. 96 (E.D.N.Y. 1997) (granting intervention to Asian Americans in a suit challenging a congressional redistricting plan); see also U.S. House of Representatives v. U.S. Dep't of Commerce, 11 F. Supp. 2d 76 (D.D.C. 1998), aff'd sub nom. Dep't of Commerce v. U.S. House of Representatives, 525 U.S. 316 (1999) (granting intervention to Asian Americans in a suit over the use of statistical sampling in the census). Accordingly, this Court should grant the Proposed Plaintiff-Intervenors' motion to permissively intervene because intervention would further a full and just adjudication in this action and is consistent with the goals of intervention.

STATEMENT OF FACTS

On July 29, 2005, the United States filed a complaint against the City of Boston, Massachusetts; Thomas M. Menino; Boston City Council: Michael F. Flaherty, Paul J. Scapicchio, James M. Kelly, Maureen E. Feeney, Charles C. Yancey, Rob Consalvo, John Tobin,

Chuck Turner, Michael P. Ross, Jerry P. McDermott, Felix D. Arroyo, Maura Hennigan, Stephen J. Murphy; Boston Election Department; and Geraldine Cuddyer; alleging violations of Sections 2 and 203 of the Voting Rights Act of 1965, as amended, 42 U.S.C. §§ 1973, 1973aa-1a. (Pl. Compl. ¶¶ 16, 21.) The United States alleges that Defendants, in violation of the Voting Rights Act, have failed to provide Boston's limited English proficient Latino citizens with Spanish-language election information and assistance. (Id. at ¶ 16.) The United States also alleges that Defendants have enforced standards, practices, or procedures that deny limited English proficient Latino and Asian American voters an equal opportunity to participate in the political process to elect candidates of their choice on an equal basis with other citizens. (Id. at ¶ 21.)

Proposed Plaintiff-Intervenors Siu Tsang, Fung Yung, Yan Hui, and Maria Altreche are limited English proficient, registered voters who reside in Boston. (Tsang Decl.; Yung Decl.; Hui Decl.; Altreche Decl.) They desire to participate in the electoral process equally with other citizens. They desire to preserve their rights under the Voting Rights Act of 1965.

Proposed Plaintiff-Intervenor the Chinese Progressive Association ("CPA") is a representative, nonpartisan organization that promotes the involvement of Chinese Americans in the electoral process and provides services to limited English proficient Chinese Americans. (Lowe Decl.) It desires to protect the rights of its constituents and members under the Voting Rights Act of 1965.

Proposed Plaintiff-Intervenor Chinatown Resident Association ("CRA") is a representative, nonpartisan Chinese American community organization located in Boston. The members of CRA's steering committee represent all the areas of Boston's Chinatown. CRA organizes and advocates on behalf of the residents of Boston's Chinatown. It desires to protect the rights of its constituents under the Voting Rights Act of 1965. (Yee Decl.)

Proposed Plaintiff-Intervenor City Life / Vida Urbana is a representative, nonpartisan Latino "grassroots community" organization located in Boston. It promotes racial, social, and economic justice through direct action, coalition-building, education, and advocacy. It desires to protect the rights of its constituents under the Voting Rights Act of 1965. (Leyton Decl.)

Thus, like the United States, each of the proposed Plaintiff-Intervenors has a cognizable, direct, and tangible interest to ensure for themselves and others that Boston affords all of its citizens a fair, open, and equal opportunity to participate meaningfully in the electoral process. As citizens and as advocacy organizations, they deserve the ability to defend these voting rights and to preserve their rights to enforce a judgment from the court, as parties to this action. And as parties truly aggrieved, they, like the United States, are entitled to (a) a permanent injunction to stop Defendants' practices and procedures that deny or abridge the voting rights of Asian American and Latino citizens and (b) a remedial program that provides Asian American and Latino citizens the opportunity to participate fully in the political process by providing, among other things, the most fundamental information necessary to cast an informed ballot—a ballot in a language these voters can understand. (Pl. Compl. at 7–8; Proposed Pl.-Intervenors Compl.-in-Intervention at 9–13.) Accordingly, on September 9, 2005, Proposed Plaintiff-Intervenors filed their motion to intervene in this action, and, in accordance with Rule 24(b) of the Federal Rules of Civil Procedure, a proposed complaint-in-intervention. (Proposed Pl.-Intervenors Compl.-in-Intervention.)

ARGUMENT

For the reasons set forth here as supported by the simultaneously-filed declarations of Lydia Lowe, Henry Yee, Juan Leyton, Siu Tsang, Fung Yung, Yan Hui, and Maria Altreche, this Court should grant the Proposed Plaintiff-Intervenors' motion for permissive intervention. First,

Plaintiff-Intervenors clearly have standing to seek redress for Boston's failure to comply with the Voting Rights Act and to intervene in this action. Second, the standards for permissive intervention are undoubtedly satisfied in this case. In addition, Proposed Plaintiff-Intervenors understand that, as a general matter, the United States does not oppose permissive intervention by parties like the Proposed Plaintiff-Intervenors in actions like this one..

I.      **Proposed Plaintiff-Intervenors have standing to intervene.**

   A.      **The named Asian American and Latino citizens have standing.**

An individual plaintiff has standing to intervene in an action if (1) he has suffered an injury that is concrete and actual, (2) the injury is "fairly traceable to the challenged action of the defendant," and (3) it is likely that the injury will be "redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180–81 (2000).

In this case, each of the individual named Plaintiff-Intervenors is a limited English proficient citizen registered, or entitled to be registered, to vote in Boston. (Tsang Decl. ¶¶ 1, 2; Yung Decl. ¶¶ 1, 2; Hui Decl. ¶¶ 1, 3; Altreche Decl. ¶¶ 1, 2.) Each desires to exercise his right to vote freely and on an informed basis. (Tsang Decl. ¶ 2; Yung Decl. ¶ 2; Hui Decl. ¶¶ 3, 4; Altreche Decl. ¶ 9.) Each individual Plaintiff-Intervenor's right to participate in the electoral process in the same meaningful way as other citizens has been abridged or denied in recent elections administered by Defendants in violation of the Voting Rights Act.[1] (Tsang Decl. ¶¶ 3–

---

[1] Defendants effectively administer elections in Boston and thus are responsible for these voting rights violations. (See Proposed Pl.-Intervenors Compl.-in-Intervention ¶¶ 11–16.) Defendant City of Boston is a geographical and political subdivision of the Commonwealth of Massachusetts and exists as a charter city organized pursuant to the laws of Massachusetts. Defendant Mayor Thomas M. Menino appointed members of the Election Department and selects election officers. Defendant City Council and Defendants Members of the City Council adopt appropriations and make bylaws or ordinances, including those which impose duties on departments and department heads responsible for elections in the City. Defendant Election Department conducts voter registration and elections held in the City. Defendant Geraldine Cuddyer chairs the Election Department.

5; Yung Decl. ¶ 3; Hui Decl. ¶ 3; Altreche Decl. ¶¶ 6, 7.) Each seeks remedies for these violations in this action. (Tsang Decl. ¶ 6; Yung Decl. ¶ 4; Hui Decl. ¶ 4; Altreche Decl. ¶ 9.) And in this action, the United States seeks remedies unquestionably intended to address the types of injuries suffered by Plaintiff-Intervenors. (See Pl. Compl. ¶¶ 23–25.)

Individual Plaintiff-Intervenors thus have standing to pursue claims and intervene in this action. They have suffered concrete and direct injury — it is their voting rights that have been abridged or denied. This injury is fairly traceable to the conduct (or lack of conduct) by the Defendants who are responsible for administering elections in the City. In addition, a favorable decision for the United States in this action would redress the very injuries of which the individual Plaintiff-Intervenors complain: improper barriers to being able to vote. See Friends of the Earth 528 U.S. at 180–81.

**B.     The organizations representing Asian American and Latino citizens also have standing.**

The organization Proposed-Intervenors also have standing to intervene in this action under two alternative theories. First, these organizations have standing to intervene under the same standard applied to determine the standing of the individual Plaintiff-Intervenors: (1) the organizations have suffered concrete and actual injury, (2) the injury suffered is "fairly traceable to the challenged action of the defendant," and (3) it is likely that the injury will be "redressed by a favorable decision." Id.

1.     For each organization, its injury is actual and concrete. It has been required to expend money on voter registration, voter education, voter orientation, and organization for the expansion of political participation of Chinese Americans or Hispanic Americans, as applicable, in Boston. (Lowe Decl. ¶¶ 6–9; Yee Decl. ¶ 5; Leyton Decl. ¶ 6.)

2.  In addition, each organization's injury is fairly traceable to Defendants' abridgment of the voting rights of limited English proficient Chinese Americans and Latinos and Defendants' failure to correct barriers to voting faced by Asian American and Latino voters. Were Defendants providing election information in Chinese and Spanish, these organizations would not be required to provide the most fundamental education to these American citizens on voting procedures and rights—information on a ballot in a way that is clearly understandable by them. (Lowe Decl. ¶¶ 7, 9; Leyton Decl. ¶ 6.)

3.  Furthermore, a favorable decision in this case would redress the injury suffered by these organizations. They would not need to continue to spend money on certain fundamental functions of voter education and organization because Defendants would be providing election information—information about how and where to vote and bilingual ballots—to enable Chinese and Latino individuals of limited English proficiency to vote, and these citizens would be able to participate in the electoral process without organizing collectively.

Alternatively, these organizations have standing because their members have standing and their purpose is to assist their members in exercising their voting rights. Under Friends of the Earth, an organization also has standing to bring an action if (1) its members would otherwise have standing to sue, (2) the interests at stake are "germane to the organization's purpose," and (3) the claim and the relief requested do not require the participation of individual members. Friends of the Earth, 528 U.S. at 181.

CPA is a community organization whose mission is to work for full equality and empowerment of the Chinese community in the City of Boston. (Lowe Decl. ¶ 2.) Its members, including Chinese American citizens registered to vote in Boston, would have standing to intervene in this action as individuals. See supra Part I.A. The interests at stake in this action — Chinese Americans' free exercise of their right to vote and their effective participation in the electoral process — are the very interests this organization works to protect and promote. (Lowe Decl. ¶ 2.) CPA has worked for many years to increase Chinese American participation in the electoral process in Boston. (Id. at ¶ 9.) Its work includes voter registration, voter education, and organizing on behalf of voting rights. (Id. at ¶ 8.)

Similarly, CRA is a community organization that represents citizens from all areas of Boston's Chinatown. (Yee Decl. ¶ 2.) Its members include Chinese citizens of limited English proficiency. (Id. at ¶ 3.) These members, as limited English proficient Chinese American citizens registered to vote in Boston, would have standing to intervene in this action as individuals. See supra Part I.A. The interests at stake in this action are the interests this organization works to promote: Chinese Americans' participation in the electoral process is central to the effectiveness of CRA's advocacy work with the Chinatown community. (Yee Decl. ¶ 3.)

City Life/Vida Urbana's members also have suffered injury and have standing. City Life/Vida Urbana is a community organization that represents Hispanic citizens of Boston. (Leyton Decl. ¶ 2.) Its members include Latino citizens of limited English proficiency. (Id. at ¶ 4.) These members, as limited English proficient Latino citizens registered to vote in Boston, would have standing to intervene in this action as individuals. See supra Part I.A. City Life/Vida Urbana promotes racial justice through organizing of Latino citizens and advocacy on

their behalf. (Leyton Decl. ¶ 3.) The interests at stake in this action are the interests this organization works to promote: Free exercise of their right to vote is central to Hispanic citizens' ability to achieve equality and justice.

None of the organization Plaintiff-Intervenors requires the participation of individual members to prosecute or prove claims that voting rights have been abridged. Each has evidence from its work with voters of the denial or abridgment of the right to vote of its members.

Similarly, implementing the relief requested, an injunction and a remedial program, does not require the participation of individual members of these organizations. (See Proposed Pl.-Intervenors Compl.-in-Intervention at 9–13.) Ending the abridgement of voting rights and providing bilingual information and assistance would benefit the organizations' entire limited English proficient membership equally. In contrast, were this action one for money damages, one could contend that the participation of individual members of these organizations would be necessary in order to allocate and calculate damages. See, e.g., Bermudez v. Hernandez, 245 F. Supp. 2d 383 (D.P.R. 2003); Organization of Minority Vendors v. Illinois C. G. R.R., 579 F. Supp. 574, 589–90 (N.D. Ill. 1983).

It, therefore, is clear that, as with the individual Plaintiff-Intervenors, the organization Plaintiff-Intervenors have standing to pursue claims against the City.

**II.     Proposed Plaintiff-Intervenors' motion to intervene otherwise satisfies all the requirements of intervention.**

A party may intervene in an action when its "claim or defense and the main action have a question of law or fact in common" and its application is "timely" and will not "unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b). The requirements for permissive intervention are "low." Mass. Food Ass'n v. Mass. Alcoholic Beverages, 197 F.3d 560, 568 (1st Cir. 1999). A federal court has broad discretion in granting

permissive interventions. Stringfellow v. Concerned Neighbors in Action, 480 U.S. 370, 382 (1987). A district court in the First Circuit "can consider almost any factor rationally relevant." Daggett v. Comm'n on Governmental Ethics and Election Practices, 172 F.3d 104, 113 (1st Cir. 1999). And while a district court can consider myriad factors in deciding whether to permit intervention, an applicant's claim should both have more than a tangential relationship to the main action, see U.S. v. Metro. Dist. Comm'n, 761 F. Supp. 206, 207 (D. Mass. 1991), and yet its claim should not be so similar that it is identical to claims of the main plaintiff. There is little value in intervention by parties presenting no new claims or arguments. See Resolution Trust Corp. v. City of Boston, 150 F.R.D. 449, 455 (D. Mass 1993); Maine v. Norton, 203 F.R.D. 22, 29 (D. Me. 2001). Here, all these prerequisites for intervention are met. The claims asserted by the Proposed Plaintiff-Intervenors are substantially related, but not identical, to those asserted by the United States. And it simply would not be efficient to the litigation process for these claims to be heard separately. In contrast, it will be efficient and appropriate for relief granted on the related, but not identical, claims to be enforced together.

    A.    **Proposed Plaintiff-Intervenors' claim has questions of law and fact in common with the main action and presents additional facts and arguments.**

Like the United States, Proposed Plaintiff-Intervenors allege violations of Sections 2 and 203 by Defendants. (Pl. Compl. ¶¶ 16, 21; Proposed Pl.-Intervenors Compl.-in-Intervention ¶¶ 27, 32.) Like the United States, the Proposed Plaintiff-Intervenors base their claims on Defendants' discriminatory treatment of Asian American and Latino voters, their failure to provide bilingual assistance after repeated requests, and their turning away of Asian American and Latino voters seeking to vote. (Pl. Compl. ¶¶ 15, 20; Proposed Pl.-Intervenors Compl.-in-Intervention ¶¶ 18, 24.) Because the Proposed Plaintiff-Intervenors present common questions of law and fact as those raised by the United States, intervention would promote judicial

economy. Intervention would prevent Defendants and Proposed Plaintiff-Intervenors from having to assert and prove similar issues and claims in another action.

The Proposed Plaintiff-Intervenors also present facts and arguments supporting additional and potentially different claims for relief against the City, including claims that: the City has provided inadequate poll site information, imposed improper identification requirements on voters, and maintained inadequate voter rolls. (Proposed Pl.-Intervenors Compl.-in-Intervention ¶ 18.) The Proposed Plaintiff-Intervenors also seek additional remedies, such as translated voting materials, bilingual publicity, interpreters, poll site monitoring, and improved poll worker training. (Proposed Pl.-Intervenors Compl.-in-Intervention at 9–13.) These different factual allegations, and the additional relief sought and arguments to be asserted by the Plaintiff-Intervenors, increase the value of Proposed Plaintiff-Intervenors' contributions to this action. They bring to the table something substantially related to the United States' claims, but they bring something more as well. Resolution Trust, 150 F.R.D. at 455.

### B. Proposed Plaintiff-Intervenors' motion to intervene was timely.

A federal court should evaluate timeliness of a motion to intervene by examining all the circumstances. NAACP v. New York, 413 U.S. 345, 366 (1973). The factors to be considered include (1) the length of time the applicant knew of its interest in the action before making the motion, (2) prejudice to existing parties by the applicant's delay, (3) prejudice to the applicant if the motion is denied, and (4) relevant unusual circumstances. Fiandaca v. Cunningham, 827 F.2d 825, 834 (1st Cir. 1987). These factors are considered in light of the purpose of the timeliness requirement, which is to prevent "last minute disruption of painstaking work by the parties and the court." Culbreath v. Dukakis, 630 F.2d 15, 22 (1st Cir. 1980).

That the Proposed Plaintiff-Intervenors' motion is timely is beyond dispute.

First, Asian American and Latino citizens and organizations made the motion just 42 days after Plaintiff filed its complaint. (Pl. Compl.; Proposed Pl.-Intervenors Compl.-in-Intervention), and before the Defendants' answer was due (or even filed). Thus, there can be no rational argument that the Proposed Plaintiff-Intervenors delayed seeking to intervene or that the original parties would be prejudiced from any such delay. In addition, neither the United States (with whom one of the Proposed Plaintiff-Intervenors' attorneys has been in contact since the basis for the action was initially investigated) nor the City (to which numerous letters were sent detailing deficiencies in the City's administration of the electoral process) can claim surprise or prejudice by the formal addition of these claims to the action. It, therefore, is simply not possible for the original parties to this action to show, nor is it credible for them to assert, that "the untimely entry of an intervenor into the fray may undo the work the parties have already done." In re Acushnet River & New Bedford Harbor, 712 F. Supp. 1019, 1025 (D. Mass. 1989).

Second, Proposed Plaintiff-Intervenors would be greatly prejudiced if intervention were denied. They would be denied the ability to present their issues, see Local No. 93, Int'l Ass'n of Firefighters v. Cleveland, 478 U.S. 501, 529 (1986), to offer evidence, see id. at 502, to appeal from an unfavorable decision, and significantly, to ensure compliance with any court orders entered in the action for their specific benefit, see In re Acushnet River & New Bedford Harbor, 712 F. Supp. 1019, 1024 (D. Mass. 1989). Only intervention can mitigate prejudice to the Proposed Plaintiff-Intervenors. See Schneider v. Dumbarton Developers, Inc., 767 F.2d 1007, 1017 (D.C. Cir. 1985). Ecee, Inc. v. Fed. Energy Regulatory Comm'n, 645 F.2d 339, 351 (5th Cir. 1981).

In fact, there is no adequate alternative means by which the Proposed Plaintiff-Intervenors can sufficiently advocate for their interests and ensure their contribution to the

action. Filing an amicus brief or simply providing testimony is not enough. In fact-intensive cases like this one, where the City's violation of Section 2 of the Voting Rights Act are evaluated under the totality of the circumstances, participation merely through amicus briefs is "least satisfactory." Daggett v. Comm'n on Governmental Ethics and Election Practices, 172 F.3d 104, 115 (1st Cir. 1999) (Lynch, J., concurring). And, while courts in the First Circuit have sometimes denied motions to intervene based on the rationale that the applicant could contribute to the case through amicus briefs, Daggett has been held to require the court to permit broader involvement by applicants in legal actions where their significant interests are being adjudicated. See, e.g., Tutein v. Daley, 43 F. Supp. 2d 113, 131 (D. Mass. 1999), vacated by No. 98-11034, 1999 WL 735194 (D. Mass. 1999) (permitting intervention upon remand in light of Daggett).

Finally, there are no unusual circumstances to warrant denial of the Proposed Plaintiff-Intervenors' motion to intervene. The ability to complain about violations of the Voting Rights Act does not reside exclusively with the United States. See 42 U.S.C. §§ 1973a, 1973b. And the basis for intervention is neither contrived, nor can it be trivialized. Asian American and Latino citizens and advocacy groups have complained in the past to Defendants about voting barriers (see Complaint-in-Intervention at Exhibit A), they have repeatedly communicated with the City about voting problems, and, now that the United States has initiated this action, the Proposed Plaintiff-Intervenors seek to permissively intervene in order to be a party to the action.

### III. Other relevant factors weigh in favor of Proposed Plaintiff-Intervenors' intervention.

This Court may consider any additional factors that are relevant to a motion for permissive intervention. Daggett v. Comm'n on Governmental Ethics and Election Practices, 172 F.3d 104, 113 (1st Cir. 1999). Additional factors that courts in the First Circuit have considered include (a) "the magnitude of the stakes" of the case and the helpfulness to the court

of the intervenor's advocacy, Ruthardt v. U.S., 303 F.3d 375, 386 (1st Cir. 2002), (b) the "nature and extent of the intervenor's interest" and (c) "whether the intervenors will significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented," In re Acushnet River & New Bedford Harbor, 712 F. Supp. at 1023.

Individually, and collectively, these factors weigh in favor of permitting these Asian American and Latino citizens and advocacy groups to intervene in this case. The stakes are high. They are, succinctly stated, the very right of limited English proficient Asian American and Latino citizens' to vote and to vote in a meaningful way. The interest of Asian American and Latino citizens themselves and the proposed organizations intervenors in this action are real and tangible. Finally, the contribution by all of the Proposed Plaintiff-Intervenors to the full development of the case would be significant. They have the best knowledge and experience of how Defendants have violated their voting rights. (See Tsang Decl. ¶¶ 3–5; Yung Decl. ¶ 2; Hui Decl. ¶ 3; Altreche Decl. ¶¶ 4–7.) The organizations are grassroots organizations closely tied to the Asian American and Latino communities they serve. They have direct and personal experience in how Defendants' actions have affected their communities and how best to protect the rights of Asian American and Latino citizens' with limited proficiency in English from future violations. (See Lowe Decl. ¶ 9; Yee Decl. ¶ 5; Leyton Decl. ¶ 6.)

CONCLUSION

The motion to intervene fulfills the requirements for permissive intervention.[2] The Proposed Plaintiff-Intervenors can contribute substantially to the full and fair adjudication of claims substantially similar to, yet different from, the claims of the United States that the City has violated the Voting Rights Act. Permitting intervention will promote judicial economy, while at the same time giving parties with undeniably direct interests — real and personal interests — in the action, the ability to assert claims, present evidence, and ultimately enforce a judgment intended by the original Plaintiff to be entered for their benefit. For all of these

---

[2] It is important to note that, although the question of whether an applicant's interests are adequately represented by an original party is considered in a motion to intervene by right under Fed. R. Civ. P. 24(c), it is rarely considered in a motion for permissive intervention under Fed. R. Civ. P. 24(h). See One Beacon Ins. Co. v. Electrolux, 223 F.R.D. 21, 23 (D. Mass. 2004); Tutein v. Daley, No. 98-11034, 1999 WL 735194 (D. Mass. 1999). Were the Court to consider the adequacy of representation, it should still find intervention appropriate. The United States is asserting the interests of many voters. In a negotiated settlement, for example, it would consider what gains it would achieve overall, for all voters. Involvement by Asian American and Latino citizens as intervenors would allow their interests to be sufficiently represented in their own right. Also, Asian American and Latino citizens are better able to represent their interests due to direct and personal knowledge of the facts that form the basis of the claim. The United States has consulted with Asian American and Latino citizens, but does not have a long history of working with these communities in Boston. Without the personal knowledge of the needs of Asian American and Latino citizens and of Defendants' continued violations, Plaintiff, serving in a representational capacity, could not articulate those interests as well as Asian American and Latino citizens could as intervenors.

reasons, the Court should exercise its discretion under Fed. R. Civ. P. 24(b), and grant the

Proposed Plaintiff-Intervenors' motion to intervene permissively.

Date: September 9, 2005

                                                                             RESPECTFULLY SUBMITTED,

                                   */s/ Cynthia Mark*
                                   CYNTHIA MARK (BBO#567487)
                                   Attorney for Proposed Plaintiff-Intervenors
                                   Attorney
                                   Greater Boston Legal Services
                                   197 Friend Street
                                   Boston, Massachusetts 02114
                                   (617) 371-1234

                                   */s/ Glenn D. Magpantay*
                                   GLENN D. MAGPANTAY
                                   Attorney for Proposed Plaintiff-Intervenors
                                   Staff Attorney
                                   Asian American Legal Defense and Education Fund
                                   99 Hudson Street, 12th floor
                                   New York, New York 10013-2815
                                   (212) 966-5932

                                   */s/ Andrew M. Troop*
                                   ANDREW M. TROOP (BBO#547179)
                                   CHRISTOPHER R. MIRICK (BBO#639683)
                                   ARTHUR R. CORMIER (BBO#645116)
                                   Attorney for Proposed Plaintiff-Intervenors
                                   Weil, Gotshal & Manges LLP
                                   100 Federal Street, 34th Floor
                                   Boston, MA 02110
                                   Telephone: (617) 772-8300
                                   Facsimile: (617) 772-8333