UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-11598-WGY |
| | ) | |
| CITY OF BOSTON, | ) | Three Judge Court: WGY, SL, PS |
| MASSACHUSETTS; THOMAS M. | ) | |
| MENINO, in his official capacity as | ) | |
| Mayor of the City of Boston; | ) | |
| BOSTON CITY COUNCIL: | ) | |
| MICHAEL F. FLAHERTY, PAUL J. | ) | |
| SCAPICCHIO, JAMES M. KELLY, | ) | |
| MAUREEN E. FEENEY, | ) | |
| CHARLES C. YANCEY, ROB | ) | |
| CONSALVO, JOHN TOBIN, | ) | |
| CHUCK TURNER, MICHAEL P. | ) | |
| ROSS, JERRY P. MCDERMOTT, | ) | |
| FELIX D. ARROYO, MAURA | ) | |
| HENNIGAN, STEPHEN J. | ) | |
| MURPHY; BOSTON ELECTION | ) | |
| DEPARTMENT; GERALDINE | ) | |
| CUDDYER, in her official capacity | ) | |
| as Chair of the Boston Election | ) | |
| Department, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF
UNITED STATES' OPPOSITION TO PROPOSED INTERVENORS'
MOTION TO INTERVENE AS PLAINTIFFS**

**I.  INTRODUCTION**

On July 29, 2005, the United States filed its Complaint alleging that the City of Boston's

election practices and procedures violate the Voting Rights Act, 42 U.S.C. § 1973 et seq.

Specifically, the United States alleged that the City's failure to provide sufficient bilingual

assistance at the polls to limited-English proficient voters of Spanish heritage and to translate

election information into Spanish violates Section 203 of the Voting Rights Act, 42 U.S.C. §

1973aa-1a.  See United States Complaint, ¶ 16.  The Complaint also alleged that the City

engaged in conduct that had the result of denying limited-English proficient Hispanic and Asian-

American voters an equal opportunity to participate in the political process and to elect

candidates of their choice on an equal basis with other citizens, in violation of Section 2 of the

Voting Rights Act, 42 U.S.C. § 1973.  Id. at ¶ 21.

On August 30, 2005, the United States and the City of Boston entered into settlement

negotiations.  On September 9, 2005, the Chinese Progressive Association, the Chinatown

Resident Association, City Life/Vida Urbana, Siu Tsang, Fung Yung, Yan Hui, and Maria

Altreche (collectively, "Proposed Intervenors") filed a Motion to Intervene as Plaintiffs.

Proposed Intervenors also filed their Proposed Complaint in Intervention on the same day.  Five

days later, the United States and the City finalized a settlement agreement, which was submitted

to the Court on September 15, 2005, along with the parties' joint motion for an interlocutory

order authorizing federal examiners to monitor elections in Boston and conditionally dismissing

the United States' Complaint.  See Joint Motion for Interlocutory Order (Docket Entry # 22).

The Complaints of Proposed Intervenors and the United States name the same

defendants; allege violations of the same two provisions of the Voting Rights Act – Sections 2

and 203; make nearly identical factual claims; and seek relief for overlapping voters – Chinese

and Hispanic language-minority voters.  Compare Proposed Intervenors' Complaint, ¶¶ 27 & 32,

with United States' Complaint, ¶¶ 16 & 21.  The complaints differ only in that the United States

has sought and obtained relief for Vietnamese-speaking voters.  All of the injunctive relief

sought by Proposed Intervenors in their Complaint has already been incorporated into the

2

settlement agreement between the United States and the City. The following chart demonstrates

where all of the Proposed Intervenors' claims for injunction relief can be found in the

Memorandum of Agreement and Settlement:

| Relief Sought By Proposed Intervenors In Their Complaint | Memorandum Of Settlement Agreement Incorporating Such Relief |
|---|---|
| Enjoin Defendants from implementing election practices and procedures that deny or abridge the rights of limited English proficient Chinese and Latino citizens in violation of Section 2 (Proposed Intervenors Complaint, Page 9, ¶ 2) and from failing to provide in Spanish any election related materials that Defendants provide in English, as required by Section 203 (Id. at Page 11, ¶ 5) | Page 4, ¶ 3 (Section 2)<br><br>Page 3, ¶ 1 (Section 203) |
| Provide any election-related materials that Defendants provide in English in Chinese (Id. at Page 9, ¶ 3(a)) and in Spanish (Id. at Page 11, ¶ 6(a)) | Page 3, ¶ 1 |
| Employ trained translators familiar with Chinese election terminology (Id. at Page 9, ¶ 3(b)) and Spanish election terminology (Id. at Page 11, ¶ 6(b)) | Page 10, ¶ 16 |
| Maintain glossaries of election terminology in Chinese (Id. at Page 9, ¶ 3(b)) and in Spanish (Id. at Page 11, ¶ 6(b)) | Page 15, ¶ 24 |
| Provide election information and notices in Chinese media (Id. at Page 9, ¶ 3(c)) and in Spanish media (Id. at Page 11, ¶ 6(c)) | Page 11, ¶ 18 |
| Provide election personnel to answer questions by telephone on election days in Chinese (Id. at Page 10, ¶ 3(d)) and in Spanish (Id. at Page 11, ¶ 6(d)) | Page 5, ¶ 5 |
| Recruit poll officials proficient in Chinese from political parties, City employees, students, and the Advisory Group (Id. at Page 10, ¶ 3(e)) and poll officials proficient in Spanish from the same groups (Id. at Page 11, ¶ 6(e)) | Page 5, ¶ 7 |

| | |
|---|---|
| Staff election personnel proficient in Chinese at polling places according to a formula based on the number of registered voters with Chinese names on the Lauderdale and Kestenbaum surname lists  (Id. at Page 10, ¶ 3(f)) and proficient in Spanish at polling places according to a formula based on the number of registered voters with names on the Census Bureau Spanish surname list (Id. at Page 12, ¶ 6(f)) | Page 7, ¶ 9(a) (for Chinese)<br><br>Page 6, ¶ 8 (for Spanish) |
| Employ and train election personnel proficient in Chinese and Spanish who will be on call and available to travel to any polling place not staffed by a bilingual poll worker (Id. at Page 10, ¶ 3(g) & Page 12, ¶ 6(g)) | Page 8, ¶ 10 |
| Post signs in English and Chinese at polling places explaining the availability of Chinese assistance (Id. at Page 10, ¶ 3(h)) and in English and Spanish explaining availability of assistance in Spanish (Id. at Page 12, ¶ 6(h)) | Page 8, ¶ 11 |
| Provide sample ballots in English and Chinese to voters who request them and to organizations that work with or serve the Chinese-American community in Boston (Id. at Page 10, ¶ 3(i)) and sample ballots in English and Spanish to voters who request them and to organizations that work with or serve the Latino community in Boston (Id. at Page 12, ¶ 6(i)) | Page 12, ¶ 21 & Page 15, ¶ 24 |
| Employ a coordinator for the Chinese election program (Id. at Page 10, ¶ 3(j)) and for the Spanish election program (Id. at Page 12, ¶ 6(j)) | Pages 12-14, ¶ 22 |
| Create and implement an Advisory Group of individuals and organizations that work with or serve Chinese-speaking communities in Boston to consult on the Chinese election program (Id. at Page 10, ¶ 3(k)) and that work with or serve Spanish-speaking communities in Boston to consult with the Spanish election program (Id. at Page 12, ¶ 6(k)) | Pages 14-15, ¶ 23 |
| Create a Task Force that includes representatives of the Chinese-American communities (Id. at Page 11, ¶ 3(l)) and the Spanish-speaking communities (Id. at Page 12, ¶ 6(l)) to evaluate election problems | Pages 14-15, ¶ 23 |

| | |
|---|---|
| Create a checklist of information made available to the public at each polling place, including information in minority languages, and paying each warden only upon completion and signing of this checklist (Id. at Page 12, ¶ 7(a)) | Pages 10-11, ¶ 17 |
| Train all poll workers prior to each election on voters' rights and proper, nondiscriminatory election procedures and maintain a record of the attendance of poll workers (Id. at Page 13, ¶ 7(b)) | Page 9, ¶ 12 |
| Enter into a written agreement with all poll workers that states they will treat voters equally and respectfully, allow voters to receive assistance from the persons of their choice, and offer provisional ballots to voters who are entitled to such ballots (Id. at Page 13, ¶ 7(c)) | Page 9, ¶ 13 |
| Remove poll workers who violate the aforementioned agreement (Id. at Page 13, ¶ 7(d)) | Page 10, ¶¶ 14, 15 |
| Investigate complaints by voters of poll worker hostility (Id. at Page 13, ¶ 7(e)) | Page 10, ¶ 15 |
| Evaluate each bilingual program after each election (Id. at Page 13, ¶ 7(f)) | Pages 15-16, ¶ 25 |
| Maintain records of all actions taken pursuant to this action and make copies of such records available (Id. at Page 13, ¶ 7(g)) | Page 16, ¶ 26 |
| Provide Plaintiff with a list of polling places, a list of the registered voters, and the number of bilingual poll workers at least 30 days prior to each election (Id. at Page 13, ¶ 7(h)) | Page 16, ¶ 27 |
| Provide Plaintiff with any changes from any prior reports and information on any complaints regarding language assistance within 30 days after each election (Id. at Page 13, ¶ 7(i)) | Page 16, ¶ 27 [1] |

---

[1] In their Complaint, Proposed Intervenors also urge that non-partisan, non-governmental observers be allowed to monitor poll sites. See Proposed Intervenors' Complaint at Page 13, ¶ 8. Since this sought-after relief is already provided for under state law, see 950 C.M.R. § 53.03(18)(a); 950 C.M.R. § 54.04(22)(a), it was unnecessary to include such a provision in the agreement between the United States and the City, and it is unnecessary to seek such relief from this Court.

## II.  LEGAL STANDARD

Rule 24(b) of the Federal Rules of Civil Procedure permits permissive intervention when (1) the application is made in a timely manner and (2) the applicant's claim and the main action have a question of law or fact in common.  Fed. R. Civ. P. 24(b).  In exercising its discretion, a court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.  Id.  Ultimately, whether to grant permissive intervention is a matter left largely to the discretion of the district court.  See In re Acushnet River & New Bedford Harbor, 712 F. Supp. 1019, 1023 (D. Mass. 1989);  7C C. Wright, Miller & Kane, Federal Practice and Procedure, § 1923 at 512-14 (2d ed. 1986).

In determining whether to grant permissive intervention, courts also consider the following factors: 1) the nature and extent of the intervenor's interest; 2) whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties; 3) whether the intervenor will benefit by the intervention; 4) whether the intervenor's interests are adequately represented by the other parties; and 5) whether the intervenor will significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.  See In re Acushnet River, 712 F. Supp. at 1023.

## III.  ARGUMENT

A.    The United States Adequately Represents Proposed Intervenors' Interests, and Proposed Intervenors Will Not Contribute Significantly to Developing the Factual Record or to Achieving a Just Resolution in This Case.

Given the nearly identical nature of the claims and relief sought by the United States and Proposed Intervenors and the fact that the Memorandum of Agreement and Settlement reached

by the United States and the City of Boston provides all of the relief Proposed Intervenors seek,

intervention would complicate and delay – not enhance – the resolution of the case.  This is

especially true given that the agreement provides specific relief to limited-English proficient

Spanish-speaking, Chinese-speaking, and Vietnamese-speaking voters for the fast-approaching

September 27, 2005 municipal preliminary election in Boston, and any delay in the proceedings

may undermine the implementation of that relief.

Courts in the First Circuit have denied permissive intervention when proposed

intervenors make nearly identical claims to those of the original parties and where, therefore, the

proposed intervention would not promote judicial efficiency, a particular consideration where, as

here, the case involves a three-judge court.  For instance, in Maine v. Norton, 203 F.R.D. 22, 29

(D. Maine 2001), the court noted that proposed defendant intervenors, which consisted of several

environmental groups, and the original defendants, among them the National Marine Fisheries

Service, shared the same ultimate goal in the litigation: the preservation of a ruling by defendants

that the Gulf of Maine Atlantic salmon population was endangered.  Since the claims being made

by the proposed intervenors and defendants were "nearly identical" and in light of the "similarity

of the goals of the Defendants and those of the Proposed Intervenors," the Court concluded "that

the granting of permissive intervention would not enhance the resolution of the case in any

significant way.  Rather, the Court believe[d] that adding another party to the case to assert the

same arguments would only result in delay and complication of the proceedings without serving

to advance additional rights." Id. at 29-30; see also Resolution Trust Corp. v. City of Boston,

150 F.R.D. 449, 455 (D. Mass. 1993) (denying permissive intervention on the grounds that

proposed intervenors have not "presented any new defenses or indicated any respect in which their presence as parties would increase the likelihood of a just, speedy, and efficient outcome").

Here, as set forth above, the United States has already secured through its agreement with the City all of the relief Proposed Intervenors seek through intervention. Intervention, therefore, would not serve to advance the factual presentation in this case or the achievement of a just resolution, but would instead frustrate these purposes and delay implementation of the very relief that Proposed Intervenors seek. Moreover, as in Norton, the United States and Proposed Intervenors share the same goal: to improve Defendants' language-minority election programs so that limited-English proficient Chinese- and Spanish-speaking voters have the same opportunity as other voters to participate in the political process and elect candidates of their choice.

Given the common goal of the United States and Proposed Intervenors and given that the United States has obtained all of the relief Proposed Intervenors seek, it follows that the United States adequately represents the interests of Proposed Intervenors. As the First Circuit held in Moosehead Sanitary Dist. v. S.G. Phillips Corp., 610 F.2d 49, 54 (1st Cir. 1979), there is a presumption of adequate representation where the party seeking to intervene "has the same ultimate goal" as a party already in the suit. See also United Nuclear Corp. v. Cannon, 696 F.2d 141, 144 (1st Cir. 1982). To overcome this presumption, the moving party "must demonstrate diversity of interest, collusion, or nonfeasance." Moosehead, 610 F.2d at 54. Proposed Intervenors have made no such showing or, to their credit, any such claim.

Rather, Proposed Intervenors argue that the United States asserts the interests of many voters and, therefore, does not adequately represent the interests of individual, intervening voters. See Proposed Intervenors Memorandum of Law at 15 n. 2. The United Nuclear Court

8

rejected a similar argument in upholding the lower court's denial of intervention.  In United

Nuclear, an environmental group attempted to intervene on the side of Rhode Island to defend

the constitutionality of a Rhode Island statute.  United Nuclear, 696 F.2d at 142.  The Court held

that although the environmental group may have had a more specialized interest than the state,

the state and the group shared the same ultimate goal of defending the statute's constitutionality.

Id. at 144.  In support of its holding, the United Nuclear Court set forth three factors to consider

in determining adequacy of representation, each of which favors denial of intervention here:

> (1) Are the interests of a present party in the suit sufficiently similar to that of the absentee such that the legal arguments of the latter will undoubtedly be made by the former; (2) is that present party capable and willing to make such arguments; and (3) if permitted to intervene, would the intervenor add some necessary element to the proceedings which would not be covered by the parties to the suit?

Id.  As explained more fully above, the United States and Proposed Intervenors have identical

interests such that the United States would make all of the legal arguments Proposed Intervenors

would; the United States is capable, willing, and has made such arguments; and there are no

elements necessary to the proceeding that the Proposed Intervenors add that the United States

does not or would not.  The Proposed Intervenors cannot substantively challenge the adequacy of

the United States' representation given that the United States has through negotiation obtained

all of the relief that they seek.

B.      Intervention Would Unduly Delay and Prejudice the Adjudication of the Rights of the
        United States and Defendants.

        Granting the Proposed Intervenors' Motion would prejudice the United States and

Defendants by delaying and/or completely undermining the implementation of the relief the

parties have agreed to in the settlement.  When analyzing the issue of prejudice, courts generally

examine whether the intervenor's entry would undo the work the parties have already done.  See, e.g., In re Acushnet River, 712 F. Supp. at 1025.

In Culbreath v. Dukakis, 630 F.2d 15, 17 (1st Cir. 1980), four labor unions attempted to intervene in a class action suit filed against various state agencies to redress allegedly racially discriminatory hiring and promotion practices.  Two months after the labor unions moved to intervene, the parties reached an agreement on the terms of a consent decree.  Id. at 17.  In analyzing whether the parties would be prejudiced by permitting intervention, the First Circuit considered what effect the intervention would have on the consent decree, which had not yet been approved by the district court.  In denying the intervention, the Court noted:

> Indeed, because of the delayed intervention of the unions, several
> of the target dates in the consent decree have already been
> nullified.  As long as this suit remains unresolved, the public and
> private resources invested in it lie fallow and opportunities to
> rectify the wrongs of which plaintiffs complain are unrealized . . .
> The courts strongly favor resolution of suits such as this one by
> voluntary agreement, and there is a distinct probability that the
> intervention of the unions will destroy the consent decree and force
> a trial on the merits.

Id. at 22.  Conversely, in In re Acushnet River, 712 F. Supp. at 1025, this Court ruled that the parties opposing intervention under Rule 24(b) would not suffer much prejudice if intervention were granted because "[w]ith respect to future settlements . . . the [intervenor's] participation in the process cannot undo any such work.  No potential settlements are very far advanced as far as this Court knows."

As in Culbreath, and unlike in In re Acushnet River, the parties in the instant case finalized a settlement agreement shortly after intervention was sought.  Among other benefits for language-minority voters, the agreement between the United States and Defendants provides for

10

immediate relief to be implemented by Defendants for the September 27, 2005 preliminary

election, including an increase in the number of poll workers who speak Spanish, Chinese, and

Vietnamese to assist language-minority voters.  See Memorandum of Agreement and Settlement

¶ 28(a).  In addition, the agreement calls for the City of Boston to use its best efforts to create

sample or facsimile ballots in Chinese and Vietnamese, to solicit the assistance of an Advisory

Task Force in the creation of these facsimile ballots, and to affix these ballots on voting booths at

designated polling places throughout the City on election day.  See id. at ¶ 28(g).  Finally, the

agreement of the parties provides for certification of the City for federal examiners so that

federal observers can be assigned to monitor the September 27, 2005 election.  Absent entry of

the agreed-upon order, such relief will not be realized.  As the First Circuit reasoned in

Culbreath, granting Proposed Intervenors' Motion may undo the parties' work by complicating

the proceedings and, to the extent the motion for interlocutory relief remains pending, by

delaying implementation of the agreement.  Such a delay would cause irreparable harm to

language-minority voters who need bilingual assistance in the upcoming election.

## IV.  CONCLUSION

For the foregoing reasons, the United States respectfully submits that the Court should

deny Proposed Intervenors' Motion to Intervene as Plaintiffs.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorney,

 MICHAEL J. SULLIVAN
United States Attorney

 /s/ Damian W. Wilmot
Damian W. Wilmot
Assistant U.S. Attorney
John J. Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA  02210

September 21, 2005                              (617) 748-3398

## CERTIFICATE OF SERVICE

I certify that on September 21, 2005, I caused a copy of the foregoing Opposition to be served on:

WILLIAM BRADFORD REYNOLDS
Howrey LLP
1299 Pennsylvania Avenue, NW
Washington, D.C. 20004-2402
(202) 383-6912

MERITA A. HOPKINS
Corporation Counsel
City of Boston
Boston City Hall
Room 615
Boston, MA 02201
(617) 635-4017

CYNTHIA MARK
Greater Boston Legal Services
197 Friend Street
Boston, MA  02114
(617) 371-1234

GLENN D. MAGPANTAY
Asian American Legal Defense and Education Fund
99 Hudson Street, 12th Floor
New York, NY  10013-2815
(212) 966-5932

ANDREW M. TROOP
CHRISTOPHER R. MIRICK
ARTHUR R. CORMIER
Weil, Gotshal & Manges LLP
100 Federal Street, 34th Floor
Boston, MA 02110
(617) 772-8300

      /s/ Damian W. Wilmot      
      DAMIAN WILMOT
      Assistant United States Attorney