IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| CHINESE PROGRESSIVE ASSOCIATION, | ) | |
| CHINATOWN RESIDENT ASSOCIATION, | ) | |
| CITY LIFE / VIDA URBANA, SIU TSANG, | ) | |
| FUNG YUNG, YAN HUI, MARIA ALTRECHE, | ) | |
| | ) | |
| Proposed Plaintiff-Intervenors | ) | |
| | ) | CIVIL ACTION No. |
| v. | ) | 05-11598WGY |
| | ) | |
| CITY OF BOSTON, MASSACHUSETTS; THOMAS M. | ) | |
| MENINO, in his official capacity as | ) | |
| Mayor of the City of Boston; | ) | |
| BOSTON CITY COUNCIL: MICHAEL F. | ) | |
| FLAHERTY, PAUL J. SCAPICCHIO, JAMES M. | ) | |
| KELLY, MAUREEN E. FEENEY, CHARLES C. | ) | THREE-JUDGE COURT |
| YANCEY, ROB CONSALVO, JOHN TOBIN, CHUCK | ) | WGY, SL, PS |
| TURNER, MICHAEL P. ROSS, JERRY P. | ) | |
| MCDERMOTT, FELIX D. ARROYO, MAURA | ) | |
| HENNIGAN, STEPHEN J. MURPHY; BOSTON | ) | |
| ELECTION DEPARTMENT; GERALDINE CUDDYER, | ) | |
| in her official capacity as Chair of | ) | |
| the Boston Election Department, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PROPOSED PLAINTIFF-INTERVENORS' REQUEST (A) FOR LEAVE
TO FILE REPLY BRIEF AND ATTORNEY DECLARATION IN
RESPONSE TO PLAINTIFF UNITED STATES' OPPOSITION TO
PROPOSED PLAINTIFF-INTERVENORS' MOTION TO INTERVENE AND
(B) FOR ORAL ARGUMENT REGARDING MOTION TO INTERVENE**

Proposed Plaintiff-Intervenors, by their undersigned attorneys, seek leave from this Court

to file a Reply Brief and a Declaration by Glenn Magpantay, counsel to Proposed Plaintiff-

Intervenors, both of which are attached as exhibits hereto, in response to Plaintiff United States of America's Opposition to Proposed Plaintiff-Intervenors' Motion to Intervene pursuant to Local Rule 7.1(B)(3). In addition, Proposed Plaintiff-Intervenors request that the Court schedule oral argument on the Motion to Intervene. In support of these requests, Proposed Plaintiff-Intervenors state as follows:

### Request for Leave to File Reply Brief and Attorney Affirmation

1.    Plaintiff United States filed the complaint initiating this action on July 29, 2005 (the "Original Complaint"). Proposed Plaintiff-Intervenors filed their Motion to Intervene and a proposed "Complaint in Intervention" on September 9, 2005. Within a week of the filing of the Motion to Intervene and Complaint in Intevention, on September 15, 2005, Plaintiff United States and Defendant City of Boston filed a motion asking this Court to approve a Memorandum of Agreement and Settlement negotiated between those parties (the "Settlement"). On September 21, 2005, Plaintiff United States filed an opposition to the Motion to Intervene. No Defendant has filed an opposition to the Motion to Intervene.

2.    The Motion to Intervene has not yet been ruled on by this Court. On September 22, 2005, this Court entered an order authorizing the appointment of federal examiners for the September 27, 2005, election, as contemplated in the Settlement; the Settlement otherwise has not been ruled on by this Court.

3.    Proposed Plaintiff-Intervenors sought to intervene in this action to protect their own voting rights or, in the case of the community organizations, the voting rights of their constituents by, among other things, obtaining prospective judicial relief regarding the conduct of elections by the City of Boston which they could seek to enforce. In this regard, it is important to note that the relief sought by Proposed Plaintiff-Intervenors in the Complaint in

Intervention went beyond the relief sought in the Original Complaint.  For example, the Proposed Plaintiff Intervenors sought to compel the City of Boston to provide bilingual ballots for limited English proficient Chinese-American voters in elections administered by it.  And it is equally important to note that the Settlement provides relief that expands beyond the relief that had been sought in the Original Complaint and largely accomplishes the relief sought by Proposed Plaintiff-Intervenors in the Complaint in Intervention.

4.      Given the terms of the proposed Settlement, Proposed Plaintiff-Intervenors wish to reply to the United States' opposition to the Motion to Intervene to clarify that (a) they support the Settlement and (b) they wish to intervene solely to become parties to this action and the Settlement, with standing to enforce compliance with the Settlement upon its approval by this Court.

5.      Proposed Plaintiff-Intervenors certify that pursuant to Local Rule 7.a(a)(2) they have conferred on this motion with Christopher Coates, counsel for Plaintiff United States of America, and with Nadine Cohen, counsel for Defendants Charles C. Yancey, Chuck Turner, Felix D. Arroyo, and Maura Hennigan, on September 27, 2005; and have attempted to confer with Merita Hopkins, counsel for Defendant City of Boston, on September 27, 2005.

6.      Counsel for Plaintiff United States has stated that the United States does not oppose the filing of the reply brief and declaration, although the United States does continue to oppose the Motion to Intervene.  Counsel for Defendants Yancey, Turner, Arroyo and Hennigan has stated that those defendants consent to the filing of the reply brief and declaration. Counsel for Proposed Plaintiff-Intervenors was unable to reach counsel for Defendant City of Boston prior to filing this motion.

## **Request for Oral Argument**

7.      Counsel for Proposed Plaintiff-Intervenors request an opportunity to be heard on the Motion to Intervene.

WHEREFORE, Proposed Plaintiff-Intervenors seek leave to file the attached Reply Brief and Declaration by Glenn Magpantay in response to Plaintiff United States' opposition to the Motion to Intervene, request that the Court schedule oral argument on the Motion to Intervene, and request such other relief as is just.

[Signatures on following page]

Respectfully Submitted,

CHINESE PROGRESSIVE ASSOCIATION,
CHINATOWN RESIDENT ASSOCIATION,
CITY LIFE / VIDA URBANA, SIU TSANG,
FUNG YUNG, YAN HUI, and
MARIA ALTRECHE,

By their Attorneys,

CYNTHIA MARK (BBO #567487)
Greater Boston Legal Services
197 Friend Street
Boston, Massachusetts 02114
(617) 603-1720
(617) 371-1222 (facsimile)

GLENN D. MAGPANTAY (admitted pro hac vice)
Asian American Legal Defense and Education Fund
99 Hudson Street, 12th floor
New York, New York 10013-2815
(212) 966-5932

ANDREW M. TROOP (BBO#547179)
CHRISTOPHER R. MIRICK (BBO#639683)
ARTHUR R. CORMIER (BBO#645116)
Weil, Gotshal & Manges LLP
100 Federal Street, 34th Floor
Boston, MA 02110
(617) 772-8300
(617) 772-8333 (facsimile)

Date: September 27, 2005

## Exhibit 1

**PROPOSED PLAINTIFF-INTERVENORS' REPLY BRIEF TO
PLAINTIFF UNITED STATES' OPPOSITION TO
PROPOSED PLAINTIFF-INTERVENORS' MOTION TO INTERVENE**

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| CHINESE PROGRESSIVE ASSOCIATION, | ) | |
| CHINATOWN RESIDENT ASSOCIATION, | ) | |
| CITY LIFE / VIDA URBANA, SIU TSANG, | ) | |
| FUNG YUNG, YAN HUI, MARIA ALTRECHE, | ) | |
| | ) | |
| Proposed Plaintiff-Intervenors | ) | |
| | ) | CIVIL ACTION No. |
| v. | ) | 05-11598WGY |
| | ) | |
| CITY OF BOSTON, MASSACHUSETTS; THOMAS M. | ) | |
| MENINO, in his official capacity as | ) | |
| Mayor of the City of Boston; | ) | |
| BOSTON CITY COUNCIL: MICHAEL F. | ) | |
| FLAHERTY, PAUL J. SCAPICCHIO, JAMES M. | ) | |
| KELLY, MAUREEN E. FEENEY, CHARLES C. | ) | THREE-JUDGE COURT |
| YANCEY, ROB CONSALVO, JOHN TOBIN, CHUCK | ) | WGY, SL, PS |
| TURNER, MICHAEL P. ROSS, JERRY P. | ) | |
| MCDERMOTT, FELIX D. ARROYO, MAURA | ) | |
| HENNIGAN, STEPHEN J. MURPHY; BOSTON | ) | |
| ELECTION DEPARTMENT; GERALDINE CUDDYER, | ) | |
| in her official capacity as Chair of | ) | |
| the Boston Election Department, | ) | |
| | ) | |
| Defendants. | ) | |

**PROPOSED PLAINTIFF-INTERVENORS' REPLY BRIEF TO
PLAINTIFF UNITED STATES' OPPOSITION TO
PROPOSED PLAINTIFF-INTERVENORS' MOTION TO INTERVENE**

On September 9, 2005, Proposed Plaintiff-Intervenors filed a Motion to Intervene and

supporting memorandum (collectively, the "Motion to Intervene") in this action and a proposed

Complaint in Intervention in accordance with Rule 24(b) of the Federal Rules of Civil Procedure.

The Motion to Intervene was supported by seven declarations from individual limited English

proficient voters and community organizations that are active on behalf of limited English proficient voters. As set forth in the Motion to Intervene and the supporting declarations, Proposed Plaintiff-Intervenors sought permissive intervention to obtain broader relief (including bilingual ballots) than that sought by the United States in its original complaint (the "Original Complaint") and to have the ability to enforce any resulting order or settlement.

Six days after the filing of the Motion to Intervene, the United States and Defendant City of Boston filed a proposed Memorandum of Agreement and Settlement (the "Settlement"). The Settlement is broader than the relief originally sought by the United States in the Original Complaint, and substantially incorporates the relief sought in the Complaint in Intervention.

No Defendant has opposed the Motion to Intervene. Only the United States has objected. The United States basically contends that, because, after the Complaint in Intervention was filed, it concluded a Settlement that accomplishes Proposed Plaintiff-Intervenors' requested relief, the Motion to Intervene should be denied. This objection, however, misses the mark. It evaluates the request to intervene with hindsight, and it ignores the unique position of the Proposed Plaintiff-Intervenors to monitor the effective implementation of relief that they, not the United States, sought in their complaint.

The desire by the Proposed Plaintiff-Intevenors to intervene, to become parties to this action and the Settlement, and to have standing to enforce the Settlement, should not be read or construed as criticism of the terms of the Settlement. In fact, quite the contrary is true. The United States and the City of Boston should be lauded for the agreement embodied in the Settlement. This sentiment, however, does not alter the standard for permissive intervention, which unquestionably has been satisfied here. That standard requires that the Court compare the relief sought by the Proposed Plaintiff-Intervenors with the relief sought by the United States in

the Original Complaint and determine whether (a) the relief sought is different, (b) the Proposed-Plaintiff-Intervenors have contributed to the factual record in this case, (c) participation by the Proposed Plaintiff-Intervenors will promote a just resolution, and (d) the Proposed Plaintiff-Intervenors have an unique position in enforcing a favorable judgment or settlement. When viewed under these standards, the parallel between the Settlement and the relief sought in the Complaint in Intervention underscores the appropriateness of permissive intervention here. It highlights the importance of the additional claims and facts that the Proposed Plaintiff-Intervenors bring to this action and of the special position that the Proposed Plaintiff-Intervenors have to enforce the Settlement. In the end, it is their voting rights that are at issue in this action.

Further, the equities strongly favor allowing the intervention. As noted, the Settlement ultimately affects the voting rights of the individual Proposed Plaintiff-Intervenors and the constituencies represented by the organizational Proposed Plaintiff-Intervenors, who are active, concerned limited English proficient voters and voter advocacy groups. Moreover, because the Proposed Plaintiff-Intervenors support the Settlement and are prepared to limit their roles to becoming parties to the action and to the Settlement with standing to enforce the Settlement, there is no basis to contend that permitting intervention will delay resolution of this case.

A.    The Proposed Plaintiff-Intervenors' Contribution
      Is Different From That of The United States

The United States contends that the Motion to Intervene should be denied because the Settlement it has negotiated provides "nearly identical" relief to the relief sought in the Complaint in Intervention. In effect, the United States suggests that, at this point, the Proposed Plaintiff-Intervenors are merely surplus to this litigation. To prove its point, the United States includes a chart in its objection cross-referencing the relief sought in the Complaint in Intervention with the operative provisions of the Settlement. Conspicuously absent from the

United States' chart, however, are cross-references to its Original Complaint. And it is the absence of these cross-references that should compel this Court to exercise its discretion and grant the Proposed Plaintiff-Intevenors leave to intervene.

In fact, the cases cited by the United States in its objection confirm this conclusion. In Maine v. Norton, 203 F.R.D. 22 (D. Maine 2001) and Resolution Trust Corp. v. City of Boston, 150 F.R.D. 449 (D. Mass. 1993), the respective District Courts denied motions to intervene not because a settlement negotiated by the original parties addressed the issues raised by the proposed intervenors, but rather because the claims asserted by the proposed intervenors were the same as and nearly identical to the claims asserted by the original plaintiffs. In this case, while it is true that the United States and the Proposed Plaintiff-Intervenors all allege violations of the Voting Rights Act of 1965, the relief they originally sought in their respective complaints is markedly different. For example, the United States' requested relief did not include a requirement that election materials be provided in Chinese. In addition, while the United States simply requested that the Defendants be enjoined from further violations, the Proposed Plaintiff-Intervenors' requested relief set forth in detail provisions that Proposed Plaintiff-Intervenors believe, on the basis of their own familiarity with the voting process and the affected communities, would be effective to enforce the mandate of the Voting Rights Act of 1965. Thus, rather than supporting the denial of the Motion to Intervene, these cases support its allowance because the claims are different.

The Proposed Plaintiff-Intervenors have brought something additional to this case. They have alleged different factual matters, such as ineffective notice regarding poll sites, redirection of limited English proficient voters to multiple poll sites, and improper identification

requirements imposed on limited English proficient voters, that are not raised by the United States.

Moreover, not only have they alleged these additional facts, the Proposed Plaintiff-Intervenors have already contributed significantly to developing the factual record which formed the basis for the Original Complaint and the Complaint in Intervention, which the Settlement clearly tracks. The four individuals who seek to intervene, Siu Tsang, Fung Yung, Yan Hui, and Maria Altreche, have each submitted a sworn statement to the Department of Justice, which constituted a significant piece of factual evidence required to support this case and will support the propriety of the proposed Settlement. *Magpantay Declaration,* ¶ 7. Similarly, the community-based organizations seeking to intervene, the Chinese Progressive Association, Chinatown Resident Association, and City Life / Vida Urbana, have contributed significantly to building the factual evidence for this case. Each proposed organizational intervenor has participated in voter registration, voter education, and get-out-the vote efforts for at least five years. *Declarations of Lowe, Yee, and Leyton.* These organizations identified many Chinese-American and Latino voters whose voting rights had been violated, and helped these voters to submit sworn statements to the Department of Justice, detailing inappropriate conduct by the Boston City Elections Department. *Magpantay Declaration,* ¶ 7.

Under these circumstances, the Motion to Intervene cannot be denied based upon a finding that the original plaintiffs and proposed intervenors are merely different sides of the same coin. The differences in the relief sought in the Original Complaint and the Complaint in Intervention are clear. The adoption of the relief sought in the Complaint in Intervention into the Settlement does not change this comparison for the purpose of permissive intervention under Rule 24(b). See In re Acushnet River & New Bedford Harbor, 712 F. Supp. 1019, 1023 (D.

Mass. 1989) (one factor considered is whether intervenor will significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented).

B.     The Equities Clearly Favor Intervention

The equities also clearly support intervention in this case. First, as noted above, it is the voting rights of individuals represented by the individual and organizational Proposed Plaintiff-Intervenors that are at stake in this litigation. The addition of the Proposed Plaintiff-Intervenors as parties to this action, particularly to confer upon them standing to enforce the Settlement, thus is not merely an act of "belts and suspenders." Each individual Proposed Plaintiff-Intervenor is limited English proficient, plans to vote in future elections, and desires to have the Voting Rights Act of 1965 fully and faithfully enforced. *Declarations of Siu Tsang, Fung Yung, Yan Hui, and Maria Altreche.* These individuals have a direct interest in the just resolution in this case, and are intended beneficiaries of the Settlement. As such, they should be allowed to intervene for the purpose of enforcing the Settlement. See Berger v. Heckler, 771 F.2d 1556, 1566 (2d Cir. 1985); Tutein v. Daley, 43 F. Supp. 2d 113, 131 (D. Mass. 1999), vacated by No. 98-11034, 1999 WL 735194 (D. Mass. 1999) (court required to permit broader involvement by applicants in legal actions where their significant interests are being adjudicated, applying Daggett v. Comm'n on Governmental Ethics and Election Practices, 172 F.3d 104 (1st Cir. 1999)). Furthermore, the Proposed Plaintiff-Intervenor organizations will continue to work with Chinese-American and Latino voters to ensure that they have an equal opportunity to participate in the political process and to elect candidates of their choice on an equal basis with other citizens. As community-based organizations with a history of working with limited-English-proficient voters, they are uniquely qualified and placed to determine whether the Defendant City of Boston is in

substantial compliance with the Settlement, and should have party-status in order to enforce the Settlement should the Defendants fail to substantially comply with its terms. See In re Acushnet River, 712 F. Supp. at 1024.

Second, permitting intervention will not unduly delay the resolution of this matter or prejudice any of the original parties. The Proposed Plaintiff-Intervenors support the approval of the Settlement and are prepared to limit their intervention to (a) becoming parties to this action and the Settlement and (b) having conferred upon them standing to enforce the Settlement. It is inconceivable, therefore, that allowing the Motion to Intervene would delay the prompt resolution of this case and implementation of the Settlement.

Culbreath v. Dukakis , 630 F.2d 15 (1st Cir. 1980), cited by the United States in its opposition brief, thus is inapposite to the circumstances here. In Culbreath, the Court of Appeals held that intervention was inappropriate where (a) a first motion to intervene was filed four years after the initiation of the discrimination lawsuit, two years after the defendant state agencies began settlement negotiations with plaintiffs, and one month before the parties submitted a proposed Settlement, id. at 19, (b) a second motion to intervene was filed by three other state unions two months after the proposed Settlement was submitted, id. at 20, and (c) the proposed intervenors opposed "the central principle of the consent decree." Id. at 22. The First Circuit held that the union/intervenors reasonably should have known of their interest in the lawsuit when it was filed, id. at 21, and that allowing the intervention would delay implementation of the settlement and the remedies provided therein. Id. at 22. The Culbreath Court reasoned that the timeliness requirement under Rule 24(b) is intended to prevent "last minute disruption of painstaking work by the parties and the court" and any resulting prejudice to the existing parties. Id.

In contrast to the facts in <u>Culbreath</u>, the Motion to Intervene was filed in this case a mere 42 days after the filing of the Original Complaint, before the Defendants' responses to the Original Complaint were even due. The Proposed Plaintiff-Intervenors affirmatively support approval of the Settlement. They do not seek to unravel the Settlement or re-open negotiations, because the Settlement implements the relief they articulated in the Complaint in Intervention, relief that reflected goals beyond that originally sought by the United States for the benefit of language-minority voters. And their request for intervention, in light of the Settlement, is now narrowly tailored: parties whose voting rights are at stake seek the right to enforce a settlement that is intended to protect those rights in the very ways that they hoped those rights would be protected.

There is thus no basis for the United States to contend that the original parties will be prejudiced or this action will be delayed if the Motion to Intervene is allowed for the more limited purposes that are now sought by the Proposed Plaintiff-Intervenors. The only change that will occur if the Motion to Intervene is allowed is that the Proposed Plaintiff-Intervenors will have standing to enforce the Settlement, which clearly is intended for their benefit in any event, against Defendants who have not themselves opposed intervention.[1]  See <u>Berger v. Heckler</u>, 771 F.2d 1556, 1566 (2d Cir. 1985).

### Conclusion

The heart of the United States' opposition to the Motion to Intervene is that the Settlement achieves for the Proposed Plaintiff-Intervenors the exact relief they had intended to

---

[1] In its opposition, the United States also contends that the Motion to Intervene should be denied because the United States can and has adequately represented the interests of all of its language-minority citizens by bringing the action and negotiating the Settlement. Adequate representation, however, is not the issue here as permissive intervention is sought under Rule 24(b), not mandatory intervention under Rule 24(a). Still, for the reasons set forth above, it is beyond dispute that the Proposed Plaintiff-Intervenors added something to this lawsuit that the United States could not have contributed without them: facts, personal experiences, access to specific communities, and an articulation of remedies for certain of those communities that extended beyond that articulated in the Original Complaint.

pursue themselves against the Defendants.  For the reasons set forth above and in the Motion to Intervene, however, this overlap does not alter the application of the standards for permissive intervention under Rule 24(b), all of which are satisfied here:  a timely request by parties asserting different claims from the original plaintiff that nonetheless share common factual and legal questions, who independently have standing to sue the defendants for the alleged wrongs, whose rights and claims, as a practical matter will be affected by resolution of the original complaint, and whose rights and claims can effectively be addressed in the pending litigation without undue delay or undue prejudice to the original parties.  Indeed, the fact that the Settlement implements the relief articulated by the Proposed Plaintiff-Intervenors, not by the United States, and that the Proposed Plaintiff-Intervenors now seek, in light of the Settlement, only the right to enforce it as parties, highlights that the requirements for intervention have been satisfied.  Accordingly, the Motion to Intervene should be allowed, and the United States' objection overruled.

[Signatures on following page]

CHINESE PROGRESSIVE ASSOCIATION,
CHINATOWN RESIDENT ASSOCIATION,
CITY LIFE / VIDA URBANA, SIU TSANG,
FUNG YUNG, YAN HUI, and
MARIA ALTRECHE,

By their Attorneys,


_____
CYNTHIA MARK (BBO #567487)
Greater Boston Legal Services
197 Friend Street
Boston, Massachusetts 02114
(617) 603-1720
(617) 371-1222 (facsimile)


_____
GLENN D. MAGPANTAY (admitted pro hac vice)
Asian American Legal Defense and Education Fund
99 Hudson Street, 12th floor
New York, New York 10013-2815
(212) 966-5932


_____
ANDREW M. TROOP (BBO#547179)
CHRISTOPHER R. MIRICK (BBO#639683)
ARTHUR R. CORMIER (BBO#645116)
Weil, Gotshal & Manges LLP
100 Federal Street, 34th Floor
Boston, MA 02110
(617) 772-8300
(617) 772-8333 (facsimile)


Dated:  September 27, 2005

**Exhibit 2**

**DECLARATION OF GLENN D. MAGPANTAY IN SUPPORT OF PROPOSED
PLAINTIFF-INTERVENORS' REPLY TO UNITED STATES' OPPOSITION TO
PROPOSED PLAINTIFF-INTERVENORS' MOTION TO INTERVENE**

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>CHINESE PROGRESSIVE ASSOCIATION,<br>CHINATOWN RESIDENT ASSOCIATION,<br>CITY LIFE / VIDA URBANA, SIU TSANG,<br>FUNG YUNG, YAN HUI, MARIA ALTRECHE,<br><br>     Proposed Plaintiff-Intervenors<br><br>     v.<br><br>CITY OF BOSTON, MASSACHUSETTS; THOMAS M.<br>MENINO, in his official capacity as<br>Mayor of the City of Boston;<br>BOSTON CITY COUNCIL: MICHAEL F.<br>FLAHERTY, PAUL J. SCAPICCHIO, JAMES M.<br>KELLY, MAUREEN E. FEENEY, CHARLES C.<br>YANCEY, ROB CONSALVO, JOHN TOBIN, CHUCK<br>TURNER, MICHAEL P. ROSS, JERRY P.<br>MCDERMOTT, FELIX D. ARROYO, MAURA<br>HENNIGAN, STEPHEN J. MURPHY; BOSTON<br>ELECTION DEPARTMENT; GERALDINE CUDDYER,<br>in her official capacity as Chair of<br>the Boston Election Department,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION No.<br>05-11598WGY<br><br><br><br>THREE-JUDGE COURT<br>WGY, PS, SL |

**DECLARATION OF GLENN D. MAGPANTAY IN SUPPORT OF PROPOSED**
**PLAINTIFF-INTERVENORS' REPLY TO UNITED STATES' OPPOSITION TO**
**PROPOSED PLAINTIFF-INTERVENORS' MOTION TO INTERVENE**

     I, GLENN D. MAGPANTAY, being an attorney duly admitted to practice law in the

State of New York and counsel for Proposed Plaintiff-Intervenors Chinese Progressive

Association, Chinatown Resident Association, City Life / Vida Urbana, Siu Tsang, Fung Yung,

Yan Hui, and Maria Altreche, hereby declare under penalty of perjury that the following is true and correct:

## Overview

1.  I submit this affirmation in support of Proposed Plaintiff-Intervenors' Reply to the United States' opposition to Proposed Plaintiff-Intervenors' Motion to Intervene, in order to clarify the position of Proposed Plaintiff-Intervenors regarding recent developments in this case, and to provide relevant background information regarding the efforts of Proposed Plaintiff-Intervenors to participate in the negotiations surrounding the settlement of this case.

2.  Proposed Plaintiff-Intervenors generally approve of and support the Memorandum of Agreement and Settlement negotiated between the United States and the City of Boston and filed on September 15, 2005 (the "Settlement"). Similarly, Proposed Plaintiff-Intervenors generally approve of and support the joint motion by the United States and the City of Boston for a dismissal of the United States' complaint in this case, conditioned on substantial compliance with the Memorandum of Agreement. The Settlement and the joint motion for dismissal should not be approved, however, before the Motion to Intervene is decided by this Court.

3.  In light of the Settlement, Proposed Plaintiff-Intervenors seek to pursue their Motion to Intervene simply to be made parties to the Settlement for enforcement purposes.

4.  Proposed Plaintiff-Intervenors do not seek, in any way, to unravel or alter the work of the United States and the City of Boston in arriving at the Settlement. Indeed, Proposed Plaintiff-Intervenors have worked to assist the United States to reach the Settlement, but have been excluded from the process of negotiations and have been denied information on the status of negotiations.

## Assistance Provided by Proposed Plaintiff-Intervenors

5.  Beginning on July 29, 2005, immediately after the United States filed its lawsuit against the City of Boston, I worked with local organizations in Boston to encourage them to assist attorneys for the United States to support the lawsuit.

6.  Throughout the month of August, I and several of the Proposed Plaintiff-Intervenors regularly corresponded with attorneys for the United States regarding developments in the lawsuit.

7.  The organizational Proposed Plaintiff-Intervenors have provided attorneys for the United States with a substantial amount of facts regarding voting rights violations in Boston, have identified limited English proficient voters and assisted the United States in obtaining sworn statements regarding voting rights violations to support lawsuit, and have provided translation services to enable the United States to communicate with these voters and organizations.  In particular:

a.  On August 10, 2005, Proposed Plaintiff-Intervenor voter Siu Tsang, who is a member of the Steering Committee of Proposed Plaintiff-Intervenor Chinatown Resident Association and a member of Proposed Plaintiff-Intervenor Chinese Progressive Association, executed a declaration for attorneys for the United States about violations of the Voting Rights Act.  He made his declaration in Chinese, and Karen Chen, a staff member of Proposed Plaintiff-Intervenor Chinese Progressive Association, translated his declaration.

b.  On August 11, 2005, Proposed Plaintiff-Intervenor voter Fung Yung executed a declaration for attorneys for the United States about violations of the Voting Rights Act.  She made her declaration in Chinese, and Karen Chen, a staff member of

Proposed Plaintiff-Intervenor Chinese Progressive Association translated her declaration.

c.  On August 22, 2005, Proposed Plaintiff-Intervenor Lydia Lowe for the Chinese Progressive Association executed a declaration for attorneys for the United States about violations of the Voting Rights Act.

d.  On August 25 or 26, and August 30, 2005, Proposed Plaintiff-Intervenor voter Yan Hui, met with an attorney for the United States in order to provide a declaration about violations of the Voting Rights Act.  The declaration was not completed because of scheduling conflicts, but Yan Hui remained able and willing to provide a declaration. Karen Chen, a staff member of Proposed Plaintiff-Intervenor Chinese Progressive Association, interpreted for Yan Hui and the attorney for the United States at these two meetings.

e.  On August 26, 2005, Proposed Plaintiff-Intervenor voter Maria Altreche, who is a Board Member of Proposed Plaintiff-Intervenor City Life / Vida Urbana, executed a declaration for attorneys for the United States about violations of the Voting Rights Act.  She made her declaration in Spanish.  Gloria Rosario, a staff member of Proposed Plaintiff-Intervenor City Live / Vida Urbana, interpreted for Maria Altreche and the attorney for the United States at this meeting.

f.  On approximately eight other occasions, staff members of the Proposed Plaintiff-Intervenor Chinese Progressive Association identified voters and offered translation services to attorneys for the United States in connection with obtaining voter declarations about violations of the Voting Rights Act.

g. After the original complaint was filed on July 29, 2005, Proposed Plaintiff-Intervenor
City Life / Vida Urbana identified to attorneys for the United States two to three
Latino voters who are limited English proficient. At least two of these voters,
including Maria Altreche, met with attorneys for the United States in order to execute
declarations about violations of the Voting Rights Act. Gloria Rosario, a staff
member of Proposed Plaintiff-Intervenor City Live / Vida Urbana, interpreted for
these voters.

### Exclusion of Proposed Plaintiff-Intervenors from Negotiations

8. On August 31st and September 1st, Proposed Plaintiff-Intervenor Lydia Lowe of the
Chinese Progressive Association contacted James Walsh, counsel for the United States, about the
status of settlement negotiations with the City of Boston. Attorney Walsh did not confirm or
reveal any details about any such meetings.

9. On September 7, 2005, I asked Attorney Walsh to inform me about any settlement
negotiations that the United States had entered into with the City of Boston. Attorney Walsh
stated that he was unable to confirm or reveal any details about any such meetings.

10. Attorneys for the United States have provided increasingly less information about the
status of the lawsuit, both to me and to the Proposed Plaintiff-Intervenors individually, as the
lawsuit has progressed. In light of this development, and being concerned that a settlement
agreement would be negotiated without the participation of actual voters and community
organizations, Proposed Plaintiff-Intervenors began to explore joining the lawsuit as plaintiffs.

11. On September 9, 2005, I , along with co-counsels Cynthia Mark from Greater Boston
Legal Services and Andrew Troop, Christopher Mirick, and Arthur Cormier from Weil, Gotshal
and Manges, LLP filed a motion to intervene on behalf of organizations Chinese Progressive

Association, Chinatown Resident Association, City Life / Vida Urbana, and voters Siu Tsang, Fung Yung, Yan Hui, and Maria Altreche into United States v. City of Boston, Civ. No. 05-11598-WGY.

12. Later that day I sent courtesy copies, via Electronic Mail and Federal Express, to John Tanner, counsel for the Plaintiff United States, and W. Bradford Reynolds, counsel for Defendant City of Boston. I included with those copies a letter inquiring about any settlement negotiations and requesting to be included in those negotiations as counsel to the Proposed Plaintiff-Intervenors. I received no response.

13. On September 14, 2005, I followed up my September 9th communications with phone calls and email messages to counsel John Tanner and to W. Bradford Reynolds, and also to Merita Hopkins, Chief of Staff for Boston Mayor Menino. I received no reply.

14. On September 15, 2005, I received a phone call from John Tanner informing me that the United States and City of Boston had entered into a Memorandum of Agreement and Settlement. I also received a phone message from Merita Hopkins informing me of the same.

### Proposed Plaintiff-Intervenors' Position Regarding Settlement

15. On September 16, 17, and 19, I and my co-counsel conferred with our clients regarding the Memorandum of Agreement and Settlement, and the pending motion to intervene as plaintiffs.

16. The Proposed Plaintiff-Intervenors fully support the Memorandum of Agreement and Settlement between the United States and the City of Boston. Further, the Proposed Plaintiff-Intervenors wish to continue with the Motion to Intervene for the sole purpose of becoming parties in the case and to the Settlement, and thereby have the ability to enforce the Settlement in court.

### "Boston Voter Outreach and Education Task Force"

17. Following the filing of the lawsuit by the United States, Defendant Mayor Menino appointed a "Boston Voter Outreach and Education Task Force" (the "Task Force"). The announced purpose of the Task Force was to coordinate and assist efforts of the City of Boston to address concerns of the City's language minority groups, including concerns relating to the distribution and dissemination of bilingual election materials.

18. Mayor Menino appointed to the Task Force every major community organization working on voting rights and voter participation in the City of Boston, except for the Proposed Plaintiff-Intervenors Chinese Progressive Association, Chinatown Resident Association and City Life / Vida Urbana. All three organizations have long worked on voting rights, and have been outspoken critics of the City of Boston for its failure to comply with the Voting Rights Act.

19. The Task Force held two meetings, on Aug. 31 and Sept. 7, without any representation from any of the Proposed Plaintiff-Intervenors.

20. Upon information and belief, after hearing that Proposed Plaintiff-Intervenors were seeking to intervene in the lawsuit, Defendant Menino appointed Proposed Plaintiff-Intervenor Chinese Progressive Association to the Task Force just prior to the next Task Force meeting on September 14, 2005.

21. On September 14, 2005, the Chinese Progressive Association attended the first Task Force meeting. The next day, the United States and City of Boston filed the Settlement with the Court. The next week, the United States filed its opposition to the Motion to Intervene, arguing that the involvement of the Proposed Plaintiff-Intervenors is unnecessary to the resolution of this case.

### Conclusion

22. By the reasons of the foregoing and for the reasons stated in the arguments set forth in the Proposed Plaintiff-Intervenors' Reply to the United States' Opposition to their motion to intervene, I respectfully request that the Court grant the Motion to Intervene, allowing the Proposed Plaintiff-Intervenors to intervene by permission, pursuant to Rule 24(b) of the Federal Rules of Civil Procedure.

I declare under the penalty of perjury and pursuant to Title 28 of the United States Code, Section 1746, that the foregoing is true and correct to the best of my knowledge, recollection, and belief.

Dated:  September 27, 2005

Glenn D. Magpantay