UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11598-WGY

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CITY OF BOSTON, MASSACHUSETTS; THOMAS M. MENINO, in his official capacity as Mayor of the City of Boston; BOSTON CITY COUNCIL; MICHAEL F. FLAHERTY, PAUL J. SCAPICCHIO, JAMES M. KELLY, MAUREEN E. FEENEY, CHARLES C. YANCEY, ROB CONSALVO, JOHN TOBIN, CHUCK TURNER, MICHAEL P. ROSS, JERRY P. MCDERMOTT, FELIX D. ARROYO, MAURA HENNIGAN, STEPHEN J. MURPHY; BOSTON ELECTION DEPARTMENT; GERALDINE CUDDYER, in her official capacity as Chair of the Boston Election Department,

    Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISQUALIFY NADINE COHEN AS COUNSEL

### I. INTRODUCTION

The United States of America filed an action against the City of Boston, the Mayor in his official capacity, the Boston City Council, the City Councilors in their official capacity, the Boston Election Department, and chair of the

1

Election Department in her official capacity. Plaintiff contends the defendants are in violation of Section 203 of the Voting Rights Act ("VRA"), 42 U.S.C. § 1973aa-1a and Section 2 of the VRA, 42 U.S.C. § 1973. On August 31, 2005, Nadine Cohen filed a notice of appearance on behalf of four of the defendants: City Councilors Charles Yancey ("Yancey"), Chuck Turner ("Turner"), Felix Arroyo ("Arroyo"), and Maura Hennigan ("Hennigan"). For the reasons explained below, Nadine Cohen should be disqualified as counsel because the City Councilors are sued in their official capacity only, and hence, the suit lies against the City. Further, the only attorney who may represent the City Councilors in this case is the Corporation Counsel for the City of Boston.

## II. ARGUMENT

### A. Suing the City Councilors in Their Official Capacity is Another Way of Suing the City of Boston.

There is no dispute that Plaintiff sues the Mayor, Thomas Menino in his official capacity (Pl's Complaint ¶4); City Councilors Paul J. Scapicchio, James M. Kelly, Maureen E. Feeney, Charles C. Yancey, Rob Consalvo, John Tobin, Chuck Turner, Michael P. Ross, Jerry P. McDermott, Felix D. Arroyo, Maura Hennigan, and Stephen J. Murphy in their official capacities (Pl's Complaint ¶7); and, Chair of the

Election Department, Geraldine Cuddyer in her official capacity (Pl's Complaint ¶9). A lawsuit filed against public officials in their official capacity, however, is only another way of pleading an action against the public entity that the official represents. See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 690 n.55 (1978).

Accordingly, any claim against Defendants Menino, Scapicchio, Kelly, Feeney, Yancey, Consalvo, Tobin, Turner, Ross, McDermott, Arroyo, Hennigan, Murphy, and Cuddyer (the official capacity defendants) in their official capacity is the functional equivalent of a claim against the City of Boston. See Hafer v. Melo, 502 U.S. 21, 25 (1991); Brandon v. Holt, 469 U.S. 464, 471-472 (1985); Armstrong v. Lamy, 938 F. Supp. 1018, 1035 (D. Mass. 1996); Feliciano v. Dubois, 846 F. Supp. 1033, 1043 (D. Mass. 1994); Stratton v. City of Boston, 731 F. Supp. 42, 46 (D. Mass. 1989).

There are no facts in the Plaintiff's Complaint that remotely suggest any of the official capacity defendants took any individual action which even remotely could be construed as violating the VRA. Further, Plaintiff's Complaint is silent as to any allegations that the official capacity defendants were personally involved in the alleged VRA violations. In the absence of such a showing, the

Plaintiff's claims against the official capacity defendants must fail as a matter of law, and they should be dismissed.

### A. The City of Boston Corporation Counsel is the sole attorney that can Represent City Councilors Sued in their Official Capacity.

Yancey, Turner, Arroyo, and Hennigan have attempted to hire their own attorney to defend them in their official capacities even though the Massachusetts Appeals Court stated that the City Council may not hire its own attorney without the Mayor's approval. See City Council of Boston v. Mayor of Boston, 58 Mass. App. Ct. 542, 545 (2003). The City Councilors' inability to hire their own counsel without mayoral approval is a function of the structure of Boston city government. The Boston City Charter establishes the Mayor as the chief executive officer of the City and the City Council as the City's legislative body. St. 1885, c. 266, § 6, and St. 1948, c. 452, § 11, as appearing in St. 1951, c. 376, § 1.

Boston's form of government is a "strong mayor" type of government under which the City Council has relatively limited powers.[1] The Supreme Judicial Court has noted that:

---

[1] On November 8, 1949, the voters of Boston adopted a Plan A charter ("Plan A"). However, said Plan A as adopted by the voters of Boston is not the same as the "Plan A" that is described in M.G.L. c. 43, although there are some

4

> The city council may not "directly or indirectly . . . take part in the employment of labor, the making of contracts, or the purchase of materials, supplies or real estate; . . . nor in the conduct of the executive or administrative business of the city or county; nor in the appointment or removal of any city or county employee; nor in the expenditure of public money except such as may be necessary for the contingent and incidental expenses of the city council." St. 1948, c. 452, § 17G, inserted by St. 1951, c. 376, § 1.
>
> The city council's authority is limited largely to a check on the mayor's executive function through the power of appropriation. St. 1822, c. 110, § 15. All budgets and supplementary appropriation orders other than for school purposes, however, must originate with the mayor, who submits them to the city council. The council may reduce or reject any item but may not increase or add items. St. 1909, c. 486, § 3, as appearing in St. 1941, c. 604, § 1. The mayor has veto powers over all orders, ordinances, resolutions and votes of the city council authorizing loans or appropriating money. St. 1948, c. 452, § 17D, inserted by St. 1951, c. 376, § 1.

City Council of Boston v. Mayor of Boston, 383 Mass. 716, 720 (1981).

Under this framework, the Law Department, under the charge of the Corporation Counsel, has been the exclusive legal counsel for all City departments and officials, including the City Council since 1881. This exclusive

---

similarities. Rather, Plan A, as chosen by the voters of Boston and as subsequently amended, is a legislative charter specifically tailored to the City of Boston. City Council of Boston v. Mayor of Boston, 24 Mass. App. Ct. 663, 669 (1987), further appellate review denied, 401 Mass. 1101 (1987) (citations omitted).

5

relationship was codified in City of Boston Code, Ordinance, Chapter V, § 5-8.1[2] (hereinafter "CBC Ord. § 5-8.1") which provides in relevant part:

> [The Corporation Counsel] shall by himself or by his assistants in the Law Department appear as Counsel in all suits, actions, or prosecutions which may involve the rights or interests of the City, and defend the officers of the City in suits against them for their official actions, or for the performance of their official duties . . . .

In City Council of Boston v. Mayor of Boston, the Massachusetts Appeals Court had the opportunity to interpret CBC Ord. § 5-8.1 in the context of whether the Boston City Council could hire its own permanent attorney without the mayor's approval. See 58 Mass. App. Ct. 542, 543, 544 (2003). The court found that the City Council could not hire its own attorney without the mayor's approval because the proposed attorney's "responsibilities would duplicate those already assigned to corporation counsel under CBC § 5-8.1, insofar as that section calls upon corporation counsel to advise the divisions of the

---

[2] CBC Ord. § 5-8.1 does contain a passage, erroneously published by the City Clerk, indicating that the Council may have the benefit of the services of special counsel, but that passage is null and void. That passage, which affects the powers and duties of the Law Department, was added by a 1979 City Council reorganization amendment that was vetoed by the Mayor and is, therefore, of no force or effect under the holding in City Council of Boston, 24 Mass. App. Ct. at 669 (1987).

6

city on legal matters and to represent them in disputes." Id. at 545. The addition of the challenged position of "counsel for the city council would constitute a reorganization of the office of corporation counsel that can only occur with the joint approval of the mayor and the council." Id. Because the Mayor vetoed the City Council's order enabling the Council to retain its own lawyer, the City Council's request for a lawyer was denied. See id. at 543.

In this case, Yancey, Turner, Arroyo, and Hennigan are now attempting to do what the Appeals Court in City Council of Boston, explicitly said they could not do: hire their own counsel to perform a function that would duplicate duties already assigned to the Corporation Counsel. See id. at 543. The Plaintiff sued these Councilors in their official capacity and based on CBC § 5-8.1 and City Council of Boston, the Corporation Counsel is the only lawyer that can represent them. See id. The Boston City Charter is devoid of any language expressly authorizing the City Council to employ legal counsel; and the Massachusetts Legislature has not granted the City Council such authority. Accordingly, the City Council is prohibited from employing its own attorney as a matter of law, and the

7

Council's allegations to the contrary are entirely lacking of any legal merit.

    **B.    Four City Councilors are Unable to Make a Binding Decision for the City Council.**

Even assuming arguendo that the City Council could hire its own attorney without mayoral approval; Yancey, Turner, Arroyo, and Hennigan have not utilized the proper procedure for binding the City Council to their decision to hire an outside attorney. The City Council's authority is limited and a majority or two-thirds of its members, is required for it to act depending upon the situation. See S. Boston Betterment Trust Corp. v. Boston Redev. Auth., 438 Mass. 57, 63 (2002). Given the fact that the City Council has thirteen members, the four members who have decided to hire outside counsel do not constitute the majority necessary for the City Council to act.

The court in South Boston Betterment Trust Corp. discussed the power of individual City Councilors. In that case, a Boston City Councilor and other elected officials negotiated and executed a memorandum of understanding ("MOU") with the Boston Redevelopment Authority. See S. Boston Betterment Trust Corp., 438 Mass. at 58. The court found that the MOU was unenforceable because the Councilor and the other officials lacked the authority to enter into

8

the contract. See id. at 63. The Councilor "was authorized to represent his constituents *in the city council*, but he [had] no authority to bind the city council to any action, even assuming the action is one that the city council is authorized to take, in the absence of quorum." Id. at 63-64 (emphasis in original). Similar to the Councilor in South Boston Betterment Trust Corp., Yancey, Turner, Arroyo, and Hennigan are unable to bind the City Council to their decision to hire an outside attorney in this case. See id. Therefore, Nadine Cohen should be disqualified as counsel for any of the defendants.

### III. CONCLUSION

For the reasons stated above, the Defendants move to disqualify Nadine Cohen as counsel for Charles Yancey, Chuck Turner, Felix Arroyo, and Maura Hennigan.

Respectfully submitted,

DEFENDANTS, CITY OF BOSTON; MAYOR THOMAS MENINO; BOSTON CITY COUNCIL; MICHAEL F. FLAHERTY, PAUL J. SCAPICCHIO, JAMES M. KELLY, MAUREEN E. FEENEY, CHARLES C. YANCEY, ROB CONSALVO, JOHN TOBIN, CHUCK TURNER, MICHAEL P. ROSS, JERRY P. MCDERMOTT, FELIX D. ARROYO, MAURA HENNIGAN, STEPHEN J. MURPHY; BOSTON ELECTION DEPARTMENT; GERALDINE CUDDYER,

Merita A. Hopkins
Corporation Counsel

By their attorney:

/s/ Merita C. Hopkins

Merita Hopkins, BBO # 239580
Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-4040