UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>              Plaintiff,<br><br>        v.<br><br>CITY OF BOSTON, MASSACHUSETTS, et al.,<br>              Defendants. | Civil Action No. 05-11598 WGY |

MOTION OF THE SECRETARY OF THE COMMONWEALTH
OF MASSACHUSETTS TO INTERVENE AS A DEFENDANT

Pursuant to Fed. R. Civ. P. 24(a) and (b), the Secretary of the Commonwealth of

Massachusetts, William Francis Galvin, in his official capacity, moves to intervene as a

defendant in this action for the purpose of opposing the United States' "Unopposed Motion to

Clarify Memorandum of Agreement and Settlement" (Docket No. 72, filed on May 24, 2007) and

seeking appropriate declarations concerning the transliteration into Chinese characters of

candidate names on ballots for elections held in the City of Boston.

In support of this motion, the Secretary submits the accompanying memorandum of law,

the affidavits of Michelle K. Tassinari, Guang Yang, and Kai Lau, the Secretary's Proposed

Answer & Counterclaim, and the Secretary's Proposed Opposition to Motion to Clarify.

REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), the Secretary believes that oral argument may assist the

Court and therefore requests a hearing on this motion.

CERTIFICATION OF COMPLIANCE WITH L.R. 7.1(A)(2)

The undersigned counsel hereby certifies that he has conferred with counsel for the

parties and that we have attempted in good faith to resolve or narrow the issues presented by this

motion.  The City of Boston defendants take no position on this motion.

SECRETARY OF THE COMMONWEALTH OF
MASSACHUSETTS
By his attorney,

MARTHA COAKLEY
ATTORNEY GENERAL


 /s/ Peter Sacks
Peter Sacks, BBO No. 548548
Assistant Attorney General
One Ashburton Place
Boston, Massachusetts 02108-1698
(617) 727-2200, ext. 2064
Peter.Sacks@state.ma.us

Date:   July 9, 2007

<u>Certificate of Service</u>
I hereby certify that this document was filed through the Electronic Case Filing (ECF) system
and thus copies will be sent electronically to the registered participants as identified on the
Notice of Electronic Filing (NEF); paper copies will be sent this day to those who are
indicated on the NEF as non-registered participants and who are not represented by counsel.
  /s/ Peter Sacks

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.
05-11598-WGY

UNITED STATES OF AMERICA,

Plaintiff

V.

CITY OF BOSTON, MASSACHUSETTS, ET AL.

Defendants

### Affidavit of Michelle K. Tassinari

I, Michelle K. Tassinari, hereby depose and say upon oath as follows:

1.    I am Director of and Legal Counsel to the Elections Division of the Office of the Secretary of the Commonwealth of Massachusetts and as such have personal knowledge of the matters set forth herein.

2.    The Elections Division is charged with, among other duties and responsibilities, administering state and federal elections. The Elections Division is responsible for the preparation of both absentee and official ballots, as well as other elections related materials, for state, federal and presidential primaries.

3.    In June 2006, this Office worked with the City of Boston to seek special legislation to allow this Office to translate certain ballots for state and federal elections for the City of Boston into Chinese and Vietnamese. On June 15, 2006, Chapter 111 of the Acts of 2006 was enacted which authorizes this Office to print bilingual ballots for

1

the City of Boston in Chinese and Vietnamese. On behalf of the Secretary I was intimately involved, along with the City, in the drafting of that statute and the effort to have it enacted by the Legislature; the statute was primarily drafted by this office. At no time during the drafting or enactment process did I hear or see the slightest suggestion from any interested person that "bilingual" ballots included transliteration of candidate names, and the Secretary would have opposed any provision that expressly or implicitly required such transliteration. (Chapter 111 of the Acts of 2006 is attached as "A").

4.     Pursuant to Chapter 111 of the Acts of 2006, the Office of the Secretary of the Commonwealth provided bilingual Chinese and Vietnamese ballots in the September 19, 2006 State Primary and November 7, 2006 State Election. The candidate names were not transliterated into Chinese characters on those ballots. Following those elections, the Office of the Secretary of the Commonwealth did not receive any objection or comment on the issue of transliteration from the City of Boston or the Department of Justice. After the September 19, 2006 primary, the Boston Herald reported that "Federal observers were already on hand at polling locations in Boston and Springfield under legal agreements that required the cities to do a better job serving immigrant voters." The Herald went on to report "a complaint from the New York-based Asian American Legal Defense and Education Fund that candidates' names did not appear on the ballot in Asian languages." The story then quoted the response of the spokesman for the Secretary of the Commonwealth: "'Transliteration was never part of the agreement.'" See Laura Crimaldi, "A few problems turn out with Hub's voters," Boston Herald, September 20, 2006 at p. 5, 2006 WLNR 16387130 (copy attached hereto as Exhibit "B").

5.    By letter dated March 30, 2007, from Jared M. Slade, Voting Section of the Department of Justice, to MaryBeth Long, Assistant Corporation Counsel to the City of Boston, Mr. Slade acknowledges that this Office declined to print ballots including transliteration of candidate names. (Letter from Jared M. Slade to Kristen R. Green dated May 21, 2007; Letter from Jared M. Slade to MaryBeth Long dated March 30, 2007; Letter from Jared M. Slade to MaryBeth Long dated April 26, 2007; and Letter from MaryBeth Long to Jared Slade dated May 3, 2007 attached as "C").

6.    Shortly before the City of Boston's April 17, 2007 Special Primary for City Councillor District 2, the Secretary of the Commonwealth's Office was notified that the City had transliterated candidate names on the ballots, which were printed by the City because they were for a local rather than state or federal election.

7.    On or about May 23, 2007, the Secretary's Office was notified by telephone that the Department of Justice expected transliteration of candidate names on the State ballots for the State Special Primary for the First Suffolk and Middlesex Senate District to be held on May 29, 2007.

8.    By letter dated May 24, 2007, I notified the Corporation Counsel for the City of Boston, William K. Sinnott, that the Secretary of Commonwealth considers any action to "clarify" the Memorandum of Agreement and Settlement dated September 15, 2005 to require "transliteration" of candidate names into Chinese and Vietnamese to be a change in the "Agreement that requires notice to the Secretary of the Commonwealth no less than 120 days preceding the election in which the change is to take place." See 2006 Mass. Acts. c. 111 § 4.  Furthermore, I indicated in that letter that no such notice was

given prior to the recent Special Election in Boston for City Councillor District 2,

wherein the ballots contained transliterations of candidate names. The letter was sent to

Mr. Sinnott by email and copied to Jared Slade of the Department of Justice prior to the

filing of the United States "Unopposed Motion for Clarification" on May 24, 2007.

(Letter from Michelle K. Tassinari to William K. Sinnott dated May 24, 2007 attached as

"D").

      9.    The Secretary believes that transliteration of candidate names into Chinese

characters on ballots presents a significant potential for misleading or confusing voters

which may unfairly influence the result of an election and give rise to litigation

challenging election results and seeking a new election

      10.    Prior to the enactment of the legislation, the City held a Special Preliminary

Municipal Election for City Councillor for District 1 on May 16, 2006. In accordance

with Paragraph 19 of the Memorandum of Agreement and Settlement , the ballot was

printed by the City and was printed bilingually in English and Chinese, i.e., headings and

instructions appeared in English and were also translated into Chinese. As confirmed by

the Chair of the Boston Election Department, the names of candidates were printed only

in English (i.e., using the Roman alphabet) and not transliterated into Chinese characters.

      11.    Based upon published reports, two weeks later, at a May 30, 2006 legislative

hearing on the proposed legislation, the defendant Chair of the Boston Election

Department testified that ballots in Chinese had been printed at the special municipal

election earlier in May. The report gave no indication that the Chair qualified this

statement by noting that candidate names had not been transliterated or by stating that the

ballots did not comply with the Settlement Agreement. See Elise Castelli, "Bill Pushed

to Require Boston Ballots in Chinese, Vietnamese," <u>State House News Service</u>, May 30,

2006 (copy attached hereto as Exhibit "E").

*SIGNED UNDER THE PENALTIES OF PERJURY THIS 9th DAY OF JULY, 2007.*

/S/ Michelle K. Tassinari

MICHELLE K.TASSINARI
Director/Legal Counsel
Elections Division

<u>Certificate of Service</u>

I hereby certify that this document was filed through the Electronic Case Filing (ECF) system and thus copies will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF); paper copies will be sent this day to those who are indicated on the NEF as non-registered participants and who are not represented by counsel.

/s/ Peter Sacks

# Chapter 111 of the Acts of 2006

## AN ACT REQUIRING THE PREPARATION OF CERTAIN BALLOTS IN THE CITY OF BOSTON.

*Be it enacted by the Senate and House of Representatives in General Court assembled, and by the authority of the same as follows:*

**SECTION 1.** Notwithstanding section 40 of chapter 54 of the General Laws, or any other general or special law to the contrary, in federal and state elections the state secretary shall prepare bilingual ballots in English and Chinese, and English and Vietnamese in addition to any other bilingual ballots required by law, in the designated polling places within the city of Boston as defined by the provisions of Paragraphs (9) and (20) of the Memorandum of Agreement and Settlement, dated September 15, 2005, entered in United States of America v. City of Boston, Civil Docket Number 05-11598-WGY.

**SECTION 2.** Notwithstanding section 58 of the charter of the city of Boston, or any other general or special law to the contrary, in all city of Boston municipal elections the election commission shall cause bilingual ballots in English and Chinese, and English and Vietnamese in addition to any other bilingual ballots required by law, in the designated polling places within the city of Boston as defined by the provisions of Paragraphs (9) and (20) of the Memorandum of Agreement and Settlement, dated September 15, 2005, entered in United States of America v. City of Boston, Civil Docket Number 05-11598-WGY.

**SECTION 3.** The city of Boston shall provide the state secretary with the number of bilingual Chinese and Vietnamese ballots and the designated polling locations where they are to be used, as well as any other information the secretary may require, no later than July 21, 2006 for the state primary and no later than September 8, 2006, for the state election. For any state or federal election after 2006, no changes to the number of bilingual ballots used in the polling places that have been designated within the city of Boston for the 2006 state election shall be made without the consultation and approval of the secretary of state no later than 60 days before the primary or election in which the changes are to take place.

**SECTION 4.** If the parties to the Memorandum of Agreement and Settlement dated September 15, 2005 entered in United States of America v. City of Boston, Civil Docket Number 05-11598-WGY seek to make changes in that Agreement, the secretary shall be notified no less than 120 days preceding the election in which the changes are to take place.

**SECTION 5.** No changes shall be made in the Memorandum of Agreement and Settlement dated September 15, 2005 entered in United States of America v. City of Boston, Civil Docket Number 05-11598-WGY that affect any state or federal elections without the consultation and approval of the state secretary.

**SECTION 6.** This act is enacted as part of the Memorandum of Agreement and Settlement dated September 15, 2005 entered in United States of America v. City of Boston, Civil Docket Number 05-11598-WGY, and this act shall remain in effect as long as the Memorandum of Agreement and Settlement remains in force and effect.

**SECTION 7.** This act shall take effect upon its passage.

<div align="center">

**Approved June 15, 2006.**

</div>

Return to:
List of Laws passed in 2006 Session
General Court home page, or
Commonwealth of Massachusetts home page.



FOCUS - 3 Results - boston /10 herald & September /5 2006                                    Page 1 of 2

Source:  Legal > States Legal - U.S. > Massachusetts > Search News > General News > The Boston Herald ⓘ
Terms:  boston /10 herald & September /5 2006  (Edit Search | Suggest Terms for My Search)
Focus:  boston /10 herald & September /5 20 /5 2006 & crimaldi  (Exit FOCUS™)

✔Select for FOCUS™ or Delivery

*A few problems turn out with Hub's voters The Boston Herald September 20, 2006 Wednesday*

Copyright 2006 **Boston Herald** Inc.
The **Boston Herald**

**September 20, 2006** Wednesday
ALL EDITIONS

**SECTION:** NEWS; Pg. 005

**LENGTH:** 266 words

**HEADLINE:** A few problems turn out with Hub's voters

**BYLINE:** By LAURA **CRIMALDI**

**BODY:**

One Asian group filed a complaint and several minor voting problems were reported as federal observers looked on at polling places across the state during a brisk voting day for the Hub.

By 6 p.m. yesterday, 69,526 voters had cast ballots in Boston, said Brian McNiff, a spokesman for Secretary of State Bill Galvin. That figure is about 8,000 shy of the 2002 total state primary turnout, when 77,712 voters cast ballots in Boston.

Voting in Boston went smoothly for the most part, with the exception of minor problems with less than a dozen scanners, which tabulate votes, and a complaint from the New York-based Asian American Legal Defense and Education Fund that candidates' names did not appear on the ballot in Asian languages.

Federal observers were already on hand at polling locations in Boston and Springfield under legal agreements that required the cities to do a better job serving immigrant voters.

``Transliteration was never part of the agreement,'' said McNiff of the complaint from the Asian group.

Yesterday, there were more than 1,600 poll workers staffing 253 locations in Boston, including 300 interpreters who speak nine different languages, a mayoral spokeswoman said.

``It's been busy for me,'' said Jenny Nguyen, a poll worker who assisted Vietnamese-speaking voters casting their ballots at the Dorchester House Multi-Service Center, where signs were written in Spanish, Vietnamese, Chinese and other languages.

- lcrimaldi@bostonherald.com

(NOTE: This item ran under the headline ``A few problems turn out along with Hub voters''



U.S. Department of Justice

Civil Rights Division

---

Voting Section - NWB.
950 Pennsylvania Avenue, N.W.
Washington, DC  20530

May 21, 2007

**VIA FIRST-CLASS MAIL AND FACSIMILE**

Kristen R. Green, Esq.
Attorney, Elections Division
Office of the Secretary of the Commonwealth
One Ashburton Place, Room 1705
Boston, Massachusetts    02108

Re: United States v. City of Boston CV05-11598-WGY

Dear Ms. Green:

    I am sending the enclosed letters for your information.

Sincerely,

Jared M. Slade
Voting Section
(202) 305-4733

cc: MaryBeth Long, Assistant Corporate Counsel for City of Boston, Andrew M. Troop, Counsel for Asian American and Latino Intervenors – Chinatown Resident Association, Chinese Progressive Association, City Life/Vida Urbana, Fung Yung, Maria Altreche, Siu Tsang, Yan Hui.



U.S. Department of Justice

Civil Rights Division

---

Voting Section - NWB.
950 Pennsylvania Avenue, N.W.
Washington, DC  20530

March 30, 2007

**VIA FIRST-CLASS MAIL AND FACSIMILE**

MaryBeth Long
Assistant Corporation Counsel
1 City Hall Plaza
Boston, Massachusetts  02201

Re: United States v. City of Boston CV05-11598-WGY

Dear Ms. Long:

This letter follows our ongoing monitoring of the City of Boston's compliance with the Voting Rights Act and the Memorandum of Agreement and Settlement, and our November 30, 2006 post-election meeting with the City.

We commend the City in its efforts to comply with the Voting Rights Act and the Memorandum of Agreement and Settlement, specifically in its marked improvement in the number of bilingual poll workers it has hired to serve those citizens who cannot vote effectively without such assistance. In the November 2004 election, before this litigation was filed, the City had only 39 Spanish-speaking poll workers, and no bilingual personnel at sites with very large numbers of Spanish-speaking voters. According to your latest report, that number had increased for the November 2006 general election to 183 Spanish-speaking poll workers. Similarly, where there were only nine Chinese-speaking poll workers in 2004, there were 75 in 2006, and the number of Vietnamese speaking poll workers has increased from 10 to 32. These dramatic increases have led to an equally dramatic decline in the mistreatment of minority voters that so marred previous elections. We note and commend these improvements and the effort and commitment involved.

Issues remain, however, concerning availability of bilingual poll workers. Twenty polling places with over 100 Spanish surnamed voters did not have a Spanish-speaking poll worker as required by the Agreement. At one such site, the Boys and Girls Club, no bilingual personnel were present although the Agreement mandates two such personnel. At Orient Heights, no Spanish-speaking interpreter was available for two different periods of the day and voters who did not speak English well had to rely on such assistance as they could find on their own. The Metropolitan site

-2-

proved to have a very large number of voters needing language assistance, and required an additional Chinese-speaking poll worker, especially in light of overbearing campaign workers and a bottleneck in the flow of voters there. At Boston University-Myles Standish Hall, a poll worker proved unable to speak Chinese well enough to assist voters effectively. As we discussed during our November 30, 2006 meeting, these situations can be resolved when the City establishes a backup team of bilingual poll workers that can be sent to polling places as needs arise on election day.

You also advised us that the City is having a difficult time recruiting Vietnamese-speaking poll workers. We appreciate your willingness to explore having the Vietnamese-speaking City liaison shadow your City Elections Language Coordinator to learn how to reach out effectively to the community to recruit bilingual Vietnamese-speaking poll workers in the course of her other duties. Such outreach by Vietnamese speaking personnel has proved highly effective in other areas, such as San Diego County, California, which in this way was able to satisfy fully the terms of a similar Agreement.

We also note dramatic improvement in other areas. Prior to the Agreement, poll workers often did not post all Spanish language materials. Your current plans to implement a form of the San Diego practice where a pre-printed screen is provided to each precinct with each sign in each language on a single standing display should solve the problems the City has faced with complete posting of materials at the polls. Also prior to the Agreement, the City provided, of course, few if any translated materials in Chinese and Vietnamese, and some of those materials translated in Chinese actually steered voters with questions not to neutral City election officials, but to private entities which endorsed particular candidates. The City now provides almost all of its election materials in Spanish, Chinese, and Vietnamese, and the City has addressed earlier incorrect Vietnamese translations of some of the signs and materials provided by the State.

As we discussed in the November 30, 2006 meeting, however, in the recent general election, the candidates' names were not transliterated in Chinese on the ballots. The candidates' names are, of course, the most important information on the ballot, and it is essential that they be intelligible to all citizens. You have advised that the City requested the transliteration on the materials produced by the State, but the State declined to do so. You have assured us, however, that the City will print the ballots in all future elections to ensure that the names are transliterated into Chinese so that the ballots will be equally accessible to all citizens.

We have discussed the availability of voting machines that are accessible to voters with disabilities, and the failure of the State to provide sufficient machines for each precinct as required by the Help America Vote Act, or HAVA. In addition to the absence of machines during the 2006 elections, the accessible machines that were provided to you did not have audio Cantonese or Vietnamese language capability as required under the Agreement. Again, you stated that the City corresponded with the state and the state represented as late as October 23, 2006, that the State thought that the machines would have Cantonese and Vietnamese in Audio. We also understand that the City did not find out that audio Cantonese and Vietnamese would not be available on the machines until about November 3, 2006, and promptly notified the Department of Justice.

-3-

We also note that the City experienced widespread breakdown of the accessible machines on election day. Indeed, you informed us on election day that the new machines were practically unusable, and the federal observers documented consequent frustration of at least one blind voter. While we understand that the machines were only delivered by the State at a very late date and that the City's opportunities to train poll workers in the operation of the machines was limited, the experience of the 2006 general election remains a vivid lesson in the need for effective training prior to future elections.

Also, in past elections, there has been confusion and lack of uniformity concerning when a provisional ballot should be offered to a voter. In the November 2006 election, federal observers documented many more of the precincts than in the past offered provisional ballots to voters who were not found on the registration list but believed that they had registered to vote.

Again, we appreciate all of the effort and cooperation that the City has given in moving closer to full compliance with the Voting Rights Act, and we look forward to continued improvement. If you have any questions with respect to the foregoing, please do not hesitate to contact me at (202) 305-4733.

Sincerely,

Jared M. Slade
Voting Section



U.S. Department of Justice

Civil Rights Division

---

Voting Section - NWB.
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

April 26, 2007

**VIA FIRST-CLASS MAIL AND FACSIMILE**

MaryBeth Long
Assistant Corporation Counsel
1 City Hall Plaza
Boston, Massachusetts    02201

Re: United States v. City of Boston CV05-11598-WGY

Dear Ms. Long:

This is to acknowledge and commend the City's prompt response to the critical issue of the transliteration of candidates' names into Chinese on the ballots for the April 17, 2007 election and future elections for the City. Such transliteration is, of course, essential so that many Chinese-speaking Boston citizens can tell for whom they are voting and enjoy equal access to the franchise. This was illustrated in the recent election where experienced federal observers noted that the transliteration of the names in Chinese was making a remarkable difference in the ease of voting for Chinese-speaking voters.

We also commend you for the effective translation on the audio component of the Automark machine into Cantonese, the dialect spoken by most Chinese-speaking citizens in Boston, and into Vietnamese. One federal observer noted that even when the accessible machines were not otherwise functioning properly, a Chinese-speaking voter utilized the Cantonese audio function while filling out an optical scan ballot. The voter noted how helpful the translation proved.

We look forward to seeing fully transliterated Chinese ballots, including the names of the candidates, in all future elections in Boston as required by our Agreement, and continuing Cantonese, Vietnamese and Spanish language availability on the audio functions of the Automark machines.

We are still reviewing the information gathered from the election but wanted immediately to give credit where credit is due. Again, we appreciate all of the effort and cooperation that the City has given in moving closer to full compliance with the Voting Rights

- 2 -

Act, and we look forward to continued improvement. If you have any questions with respect to the foregoing, please do not hesitate to contact me at (202) 305-4733.

Sincerely,

Jared M. Slade
Voting Section



# CITY OF BOSTON
# LAW DEPARTMENT
City Hall, Room 615
Boston, MA 02201

THOMAS M. MENINO
*Mayor*

WILLIAM F. SINNOTT
*Corporation Counsel*

May 3, 2007

Jared Slade, Esq.
US Department of Justice
  Civil Rights Division
Voting Section
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

Dear Attorney Slade:

   I write in response to your correspondence of April 26, 2007 concerning the City of Boston's performance in the Special Preliminary Municipal Election in City Council District Two on April 17, 2007. Thank you for your thoughts and commendation of the Election Department's efforts in addressing the important issue of transliteration.

   As I previously mentioned, and as your observer reports indicated, our initial Chinese transliteration efforts were very well-received in the Chinese community. At this time, I would just like to reiterate once again that it is the City of Boston's intent to transliterate candidate names for all future City elections, for which the City prints the ballots. But it is, of course, the Secretary of State's Office that produces the ballots for all other elections.

   We are gearing up for our upcoming election on May 15, 2007. As well, we are making preparations to address the transliteration of candidate names in anticipation of the September City Preliminary Elections and November City Elections.

   Thank you again for your comments and I look forward to meeting you when you come again to Boston.

Sincerely,

MaryBeth C. Long
Assistant Corporation Counsel
(617) 635-4038

cc: Michelle Tassinari, Esq.

TEL.: (617) 635-4034 FAX: (617) 635-3199



# The Commonwealth of Massachusetts
### William Francis Galvin, Secretary of the Commonwealth
### Elections Division

May 24, 2007

Mr. William K. Sinnott
Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA 02201

VIA E-MAIL AND FIRST CLASS MAIL

Dear Attorney Sinnott:

It has come to the attention of this Office that the City of Boston and the Department of Justice may be seeking to file court papers to "clarify" the Memorandum of Agreement and Settlement dated September 15, 2005 so as to require "transliteration" of candidate names into Chinese and Vietnamese. Please be advised that the Secretary considers that action to be a change in the Agreement that requires notice to the Secretary of the Commonwealth no less than 120 days preceding the election in which the change is to take place. (See 2006 Mass. Acts c. 111 § 4). No such notice was given prior to the recent Special Election for City Councillor District 2.

To the extent that this change is proposed to affect state and federal elections, the City of Boston may not make any changes without the consultation and approval of the State Secretary. At this time, the City of Boston has not consulted with the Secretary nor received his approval regarding this proposed change. (See 2006 Mass. Acts c. 111 § 5).

The Secretary has serious concerns regarding the proposed change and welcomes the opportunity to discuss this matter with the Department of Justice and the City of Boston.

Very truly yours,

Michelle K. Tassinari
Director/Legal Counsel

cc:    Jared Slade, Department of Justice



One Ashburton Place, 17th Floor, Boston, Massachusetts 02108
(617) 727-2828 • 1-800-462-VOTE (8683)
website: www.sec.state.ma.us/ele • e-mail: elections@sec.state.ma.us

**Driscoll, Nancy (SEC)**

From:        State House News Service [news@statehousenews.com]
Sent:        Tuesday, May 30, 2006 6:00 PM
To:          SHNS4
Subject:     BILL PUSHED TO REQUIRE BOSTON BALLOTS IN CHINESE, VIETNAMESE

BILL PUSHED TO REQUIRE BOSTON BALLOTS IN CHINESE, VIETNAMESE

By Elise Castelli
STATE HOUSE NEWS SERVICE

STATE HOUSE, BOSTON, MAY 30, 2006.....State and
city election officials urged lawmakers Tuesday
to quickly back a bill that would permit Boston
to print ballots for state and federal elections in Chinese and Vietnamese.
State Secretary William Galvin and Boston
Election Department Chair Geraldine Cuddyer both
asked members of the Legislature's Election Laws
Committee to recommend the legislation to the full House.
The bill stems from a September 2005 legal
agreement and settlement between the City of
Boston and the U.S. Department of Justice
requiring the state and city to provide ballots
in those languages for non-English speaking
voters.   The accord was reached in response to a
lawsuit against the City of Boston and the Boston
City Council alleging that the voting rights of
non-English speaking voters had been violated.
The measure before the committee applies only to Boston.
The bill, referred to the committee just last
month, must be passed by June 18, according to
its sponsors.  Galvin also recommended swift
passage of the bill, noting ballots for the
September primaries are about to be printed.
A state law is required to allow Boston to meet
the Department of Justice recommendations in
state and federal elections. Current state law
only permits the printing of ballots in English
unless federal population requirements are met to
trigger printing in other languages.
Neither the Vietnamese nor Chinese populations
meet that threshold, Galvin said.
Under the federal agreement, bilingual ballots
are required in precincts where there are at
least 35 voters speaking only Chinese or 30
voters speaking only Vietnamese, said Galvin.
Cuddyer said 49 precincts across Boston will
require ballots printed in Chinese and 25 in
Vietnamese. The precincts are centered primarily
in Chinatown, South Boston, Brighton and Dorchester, she said.
Galvin said the bill, if passed, would provide
improved voter services to non-English speakers.
He said the state Election Division already posts
multi-lingual election materials at polling
stations to help voters through the process.
Cuddyer said the bill would allow Chinese and
Vietnamese speakers to "cast his or her vote with
the same expectation of privacy we all enjoy"
because they will no longer need the assistance
of translators to help them cast ballots.
Ballots in Chinese and Vietnamese were printed
for the first time for a special municipal election in May, she said.

1



Federal law requires multi-lingual ballots if the
language group has more than 10,000 voting age
citizens or if the group comprises more than 5
percent of all voting age citizens. Data from the
2000 Census quoted in the agreement states there
are 9,825 Chinese and 4,220 Vietnamese citizens
of voting age. The city's total voting age population is 338,579.

Rep. Jeff Sanchez (D-Boston), the bill's chief
sponsor, did not attend today's hearing but told
the News Service afterwards: "Hopefully the
committee will report favorably on it and make
sure we make voting accessible to all populations
within the Commonwealth and all populations within the city."

No one testified against the bill at today's hearing.

- END -

Need background about policy issues and the
history of current news stories? http://www.IssueSource.org

www.statehousenews.com

2

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.
05-11598-WGY

---

UNITED STATES OF AMERICA,

Plaintiff

V.

CITY OF BOSTON, MASSACHUSETTS, ET AL.

Defendants

---

**Affidavit of Guang Yang**

I, Guang Yang, hereby depose and say upon oath as follows:

1.    I am employed by the Secretary of the Commonwealth, but am providing this affidavit voluntarily and not as a part of my official duties and responsibilities.

2.    I am fluent in the language of Mandarin and have personal knowledge of this language, which is the official Chinese language. Chinese dialects include Cantonese and Taiwanese.

3.    On June 6, 2007, at the request of personnel in the Elections Division of the Secretary of the Commonwealth's Office, I provided transliteration of names into traditional Chinese characters. The names that I transliterated are Deval Patrick, Tommy Thompson, Bill Richardson, Barack Obama, Mitt Romney and Fred Thompson. The transliterations are attached hereto as Exhibit "A." The writing underneath the transliteration contains the meanings of the characters translated into Mandarin.

*SIGNED UNDER THE PENALTIES OF PERJURY THIS* ___7___ *DAY OF JUNE,*

*2007.*

Guang Yang

### Certificate of Service

I hereby certify that this document was filed through the Electronic Case Filing (ECF) system and thus copies will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF); paper copies will be sent this day to those who are indicated on the NEF as non-registered participants and who are not represented by counsel.

/s/ Peter Sacks



**DEVAL PATRICK**
特婚 派翠克
special — dispatch — overcome
baby sitter — Jade green

**TOMMY THOMPSON**
汤米 汤姆森
soup — rice — soup — baby sitter — forest

**BILL RICHARDSON**
比利 理察森
compare — profit — observant — intellectual — forest — tree

## BARACK OBAMA

巴瑞克 奧巴瑪

oh intellectual overcome profound oh gemstone

## MITT ROMNEY

米特 朗尼

rice special clear nun

## FRED THOMPSON

福德 湯姆森

Fortune Virture soup baby sitter forest

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.
05-11598-WGY
THREE-JUDGE COURT

_____

UNITED STATES OF AMERICA,

Plaintiff

V.

CITY OF BOSTON, MASSACHUSETTS, ET AL.

Defendants

_____

**Affidavit of Kai Lau**

I, Kai Lau, hereby depose and say upon oath as follows:

1.      I am employed by the Secretary of the Commonwealth, but am providing this affidavit voluntarily and not as a part of my official duties and responsibilities.

2.      I am fluent in the language of Cantonese, which is a dialect of Chinese. I have personal knowledge of this language. Mandarin is the official Chinese language and Chinese dialects include Cantonese and Taiwanese.

3.      On June 6, 2007, at the request of personnel in the Elections Division of the Secretary of the Commonwealth's Office, I provided transliteration of names into traditional Chinese characters. The names that I transliterated are Deval Patrick, Tommy Thompson, Bill Richardson, Barack Obama, Mitt Romney and Fred Thompson. The transliterations are attached hereto as Exhibit "A." The writing underneath the transliteration contains the meanings of the characters translated into Cantonese.

*SIGNED UNDER THE PENALTIES OF PERJURY THIS ___8th___ DAY OF JUNE,*

*2007.*

_____
Kai Lau

<u>Certificate of Service</u>

I hereby certify that this document was filed through the Electronic Case Filing (ECF) system and thus copies will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF); paper copies will be sent this day to those who are indicated on the NEF as non-registered participants and who are not represented by counsel.

<u>/s/ Peter Sacks</u>

CANTONESE BY SOUND

DEVAL PATRICK

冰罷 · 冰翠克

(last name) (last name) · (deliver) (Crystal) (gram)
DIE
LAW

TOMMY THOMPSON

湯美 · 湯臣

(soup) (beautiful) · (soup) (servant)

BILL RICHARDSON

比利 · 李察臣

(Compare) (profit) · (last name) (rub) (servant)
or
sharp   LEE

# BARACK OBAMA

華坺 . 奧巴馬

(whole)(Bouncing) (adjective Blue)(Horse)
superlative
OH

# MITT ROMNEY

米 . 阴尼

(uncook rice) (sunny or clear)(man)

# FRED THOMPSON

法瘦 . 湯区

(solution)(gram).(Soup)(Senast)

CANTONESE by SOUND

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>            Plaintiff,<br><br>            v.<br><br>CITY OF BOSTON, MASSACHUSETTS, et al.,<br>            Defendants. | Civil Action No. 05-11598 WGY |

SECRETARY OF THE COMMONWEALTH OF
MASSACHUSETTS' PROPOSED ANSWER AND COUNTERCLAIM

The Secretary of the Commonwealth of Massachusetts, William Francis Galvin, in his

official capacity, answers the allegations of the numbered paragraphs of the complaint as

follows:

1.  Paragraph one of the complaint contains introductory descriptive material to which no

response is required.

Jurisdiction

2.  Paragraph two contains legal conclusions not requiring a response.  The Secretary

notes that the matters as to which the Secretary seeks intervention do not arise under § 203 of the

Voting Rights Act and as such do not themselves require determination by a three-judge court.

Parties

3.  Admitted, except to the extent that this paragraph contains legal conclusions, to which

no responses are required.

4.  Admitted, except to the extent that this paragraph contains legal conclusions, to which

no responses are required.

5.  Admitted, except to the extent this paragraph contains legal conclusions, to which no responses are required.

6.  Admitted that Michael J. Flaherty is a City Councillor; denied that he is City Council President, as he has been succeeded by Councillor Maureen E. Feeney, who pursuant to Fed. R. Civ. P. 25(d) is automatically substituted.

7.  Denied that this paragraph lists all current members of the City Council; however, pursuant to Fed. R. Civ. P. 25(d), all new members are automatically substituted for their predecessors.

8.  Admitted, except to the extent this paragraph contains legal conclusions, to which no responses are required.

9.  Admitted, except to the extent this paragraph contains legal conclusions, to which no responses are required.

Factual Allegations

10.  The Secretary states that, according to the 2000 Census enumeration, Boston has a total population (POP) of 589,141 and a total Chinese population of 19,638 persons, or 3.3% of the City's total population.  The Secretary further states that, according to the 2000 Census sampling data, Boston has a voting age citizen population (CVAP) of 388,579 and that, according to the 2000 Census sampling data files, the City's total Chinese population is 19,885 persons, of whom 9,289 (not 9,825 as alleged) are voting age citizens (CVAP), representing 2.4% of Boston's voting age citizens.  Although not germane to the Secretary's proposed intervention, the Secretary admits the allegations concerning Boston's Hispanic population contained in the second and third sentences of paragraph 10 of the complaint, and states that

-2-

Boston's total Vietnamese population, according to the 2000 Census enumeration, is 10,818, representing 1.8% of the City's total population, and that according to the 2000 Census sampling data, Boston's total Vietnamese population is 11,126, of whom 4,036 (not 4,220 as alleged) are voting age citizens, representing 2.9% of Boston's voting age citizens.  The Secretary lacks knowledge or information sufficient to form a belief as to the accuracy of the alleged percentages of Boston's Chinese and Vietnamese voting age citizens who are limited English proficient. Except as admitted herein, the Secretary denies the allegations contained in paragraph ten of the complaint.

11.  Admitted, except to the extent this paragraph contains legal conclusions, to which no responses are required.  Further answering, the Secretary notes that the Director of the Census's designation of Boston as a City subject to the provisions of Section 203 is specifically limited to the Spanish language and does <u>not</u> include the Chinese language.

12.  Admitted, except to the extent this paragraph contains legal conclusions, to which no responses are required, and the Secretary is without sufficient knowledge or information concerning the Justice Department's contacts alleged in the second and third sentences of this paragraph.

13.  Admitted, except to the extent this paragraph contains legal conclusions, to which no responses are required.

First Cause of Action

14.  The responses to paragraphs 1-13 are incorporated herein.

15.  The Secretary is not intervening as a defendant on this First Cause of Action and therefore no response is required.

-3-

16. The Secretary is not intervening as a defendant on this First Cause of Action and therefore no response is required.

17. The Secretary is not intervening as a defendant on this First Cause of Action and therefore no response is required.

Second Cause of Action

18. The responses to paragraphs 1-17 are incorporated herein.

19. The allegations of paragraph 19 of the complaint are legal conclusions to which no response is required, and § 2 of the Voting Rights Act is a statute that speaks for itself.

20. The Secretary is without knowledge or information sufficient to form a belief as to whether isolated incidents of behaviors alleged in this paragraph may have occurred in previous elections conducted by the City of Boston but, based upon the information available to him, he denies that the City engaged in a policy, pattern or practice of behaviors that abridged the right of Chinese-American voters to vote, and accordingly denies the allegations of paragraph 20 of the complaint. The Secretary is not intervening with respect to any other language minority group and therefore no response is required to the extent that this paragraph makes allegations relating to members of other such groups. Further answering, the Secretary states that the allegations of this paragraph are moot in light of 2005 Memorandum of Agreement and Settlement.

21. The allegations of paragraph 21 are legal conclusions not requiring a response. In the alternative, based upon the information available to him, the Secretary denies the allegations of this paragraph insofar as they relate to Chinese-American voters. The Secretary is not intervening with respect to any other language minority group and therefore no response is required to the extent that the paragraph makes allegations relating to members of other such

-4-

groups.  Further answering, the Secretary states that the allegations of this paragraph are moot in light of the 2005 Memorandum of Agreement and Settlement.

22.  Denied as to Chinese-American voters.  The Secretary is not intervening with respect to any other language minority group and therefore no response is required to the extent that the paragraph makes allegations relating to members of other such groups.  Further answering, the Secretary states that the allegations of this paragraph are moot in light of the 2005 Memorandum of Agreement and Settlement.

## FIRST SEPARATE DEFENSE

To the extent the plaintiffs Second Cause of Action and second Prayer for Relief seek any form of order that ballots in state and federal elections in Boston, or in local elections in Boston, include candidate names transliterated into Chinese characters, such relief is (1) contrary to state law that is implemented or enforced by the Secretary, and (2) not warranted under Section 2 of the federal Voting Rights Act or otherwise.

## COUNTERCLAIM and CROSS-CLAIM
## FOR DECLARATORY AND INJUNCTIVE RELIEF

Introduction

1.  The Secretary brings this counterclaim and cross-claim seeking declaratory judgments concerning the transliteration into Chinese characters of candidate names on bilingual ballots in English and Chinese for elections held in the City of Boston.  The Secretary believes that transliteration of candidate names into Chinese characters on ballots, an undertaking which necessarily is inexact and imprecise, may give rise to unintended meanings, presents a significant

potential for misleading or confusing voters, may unfairly influence the result of an election, and may give rise to disruptive litigation, contrary to the public interest.  The Secretary seeks declarations that neither the Memorandum of Agreement and Settlement dated September 15, 2005 in this case, nor the special state law enacted to implement it, St. 2006, c. 111, both of which provide for 'bilingual' ballots in Chinese in certain areas of Boston, authorize or require transliteration of candidate names into Chinese characters.  Nor is such transliteration required by federal law.

Parties

2.  Plaintiff in this counterclaim and cross-claim is the Secretary of the Commonwealth of Massachusetts, William Francis Galvin, in his official capacity (the Secretary).  The Secretary is the chief elections officer for the Commonwealth.

3.  The defendant in counterclaim is the United States of America (United States).

4.  The defendants in cross-claim are the parties described in paragraphs 3-9 of the United States' complaint in this action (Docket No. 1; filed July 29, 2005) and in the responses set forth above in the Secretary's answer thereto, viz., the City of Boston, Boston's Mayor and City Councillors in their official capacities, the Boston Elections Department, and the Chair of the Boston Election Department in her official capacity (collectively, the 'City of Boston').

Jurisdiction and Venue

5.  This Court has supplemental jurisdiction over this counterclaim and cross-claim pursuant to 28 U.S.C. § 1367 and the authority to enter declaratory judgments herein pursuant to 28 U.S.C. §§ 2201-02.

6.  This counterclaim and cross-claim, and the declarations sought herein, do not arise under § 203 of the Voting Rights Act, 42 U.S.C. § 1973aa-1a, and are not required to be decided by a three-judge court pursuant to § 204 of the Voting Rights Act, 42 U.S.C. § 1973aa-2a. The Director of the Census has not determined, and the United States has not alleged, that Boston is subject to § 203 with respect to the Chinese language.

7.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (e).

The Settlement Agreement

8.  On September 15, 2005, the United States and the City of Boston entered into a Memorandum of Agreement and Settlement (the "Settlement Agreement") in this case.  In that Settlement Agreement (at page 2), the City of Boston expressly disputed the allegations made in the complaint.  The United States and the City of Boston then agreed to resolve their disputes through a comprehensive series of written commitments by the City to increase its efforts to provide language-minority voters with equal electoral opportunity, prominently including the increased recruitment and training of bilingual election personnel, and the United States agreed to voluntarily dismiss the complaint.

9.  The Settlement Agreement also provided, in paragraphs 19 and 20, that the City would provide bilingual ballots in Chinese and English (as well as in Vietnamese and English) in certain polling places in the City.

10.  However, Massachusetts law assigns to the Secretary, not the cities and towns, the authority and duty to prepare and furnish all ballots for use in state and federal elections, *see* Mass. G.L. c. 54, § 40; *see also* Mass. G.L. c. 50, § 1 (defining "state election" and "state officer" to include elections to national office and United States Senators and Representatives in Congress),

and state law does not provide for bilingual ballots in Chinese and English. The United States and the City of Boston accordingly agreed in their Settlement Agreement that Boston would seek passage by the State Legislature of a Home Rule Petition "authorizing the use by the City of Chinese and Vietnamese bilingual ballots as required by this Agreement." Settlement Agreement, ¶ 2. The United States and the City of Boston further agreed that if such Home Rule Legislation were not obtained by 90 days before the September 19, 2006 state and federal elections, they would file a joint petition for a declaratory order regarding the City's authority to print and distribute such bilingual ballots in that election. *Id.*

The Special State Law–Chapter 111

11. The Secretary, although not a party to the Settlement Agreement, cooperated with the City in drafting and securing enactment of the special state legislation. Indeed, the special legislation was drafted principally by the Secretary's office.

12. In drafting and supporting this legislation, the Secretary did not understand or intend its provisions for preparing bilingual ballots in Chinese and English to encompass transliteration of candidate names. The Secretary never interpreted the term "bilingual ballot" to include transliteration of candidate names into Chinese characters.

13. At no time prior to the enactment of the special law did any representative of the City or of the United States indicate to the Secretary that they intended or understood the term "bilingual," as used either in the Settlement Agreement or in the proposed legislation, to include transliteration of candidate names into Chinese characters on ballots. Had anyone communicated such an intent or understanding to the Secretary, he would have opposed the use of such term "bilingual" in the proposed legislation unless it were defined to exclude such an interpretation.

-8-

14. Moreover, on information and belief, at no time prior to the enactment of the legislation did representatives of the City understand or intend the term "bilingual" to include transliteration of candidate names into Chinese characters on ballots.

15. Indeed, available objective indicia indicate that the City and the United States did not understand the term "bilingual" in this context to extend to the transliteration of candidate names into Chinese characters on the ballots.

16. The City held a Special Preliminary Municipal Election for City Councillor for District 1 on May 16, 2006. In accordance with Paragraph 19 of the Settlement Agreement, the City printed the ballot bilingually in English and Chinese, i.e., headings and instructions appeared in English and were also translated into Chinese. The names of candidates were printed only in English (i.e., using the Roman alphabet) and were not transliterated into Chinese characters.

17. According to a published report, at a hearing held by the Massachusetts General Court's Joint Committee on Elections Laws on the proposed legislation, the defendant Chair of the Boston Election Department testified in support of the legislation. As this report indicates, the Chair testified that Boston had printed and used bilingual ballots in Chinese and English (and in Vietnamese and English) for the first time for the Special Preliminary Municipal Election that was held two weeks earlier. The report did not state that the Chair gave any indication that those bilingual ballots, on which the names of the candidates were not transliterated into Chinese characters, failed (or even may have failed) in any respect to qualify as "bilingual ballots" within the meaning of the Settlement Agreement and/or of the proposed legislation.

18. Federal observer reports on the May 16, 2006 election, filed with this Court on disk

on June 29, 2006, did not mention the absence of transliterated candidate names from the ballots at that election or that any Chinese-American voter had any difficulty voting as a result of the absence of such transliterations.

19. The proposed legislation was enacted as Chapter 111 of the Acts of 2006 ("Chapter 111"), signed by the Governor and effective on June 15, 2006, and authorized "bilingual ballots" in Chinese and English on certain conditions. The full text of Chapter 111 is as follows:

<div align="center">

**Chapter 111 of the Acts of 2006**

</div>

AN ACT REQUIRING THE PREPARATION OF CERTAIN BALLOTS IN THE CITY OF BOSTON.

Be it enacted by the Senate and House of Representatives in General Court assembled, and by the authority of the same as follows:

SECTION 1. Notwithstanding section 40 of chapter 54 of the General Laws, or any other general or special law to the contrary, in federal and state elections the state secretary shall prepare bilingual ballots in English and Chinese, and English and Vietnamese in addition to any other bilingual ballots required by law, in the designated polling places within the city of Boston as defined by the provisions of Paragraphs (9) and (20) of the Memorandum of Agreement and Settlement, dated September 15, 2005, entered in United States of America v. City of Boston, Civil Docket Number 05-11598-WGY.

SECTION 2. Notwithstanding section 58 of the charter of the city of Boston, or any other general or special law to the contrary, in all city of Boston municipal elections the election commission shall cause bilingual ballots in English and Chinese, and English and Vietnamese in addition to any other bilingual ballots required by law, in the designated polling places within the city of Boston as defined by the provisions of Paragraphs (9) and (20) of the Memorandum of Agreement and Settlement, dated September 15, 2005, entered in United States of America v. City of Boston, Civil Docket Number 05-11598-WGY.

SECTION 3. The city of Boston shall provide the state secretary with the number of bilingual Chinese and Vietnamese ballots and the designated polling locations where they are to be used, as well as any other information the secretary may require, no later than July 21, 2006 for the state primary and no later than September 8, 2006, for the state election. For any state or federal election after 2006, no changes to the number of bilingual ballots used in the polling places that have been designated within the city of Boston for the 2006 state election shall be

made without the consultation and approval of the secretary of state no later than 60 days before the primary or election in which the changes are to take place.

<u>SECTION 4</u>.  If the parties to the Memorandum of Agreement and Settlement dated September 15, 2005 entered in United States of America v. City of Boston, Civil Docket Number 05-11598-WGY seek to make changes in that Agreement, the secretary shall be notified no less than 120 days preceding the election in which the changes are to take place.

<u>SECTION 5</u>.  No changes shall be made in the Memorandum of Agreement and Settlement dated September 15, 2005 entered in United States of America v. City of Boston, Civil Docket Number 05-11598-WGY that affect any state or federal elections without the consultation and approval of the state secretary.

<u>SECTION 6</u>.  This act is enacted as part of the Memorandum of Agreement and Settlement dated September 15, 2005 entered in United States of America v. City of Boston, Civil Docket Number 05-11598-WGY, and this act shall remain in effect as long as the Memorandum of Agreement and Settlement remains in force and effect.

SECTION 7.  This act shall take effect upon its passage.

Approved June 15, 2006.


<u>Elections Pursuant To Chapter 111</u>

20.  Pursuant to Chapter 111, the Secretary prepared and provided bilingual Chinese (and Vietnamese) ballots to Boston for use in the September 19, 2006 State Primary and in the November 7, 2006 General Election.  The candidate names were not transliterated into Chinese characters on those ballots.  This reflected the Secretary's understanding and interpretation of Chapter 111 in his official capacity as chief elections officer of the Commonwealth.

21.  The Secretary did not receive any complaint, objection or comment regarding the absence of transliteration on those ballots from the City of Boston or from the United States following those elections.

22.  After the September 19, 2006 primary, the Boston Herald reported that "Federal

observers were already on hand at polling locations in Boston and Springfield under legal agreements that required the cities to do a better job serving immigrant voters."  The Herald went on to report "a complaint from the New York-based Asian American Legal Defense and Education Fund that candidates' names did not appear on the ballot in Asian languages."  The story then quoted the response of the spokesman for the Secretary of the Commonwealth: "'Transliteration was never part of the agreement.'"  See Laura Crimaldi, "A few problems turn out with Hub's voters," Boston Herald, September 20, 2006 at p. 5, 2006 WLNR 16387130.

23.  Federal observer reports on the November 7, 2006 election, filed with this Court on November 22, 2006, did not mention the absence of transliterated candidate names from the ballots at that election, or that any Chinese-American voter had any difficulty voting as a result of the absence of such transliterations.

Development of Transliteration As An Issue

24.  At some point unknown to the Secretary, discussions apparently took place between the United States and the City of Boston on the question of transliteration of candidate names on the Chinese/English ballots.  In a letter from the United States to the City of Boston dated March 30, 2007, the United States noted that candidate names were not transliterated on the ballots at the November, 2006 general election.  The letter also asserted that the City had represented to the United States that (at some unspecified time) it had 'requested the transliteration on the materials produced by the State, but the State declined to do so.'  The Secretary denies that the City had in fact made such a request.  The letter further asserted that the City had assured the United States that 'the City will print the ballots in all future elections to ensure that the names are transliterated into Chinese so that the ballots will be equally accessible to all citizens.'  No copy of this letter

was furnished to the Secretary until late May of 2007.

25.  Shortly before the City's April 17, 2007 Special Primary for City Councillor District 2, the Secretary was notified that the City had transliterated candidate names on the ballots, which were printed by the City because they were for a local rather than state or federal election. This was the first indication the Secretary had from either the City or the United States that transliteration of candidate names was envisioned by either party.

26.  On or about May 23, 2007, the Secretary was notified by a telephone call from counsel for the United States that the United States expected transliteration of candidate names on the State ballots for the State Special Primary for the First Suffolk and Middlesex Senate District to be held on May 29, 2007.  The Secretary learned that the United States intended to seek what it termed a "clarification" of the Settlement Agreement so as to require such transliteration at future federal, state and local elections held in the areas of the City covered by the Settlement Agreement.

27.  By letter dated May 24, 2007, the Secretary notified the City that the Secretary considered any action to "clarify" the Settlement Agreement to require transliteration of candidate names into Chinese characters to be a change in the Settlement Agreement.  The letter stated that under Chapter 111, § 4, notice of any such change was required to be provided to the Secretary "no less than 120 days preceding the election in which the change is to take place." The letter further indicated that no such notice [i.e., 120-day notice] had been given prior to the April 17, 2007 Special Election in Boston for City Councillor District 2, wherein the ballots contained transliterations of candidate names.  The letter further stated that to the extent such change was proposed to affect state and federal elections, the City could not, under Chapter 111, § 5, make

-13-

any such change without consulting with and obtaining the approval of the Secretary, which the City had not done.  The letter was sent to the City by e-mail and was copied to counsel for the United States by e-mail, prior to the filing of the United States' "Unopposed Motion for Clarification" on May 24, 2007.

28.  The Secretary's efforts to resolve this issue have been unavailing.

29.  No violation of federal law that might warrant the imposition of a requirement of transliteration as a remedy has been established in this case.

30.  An actual controversy or controversies exist between the parties as to their various rights and obligations under the Settlement Agreement and under Chapter 111.

### COUNT ONE – BALLOTS FOR STATE AND FEDERAL ELECTIONS

31.  Paragraphs 1-30 are incorporated by reference.

32.  The provision in Section 1 of Chapter 111 that the Secretary "shall prepare bilingual ballots in English and Chinese" for use in federal and state elections in certain polling places in Boston does not authorize or require the transliteration of candidate names into Chinese characters on said ballots.

33.  This Court should enter a declaratory judgment that St. 2006, c. 111, § 1, does not authorize or require the transliteration of candidate names into Chinese characters.

### COUNT TWO – BALLOTS FOR MUNICIPAL ELECTIONS

34.  Paragraphs 1-33 are incorporated by reference.

35.  The provision in Section 2 of Chapter 111 that the Boston Election Commission "shall cause bilingual ballots in English and Chinese" for designated polling places in Boston municipal

elections does not authorize or require the transliteration of candidate names into Chinese characters on said ballots.

36.  By using ballots with transliterated candidate names at the City's April 17, 2007 Special Primary for City Councillor District 2, the City of Boston violated Chapter 111, § 2, which authorizes and allows only "bilingual" ballots.

37.  The City of Boston apparently intends to use ballots with transliterated candidate names at future municipal elections, in violation of Chapter 111, § 2.

38.  The Court should enter a declaratory judgment that the City has no authority to provide bilingual ballots with transliterated names in future municipal elections and, if necessary, should enjoin the City from doing so.

## COUNT THREE -  BOSTON'S VIOLATION OF CHAPTER 111 §§ 4 - 5

39.  Paragraphs 1-38 are incorporated by reference.

40.  What the "Unopposed Motion to Clarify" seeks is not a "clarification" of the Settlement Agreement, but would instead add a new requirement of transliteration of candidate names into Chinese characters on bilingual ballots.  Upon information and belief, the City of Boston, when it entered into the Settlement Agreement, did not understand it to require such transliteration.

41.  The Commonwealth's statutory authorization to the Secretary and to the City, respectively, to prepare and furnish bilingual ballots in Chinese and English for use at the locations specified in the Settlement Agreement was conditioned upon provisions that the Secretary would be notified no less than 120 days preceding the election at which any proposed change to the Settlement Agreement was to take place, c. 111, § 4, and that no such changes would be made that affect any state or federal elections without the consultation and approval of

the state secretary, *id.,* § 5.  No such notice has been provided and no such approval has been obtained.

42.  The City of Boston's acquiescence in the United States' "Unopposed Motion for Clarification," and its authorization to the United States to represent in such motion that City of Boston agreed that the Settlement Agreement's use of the term 'bilingual' included transliterated candidate names, constitutes a change in the Settlement Agreement that is intended to affect state and federal elections in the City. Absent the consultation with and approval of the Secretary, the City of Boston has no authority to agree to such a change, whether by acquiescence in a motion by the United States or otherwise.

43.  This Court should accordingly declare that the authorization that Chapter 111 provided to the City does not extend to the attempt, without the notice, consultation and approval that the statute requires, to add a requirement of transliteration to the bilingual ballots that the statute authorizes in Chapter 111.


## COUNT FOUR -  AUTHORITY TO PRINT BALLOTS FOR STATE AND FEDERAL ELECTIONS

44.  Paragraphs 1-43 are incorporated by reference.

45.  To the extent that the City of Boston may intend to prepare transliterated ballots for use in state or federal elections in Boston, as the Department of Justice's letter quoted above appears to assert, this Court should enter a declaratory judgment that the City has no authority to do so and, if necessary, should enjoin the City from doing so.


46.  The 'Unopposed Motion for Clarification,' by its reference on page 3 to Paragraph 2 of

the Settlement Agreement, indicates the United States' intention, if the Motion is denied, to seek, with the City, a joint declaration from this Court that the City has the authority to print "bilingual" ballots including transliterated candidate names in future state and federal elections in the areas of the City covered by the Settlement Agreement.

47.  State law confers the authority to print ballots for use in state and federal elections exclusively upon the Secretary.  *See* Mass. G.L. c. 54, § 40; St. 2006, c. 111.  Moreover, no violation of federal law that might warrant this Court's granting the declaration contemplated in Paragraph 2 of the Settlement Agreement has been or could be established in this case.  This Court should declare instead that the City has no authority to print any ballots for use in state and federal elections.

## PRAYERS FOR RELIEF

The Secretary respectfully requests that this Court:

1.  Enter a final judgment declaring that state law, including St. 2006, c. 111, § 1, does not authorize or require the transliteration of candidate names into Chinese characters.

2.  Enter a final judgment declaring that state law, including St. 2006, c. 111, § 2, does not authorize or require the transliteration of candidate names into Chinese characters.

3.  Enter a final judgment declaring that the City of Boston does not have the authority to prepare ballots for use in state or federal elections.

4.  Enter a final judgment declaring that adding a requirement of transliteration to the bilingual ballots that Chapter 111 authorizes would, in the absence of notice, consultation and approval of the Secretary, be a violation of Chapter 111.

5.  Deny the United States' "Unopposed Motion to Clarify."

6.  If necessary, enter preliminary and permanent injunctions enforcing the declarations requested above.

7.  Such other and further relief as this Court deems just and proper.

SECRETARY OF THE COMMONWEALTH OF
MASSACHUSETTS
By his attorney,

MARTHA COAKLEY
ATTORNEY GENERAL


 /s/ Peter Sacks
Peter Sacks, BBO No. 548548
Assistant Attorney General
One Ashburton Place
Boston, Massachusetts 02108-1698
(617) 727-2200, ext. 2064
Peter.Sacks@state.ma.us

July 9, 2007


Certificate of Service
I hereby certify that this document was filed through the Electronic Case Filing (ECF) system
and thus copies will be sent electronically to the registered participants as identified on the
Notice of Electronic Filing (NEF); paper copies will be sent this day to those who are
indicated on the NEF as non-registered participants and who are not represented by counsel.
 /s/ Peter Sacks

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>                    Plaintiff,<br><br>                v.<br><br>CITY OF BOSTON, MASSACHUSETTS, et al.,<br>                    Defendants. | Civil Action No. 05-11598 WGY |

PROPOSED INTERVENOR SECRETARY OF THE COMMONWEALTH'S
OPPOSITION TO UNITED STATES' UNOPPOSED MOTION
TO CLARIFY MEMORANDUM OF AGREEMENT AND SETTLEMENT

The proposed intervenor Secretary of the Commonwealth of Massachusetts opposes the United States' Unopposed Motion to Clarify Memorandum of Agreement and Settlement for the reasons set forth below.

**I.  WHAT THE MOTION SEEKS IS A CHANGE, NOT A CLARIFICATION**

The Motion asserts that it is seeking only to 'clarify' that the terms 'bilingual' and 'bilingually,' where used in the Memorandum of Agreement and Settlement (the 'Settlement Agreement'), ¶¶ 2, 19 and 20 in relation to ballots, require not merely translation of words on the ballot with semantic meaning, but also transliteration of candidate names into Chinese characters.

The Secretary submits that the meaning of the term 'bilingual' in this context does extend beyond the actual translation of words with semantic content, and that the proposed 'clarification' accordingly instead would constitute a *change* in the meaning and content of the Settlement Agreement. 'Translation' occurs in the case of words with semantic content for which there is a corresponding word or words with the same semantic content in the other writing system.

Translation preserves the *meaning* of the word being translated. "Transliteration," by contrast, involves mapping the sounds within the words of the source language to letters or characters pronounced similarly in the goal script. Transliteration in the current context means the selection of Chinese characters to represent the phonetic equivalent of the syllables of an English name, or a name in any other language that is not traditionally written using Chinese characters. Such names normally have little or no semantic content, and transliteration is not directed to preserving their meaning (if any) in the source language.

Objective indicia exist indicating that the parties to the Settlement Agreement did <u>not</u> understand it to extend beyond translation of words with semantic content and to provide for transliteration of candidates' names. The City first used bilingual (Chinese/English) ballots in the Special Preliminary Municipal Election that it held on May 16, 2006. In accordance with Paragraph 19 of the Settlement Agreement, the City printed the ballot bilingually in English and Chinese, <u>i.e.,</u> headings and instructions appeared in English and were also translated into Chinese. The names of candidates were printed only in English (<u>i.e.,</u> using the Roman alphabet) and were not transliterated into Chinese characters. Tassinari Aff., ¶ 10.

Moreover, two weeks later, the Chair of the Boston Election Department testified at a public hearing before the Joint Elections Committee of the Massachusetts General Court in support of the special legislation that became St. 2006, Chapter 111. According to a published report, the Chair testified at that hearing that the City had prepared and used bilingual ballots in Chinese and English in the recent election. The report did not indicate that the Chair gave any indication that those bilingual ballots, on which the names of the candidates were not transliterated into Chinese characters, failed (or may have failed) in any respect to qualify as 'bilingual ballots' within the meaning of the Settlement Agreement and/or of the proposed

legislation.

Additionally, federal observer reports on the May 16, 2006 election, filed with this Court on disk on June 29, 2006, did not mention the absence of transliterated candidate names from the ballots at that election (or that any Chinese-American voter had any difficulty voting as a result of the absence of such transliteration).

Moreover, when the Secretary was working closely with the City on the special legislation, in the spring of 2006, nobody even mentioned the possibility that 'bilingual' ballots might include transliterations of candidate names.  Tassinari Aff., ¶ 3.

If the City of Boston had understood that the term 'bilingual,' as used in the Settlement Agreement in relation to ballots, encompassed the transliteration of candidate names into Chinese characters, presumably it would have undertaken such transliteration on the ballots that it prepared.  Likewise, if the United States had so understood the requirements of the Settlement Agreement, presumably it would have raised this as an issue when or shortly after it reviewed those ballots.

## II.  STATE LAW DOES NOT PERMIT THE CITY TO AGREE TO THE CHANGE

The Settlement Agreement, in Paragraph 2, provided that the City would seek special legislation to authorize bilingual ballots, and the resulting special law, St. 2006, Chapter 111, did provide such authorization.  However, that statute also required consultation with and the approval of the Secretary before any change was made to the Settlement Agreement affecting federal and state elections.  *See id.* § 5 (quoted in the Secretary's Memorandum in Support of his Motion to Intervene).  Particularly where the proposed change goes to the heart of the authorization that the legislature conferred in the special law, it is beyond the City's authority to

support it.

## III.  ALLOWING THE MOTION WOULD POTENTIALLY RAISE FURTHER ISSUES

If the Court were to determine that the term "bilingual ballot," as used in the Settlement

Agreement, did extend to including and requiring the transliteration of candidates' names into

Chinese characters, such a determination would very likely raise further serious issues.  As

explained in the Secretary's Memorandum in Support of his Motion to Intervene, the proposed

"clarification" clearly appears to be the precursor to an effort by the United States either to require

the Secretary to transliterate candidates' names into Chinese characters on ballots for state and

federal elections despite the Secretary's position that state law, including Chapter 111, does not

authorize or permit him to do so, or to obtain an order of this Court authorizing the City to

prepare and use such ballots despite the fact that Mass. G.L. c. 54, § 40, and Chapter 111, assign

the duty and the responsibility for preparing the ballots for federal and state elections to the

Secretary.  That in turn would require an identification of what legal basis there would be for

such an order.

## IV.     TRANSLITERATION IS IMPRECISE, POTENTIALLY CONFUSING AND DISRUPTIVE TO THE ELECTION

The Secretary believes that transliteration of candidate names into Chinese characters on

ballots, an undertaking which necessarily is inexact and imprecise, presents significant potential

for misleading or confusing voters, may unfairly influence the result of an election, and may give

rise to disruptive litigation, contrary to the public interest.  Tassinari Aff. ¶ 9.  As explained in

greater detail in the Secretary's Memorandum in Support of his Motion to Intervene, candidate

names may be transliterated in a variety of ways, depending, for example, on whether the

transliterator primarily speaks Mandarin, Cantonese, or Taiwanese. The potential for unintended and unfair results and attendant disruption to an orderly election is clear. *See* Secretary's Memorandum in Support of his Motion to Intervene as a Defendant at pp. 5-7.

## CONCLUSION

For the reasons set forth above and in the Secretary's Memorandum in Support of his Motion to Intervene, this Court should deny the United States' "Unopposed Motion to Clarify".

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), the Secretary believes that oral argument may assist the Court and therefore requests a hearing on the "Unopposed Motion to Clarify."

Respectfully submitted,

MARTHA COAKLEY
ATTORNEY GENERAL

   /s/ Peter Sacks
Peter Sacks, BBO No. 548548
Assistant Attorney General
One Ashburton Place
Boston, Massachusetts 02108-1698
(617) 727-2200, ext. 2064
Peter.Sacks@state.ma.us

Date:    July 9, 2007

Certificate of Service
I hereby certify that this document was filed through the Electronic Case Filing (ECF) system
and thus copies will be sent electronically to the registered participants as identified on the
Notice of Electronic Filing (NEF); paper copies will be sent this day to those who are
indicated on the NEF as non-registered participants and who are not represented by counsel.
   /s/ Peter Sacks