UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>CITY OF BOSTON, MASSACHUSETTS, <u>et</u> <u>al</u>.,<br>　　　　　　　Defendants. | Civil Action No. 05-11598 WGY |

MEMORANDUM IN SUPPORT OF THE MOTION
OF THE SECRETARY OF THE COMMONWEALTH OF
<u>MASSACHUSETTS TO INTERVENE AS A DEFENDANT</u>

　　　　The Secretary of the Commonwealth of Massachusetts, William Francis Galvin, submits

this memorandum in support of his motion to intervene as a defendant, in his official capacity,

for the purposes of opposing the United States' "Unopposed Motion to Clarify Memorandum of

Agreement and Settlement" (Docket No. 72, filed on May 24, 2007) and seeking appropriate

declarations concerning the transliteration into Chinese characters of candidate names on ballots

for elections held in the City of Boston.  The stated purpose of the "Unopposed Motion to

Clarify" is to have this Court declare that –

> the term bilingual and/or bilingually, when referring to the Chinese language, and
> as found in Paragraphs 2, 19, and 20 of the Memorandum of Agreement and
> Settlement, includes translation or transliteration of candidates' names in Chinese,
> i.e., display of candidates' names in Chinese characters, and the original intent of
> the parties in entering into the agreement reflected the same.

United States' Proposed Order at 1-2.  The less-clearly stated purpose of the "Unopposed Motion

to Clarify," however, is to serve as a basis for requiring the Secretary to print ballots with such

transliterated candidate names in future federal and state elections in the covered areas of the

City of Boston.

The Secretary's position is that the requested declaration would not be a "clarification" of, but rather would constitute a change to, the Memorandum of Agreement and Settlement; that the proposed transliteration of candidate names is not authorized or permitted by state law; that such transliteration is inherently imprecise and has the potential to confuse and/or unfairly influence voters and to lead to disruption to the smooth administration of elections; and that there is no basis in Section 2 of the Voting Rights Act or otherwise for requiring it in this case, particularly in light of the City's comprehensive undertakings to assist Chinese-speaking voters, already being implemented under the watchful eyes of federal observers.

Inasmuch as the "Unopposed Motion to Clarify" is intended to serve as the basis for imposing such transliteration obligations on the Secretary, he should be allowed to intervene, because such obligations are inconsistent with the Secretary's general statutory authority to prepare ballots for federal and state elections, Mass. G.L. c. 54, § 40[1] and inconsistent with the Secretary's specific authority, under the special statute envisioned by and enacted pursuant to the Memorandum of Agreement and Settlement, to print bilingual translated (but not transliterated) Chinese/English ballots for the covered areas of Boston. Mass. St. 2006, c. 111 ("Chapter 111") (see text attached hereto); see also Memorandum of Agreement and Settlement at ¶ 2 (recognizing need for enactment of such a statute). The Secretary was intimately involved, along with the City, in the drafting and enactment of that statute, and the statute was primarily drafted by the Secretary's office. See Affidavit of Michelle K. Tassinari, Director of the Secretary's Elections Division, at ¶ 3. At no time during the drafting or enactment did anyone suggest to the

---

[1] "All ballots for use in elections of state officers shall be prepared and furnished by the state secretary, and all ballots for use in elections of city or town officers, by the city or town clerk." Mass. G.L. c. 54, § 40; see also id. c. 50, § 1 (defining "state election" and "state officer" for purposes of Mass. G.L. chapters 50-57 to include national elections and United States Senator and Representative in Congress).

Secretary's office that "bilingual" ballots involved transliteration of candidate names into Chinese characters, and the Secretary would have opposed any provision that expressly or implicitly required such transliteration.  Id.

The United States apparently believes, however, that if the terms "bilingual" as it appears in the parties' Memorandum of Agreement and Settlement can be redefined to include transliterated candidate names, then the term "bilingual" as it appears in Chapter 111, which was primarily drafted by the Secretary and was enacted by the Massachusetts Legislature, will necessarily follow in lock-step and will take on the same new meaning, thus requiring the Secretary to print ballots with transliterated candidate names.

That the "Unopposed Motion to Clarify" seeks to impose this new obligation on the Secretary is clear from its statement that –

> The United States seeks an order from the Court in an attempt to avoid the necessity of invoking the remedies provided for in Paragraph 2 of the Memorandum of Agreement and Settlement.

"Unopposed Motion to Clarify" at p. 3.  The reference to Paragraph 2 of the Memorandum of Agreement and Settlement is to the provision recognizing that enactment of a special state law would be necessary to authorize the use of "bilingual" Chinese/English ballots for federal and state elections in the covered areas of Boston; that the City would seek the enactment of such a statute; and that if such a statute were not enacted by 90 days before the September 19, 2006 state and federal election, the City and the United States would –

> immediately file with the Court a joint petition for a declaratory order regarding the City's authority to print and distribute such bilingual ballots in said state election, while continuing the City's [legislative] initiative to similar effect.  The parties agree that such an order would be necessary and appropriate under all of the circumstances.

Memorandum of Agreement and Settlement at ¶ 2. Of course, the contemplated statute, Chapter 111, was enacted on June 15, 2006, but it expressly provided only for "bilingual ballots," not transliterated candidate names.

Thus, in its present "Unopposed Motion to Clarify," the United States clearly indicates that if the so-called "clarification" is not granted, it will ask this Court to declare that the City has the authority to print transliterated names on ballots for state and federal elections. The United States thereby reveals its position that if such "clarification" is granted, the Secretary would have the state-law authority, and would be required, to print transliterated names on such ballots. The Secretary, whose view of state law he is charged with implementing is entitled to deference under standard principles of administrative law and statutory interpretation, rejects any assertion that he has the authority or duty to do so under Chapter 111. Plainly, the Secretary should be allowed to intervene to present his position on this issue. He should not be required to stand back until this Court grants, as unopposed, the "clarification" of the Memorandum of Agreement and Settlement, and then await a suit by the United States (or the City of Boston) to enforce what will be portrayed as a fait accompli: the Secretary's concomitantly "clarified" obligation under Chapter 111 to print ballots with transliterated candidate names for federal and state elections.

Nor should the Secretary be required to stand back while the United States seeks a declaration that the City may print such ballots, in derogation of the Secretary's authority and duty under both Chapter 111 and Mass. G.L. c. 54, § 40, to print ballots for federal and state elections. Such a declaration of the City's authority to ignore state law could only come from an adjudication by this Court that such transliterated ballots are, notwithstanding state law, a necessary remedy for a federal Voting Rights Act violation as to Chinese-speaking voters in

Boston.  No such violation has ever been established, in this case or otherwise.  Indeed, in the Memorandum of Agreement and Settlement (at page 2), the City denied the existence of any such violation, and the United States agreed to voluntarily dismiss the complaint. The existence of any such violations and the necessity of any remedy therefore have never been adjudicated. The Secretary's authority to print ballots in accordance with state law should not be superseded by an order of this Court in the absence of an opportunity for the Secretary to be heard.

Although not a party to the case or to the Memorandum of Agreement and Settlement, the Secretary worked with the City to draft and obtain the enactment of the special law authorizing the preparation of bilingual ballots in Chinese pursuant thereto.  However, unlike the translations of regular words into Chinese characters whose meaning is the same as the English words, the transliteration of names into Chinese characters is an inherently imprecise effort to approximate the phonetics that make up the name through a combination of Chinese characters that sound most like the English name.  Those Chinese characters in turn have their own meanings, such that the choice of characters can carry a positive or negative connotation to the voter. Candidate names may be transliterated in a variety of ways, depending, for example, on whether the transliterator primarily speaks Mandarin, Cantonese, or Taiwanese.  <u>See</u> Affidavits of Guang Yang and Kai Lau, submitted herewith.  The characters that make up transliterated names may have different meanings, as follows:

| NAME | MANDARIN MEANING | CANTONESE MEANING |
|------|------------------|-------------------|
| Deval Patrick | special babysitter dispatch jade-green overcome | DE(last name) LAW (last name) deliver crystal grain |
| Tommy Thompson | soup rice soup babysitter forest | soup beautiful soup servant |
| Bill Richardson | compose profit intellectual observant forest | compare profit (or sharp) LEE(last name) rub servant |

-5-

| Barack Obama | oh intellectual overcome profound oh gemstone | whole boundary OH (adjective expression) bus horse |
| Mitt Romney | rice special clear nun | uncook rice sunny (or clear) nun |
| Fred Thompson | fortune virtue soup babysitter forest | solution grain soup servant |

See Affidavit of Guang Yang, ¶ 3 and Ex. A (Mandarin); Affidavit of Kai Lau, ¶ 3 and Ex. A (Cantonese).

It is easy to see how transliteration has the potential to confuse and/or unfairly influence voters, and how it might lead to disruption to the smooth administration of elections should a candidate object to the transliteration of his name or that of his opponent. Elections are prepared for on a short schedule that can ill afford unexpected delays and is sensitive to disruptions that could arise from such an objection. See Mass. G.L. c. 56, § 59 (under which ballot challenges not within the jurisdiction of the State Ballot Law Commission are typically brought). "States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election — and campaign – related disorder." Timmons v. Twin Cities Area New Party, 520 U.S. 351, 358 (1997). "'[T]here must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process.'" Libertarian Party of Maine v. Diamond, 992 F.2d 365, 370 (1st Cir. 1993) (quoting Storer v. Brown, 415 U.S. 724, 730 (1974)). Election regulations that may lead to last-minute requests for injunctive relief should be avoided. Cf., e.g., Purcell v. Gonzalez, 127 S.Ct. 5, 7 (2006) ("Court orders affecting elections . . . can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase."); Williams v. Rhodes, 393 U.S. 23, 34-35 (1968) (affirming denial of request for

-6-

injunction requiring last-minute changes to ballots given risk of disrupting election process);

Reynolds v. Sims, 377 U.S. 533, 585 (1964) ("court can reasonably endeavor to avoid a

disruption of the election process which might result from requiring precipitate changes");

"Sensitivity to the highly time-sensitive nature of elections and the process leading up to them is

appropriate and necessary to preserve comity between the states and the federal government."

United States v. City of Philadelphia, 2006 WL 3922115 at *2 (E.D.Pa. Nov. 7, 2006) (three-

judge court) (denying United States' request for injunction regarding assistance to Spanish-

speaking voters, where request, filed shortly before election, had potential to disrupt election).

For these reasons, the Secretary, who did not interpret the authorization in Chapter 111

for him to print bilingual ballots as encompassing transliteration of candidate names, and who

would not have supported the legislation had it authorized or required such transliteration,

believes that transliteration presents a significant potential for misleading or confusing voters and

may unfairly influence the result of an election or give rise to litigation that could either disrupt

the smooth preparation for or functioning of the election, or possibly to challenges of election

results and requests that a court order a new election. Tassinari Aff. ¶ 9.

## I.    THE SECRETARY SATISFIES THE REQUIREMENTS OF RULE 24(a)(2)

The Court should allow the Secretary to intervene under Fed. R. Civ. P. 24(a)(2)

(intervention as of right). The Secretary "claims an interest relating to . . . transaction[s] that

[are] the subject of the action" -- the administration of elections held in the City of Boston,

including specifically the preparation of proper ballots in accordance with state law, *see, e.g.,*

Mass. G.L. c. 54, § 40, Mass. G.L. c. 56, § 60, Mass. St. 2006, c. 111 -- and the Secretary "is so

situated that the disposition of the action" – in particular, of the Motion to Clarify – "may as a

practical matter impair or impede his ability to protect that interest."  Fed. R. Civ. P. 24(a)(2).

Moreover, the Secretary's application is timely.  The question of transliteration as an

issue in this case only arose very recently.  See Tassinari Aff. ¶ 5 (United States' first contact

with the Secretary on this subject was by letter mailed on May 21, 2007; United States' first

request to the Secretary to transliterate was made on May 23, 2007, one day before the filing of

the Motion to Clarify).

Finally, the Secretary's interest clearly is not adequately represented by the existing

parties.  One of those parties, the United States, is the moving party on the Motion to Clarify

that, if allowed, threatens to impair the Secretary's interest, and the other parties, the City of

Boston defendants, have authorized the United States to represent that they will not oppose the

Motion (and they have taken no steps to do so).

For these reasons, the Secretary meets all the requirements for intervention as of right and

the motion to intervene should be allowed on that basis.


## II.     THE SECRETARY SATISFIES THE REQUIREMENTS OF RULE 24(b)(2)

Pursuant to Fed. R. Civ. P. 24(b)(2) (permissive intervention), the Secretary's defense to

the United States' attempt to impose new obligations upon him has "questions of law and fact in

common" with the main action, including but not limited to: (1) whether the term "bilingual," as

used in Paragraphs 2, 19 and 20 of the Memorandum of Agreement and Settlement in relation to

ballots, encompasses transliteration into Chinese characters of candidate names on ballots; (2)

whether the term "bilingual" as used in Chapter 111, the statute envisioned by and enacted in

order to facilitate implementation of the Memorandum of Agreement and Settlement, authorizes

or requires the Secretary, on the ballots he prepares for state and federal elections in the City of

Boston, to transliterate the names of candidates into Chinese characters; and (3) whether there is

any legal basis for this Court either to order the Secretary to print bilingual ballots in state and

federal elections that include transliteration of candidate names into Chinese characters or to

authorize the City to print and use such ballots.  On all of these questions, the United States

asserts or apparently intends to assert that the answer is in the affirmative; the Secretary asserts

the opposite.

The City, for its part, by its acquiescence in the United States' "Unopposed Motion to

Clarify," necessarily takes the position that what is sought is merely a clarification, not a change,

in the Memorandum of Agreement and Settlement, and that the City has the authority to agree to

such a "clarification."  But the Secretary's position is that what is sought is a change, and

Chapter 111, § 5 expressly and unambiguously restricts the City's authority to agree to any such

change without, inter alia, consultation with and approval by the Secretary for any change that

affects federal or state elections.  That statute provides:  "No changes shall be made in the

Memorandum of Agreement and Settlement dated September 15, 2005 entered in United States

of America v. City of Boston, Civil Docket Number 05-11598-WGY that affect any state or

federal elections without the consultation and approval of the state secretary."  The Secretary

was not consulted about and has not approved the change proposed here.  See Tassinari Aff. ¶ 8

& Ex. D.  The Secretary's defense to the attempt to impose new obligations upon him thus

includes the defense that the City has no authority to agree (by its present silence or otherwise) to

the "Unopposed Motion for Clarification," and the City is violating its obligations and the

Secretary's rights under Chapter 111, § 5.  The Secretary should not be required to institute a

separate action, likely in state court, to challenge and halt the City's litigation conduct in this

Court as violative of Chapter 111. The question of the City's authority to make or acquiesce in

the making of the "clarification," or change, ought to be resolved in this action, whether it

constitutes a defense by the Secretary to the "Unopposed Motion for Clarification" or a claim by

the Secretary against the City.

      The Secretary further seeks intervention pursuant to Fed. R. Civ. P. 24(b) (second

sentence), which provides (with emphasis added):

> <u>When a party to an action relies for ground of claim</u> or defense <u>upon any statute</u>
> or executive order <u>administered by a</u> federal or <u>state governmental officer</u> or
> agency or upon any regulation, order, requirement, or agreement issued or made
> pursuant to the statute or executive order, <u>the officer</u> or agency <u>upon timely</u>
> <u>application may be permitted to intervene in the action</u>.

Here, the United States, by its "Unopposed Motion to Clarify," seeks, albeit in a two-step

process of which the Motion is only the first step, to impose on the Secretary, pursuant to

Chapter 111, a requirement that the Secretary transliterate candidate names into Chinese

characters on the ballots he prepares for state and federal elections in the City of Boston.

Chapter 111 is administered by the Secretary, and the Secretary's position is that he has no such

obligation or authority under the statute. The Secretary should be allowed to intervene under the

second sentence of Rule 24(b) to present that position.

<u>CONCLUSION</u>

      For the foregoing reasons, the Court should allow the Secretary to intervene as a

defendant in this action.

Respectfully submitted,

MARTHA COAKLEY
ATTORNEY GENERAL


 /s/ Peter Sacks
Peter Sacks, BBO No. 548548
Assistant Attorney General
One Ashburton Place
Boston, Massachusetts 02108-1698
(617) 727-2200, ext. 2064
Peter.Sacks@state.ma.us

Date:    July 9, 2007


Certificate of Service

I hereby certify that this document was filed through the Electronic Case Filing (ECF) system
and thus copies will be sent electronically to the registered participants as identified on the
Notice of Electronic Filing (NEF); paper copies will be sent this day to those who are
indicated on the NEF as non-registered participants and who are not represented by counsel.
 /s/ Peter Sacks

Chapter 111 of the Acts of 2006

**AN ACT REQUIRING THE PREPARATION OF CERTAIN BALLOTS IN THE CITY OF BOSTON.**

Be it enacted by the Senate and House of Representatives in General Court assembled, and by the authority of the same as follows:

SECTION 1.  Notwithstanding section 40 of chapter 54 of the General Laws, or any other general or special law to the contrary, in federal and state elections the state secretary shall prepare bilingual ballots in English and Chinese, and English and Vietnamese in addition to any other bilingual ballots required by law, in the designated polling places within the city of Boston as defined by the provisions of Paragraphs (9) and (20) of the Memorandum of Agreement and Settlement, dated September 15, 2005, entered in United States of America v. City of Boston, Civil Docket Number 05-11598-WGY.

SECTION 2.  Notwithstanding section 58 of the charter of the city of Boston, or any other general or special law to the contrary, in all city of Boston municipal elections the election commission shall cause bilingual ballots in English and Chinese, and English and Vietnamese in addition to any other bilingual ballots required by law, in the designated polling places within the city of Boston as defined by the provisions of Paragraphs (9) and (20) of the Memorandum of Agreement and Settlement, dated September 15, 2005, entered in United States of America v. City of Boston, Civil Docket Number 05-11598-WGY.

SECTION 3.  The city of Boston shall provide the state secretary with the number of bilingual Chinese and Vietnamese ballots and the designated polling locations where they are to be used, as well as any other information the secretary may require, no later than July 21, 2006 for the state primary and no later than September 8, 2006, for the state election.  For any state or federal election after 2006, no changes to the number of bilingual ballots used in the polling places that have been designated within the city of Boston for the 2006 state election shall be made without the consultation and approval of the secretary of state no later than 60 days before the primary or election in which the changes are to take place.

SECTION 4.  If the parties to the Memorandum of Agreement and Settlement dated September 15, 2005 entered in United States of America v. City of Boston, Civil Docket Number 05-11598-WGY seek to make changes in that Agreement, the secretary shall be notified no less than 120 days preceding the election in which the changes are to take place.

SECTION 5.  No changes shall be made in the Memorandum of Agreement and Settlement dated September 15, 2005 entered in United States of America v. City of Boston, Civil Docket Number 05-11598-WGY that affect any state or federal elections without the consultation and approval of the state secretary.

SECTION 6.  This act is enacted as part of the Memorandum of Agreement and Settlement dated September 15, 2005 entered in United States of America v. City of Boston, Civil Docket Number 05-11598-WGY, and this act shall remain in effect as long as the Memorandum of Agreement and Settlement remains in force and effect.

SECTION 7.  This act shall take effect upon its passage.

Approved June 15, 2006.