UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>            Plaintiff,<br><br>            v.<br><br>CITY OF BOSTON, MASSACHUSETTS, et al.,<br>            Defendants. | Civil Action No. 05-11598 WGY |

PROPOSED INTERVENOR SECRETARY OF THE COMMONWEALTH'S
OPPOSITION TO UNITED STATES' "UNOPPOSED MOTION
TO CLARIFY MEMORANDUM OF AGREEMENT AND SETTLEMENT"

The proposed intervenor Secretary of the Commonwealth of Massachusetts opposes the United States' "Unopposed Motion to Clarify Memorandum of Agreement and Settlement" for the reasons set forth below.

**I. WHAT THE MOTION SEEKS IS A CHANGE, NOT A CLARIFICATION**

The Motion asserts that it is seeking only to "clarify" that the terms "bilingual" and "bilingually," where used in the Memorandum of Agreement and Settlement (the "Settlement Agreement"), ¶¶ 2, 19 and 20 in relation to ballots, require not merely translation of words on the ballot with semantic meaning, but also transliteration of candidate names into Chinese characters.

The Secretary submits that the meaning of the term "bilingual" in this context does <u>not</u> extend beyond the actual translation of words with semantic content, and that the proposed "clarification" accordingly instead would constitute a *change* in the meaning and content of the Settlement Agreement. "Translation" occurs in the case of words with semantic content for which there is a corresponding word or words with the same semantic content in the other writing

system. Translation preserves the *meaning* of the word being translated. "Transliteration," by contrast, involves mapping the sounds within the words of the source language to letters or characters pronounced similarly in the goal script. Transliteration in the current context means the selection of Chinese characters to represent the phonetic equivalent of the syllables of an English name, or a name in any other language that is not traditionally written using Chinese characters. Such names normally have little or no semantic content, and transliteration is not directed to preserving their meaning (if any) in the source language.

Objective indicia exist indicating that the parties to the Settlement Agreement did <u>not</u> understand it to extend beyond translation of words with semantic content and to provide for transliteration of candidates' names. The City first used bilingual (Chinese/English) ballots in the Special Preliminary Municipal Election that it held on May 16, 2006. In accordance with Paragraph 19 of the Settlement Agreement, the City printed the ballot bilingually in English and Chinese, <u>i.e.</u>, headings and instructions appeared in English and were also translated into Chinese. The names of candidates were printed only in English (<u>i.e.</u>, using the Roman alphabet) and were not transliterated into Chinese characters. Tassinari Aff., ¶ 10.

Moreover, two weeks later, the Chair of the Boston Election Department testified at a public hearing before the Joint Elections Committee of the Massachusetts General Court in support of the special legislation that became St. 2006, Chapter 111. According to a published report, the Chair testified at that hearing that the City had prepared and used bilingual ballots in Chinese and English in the recent election. The report did not indicate that the Chair gave any indication that those bilingual ballots, on which the names of the candidates were not transliterated into Chinese characters, failed (or may have failed) in any respect to qualify as 'bilingual ballots' within the meaning of the Settlement Agreement and/or of the proposed

legislation.

Additionally, federal observer reports on the May 16, 2006 election, filed with this Court on disk on June 29, 2006, did not mention the absence of transliterated candidate names from the ballots at that election (or that any Chinese-American voter had any difficulty voting as a result of the absence of such transliteration).

Moreover, when the Secretary was working closely with the City on the special legislation, in the spring of 2006, nobody even mentioned the possibility that 'bilingual' ballots might include transliterations of candidate names. Tassinari Aff., ¶ 3.

If the City of Boston had understood that the term 'bilingual,' as used in the Settlement Agreement in relation to ballots, encompassed the transliteration of candidate names into Chinese characters, presumably it would have undertaken such transliteration on the ballots that it prepared. Likewise, if the United States had so understood the requirements of the Settlement Agreement, presumably it would have raised this as an issue when or shortly after it reviewed those ballots.

## II. STATE LAW DOES NOT PERMIT THE CITY TO AGREE TO THE CHANGE

The Settlement Agreement, in Paragraph 2, provided that the City would seek special legislation to authorize bilingual ballots, and the resulting special law, St. 2006, Chapter 111, did provide such authorization. However, that statute also required consultation with and the approval of the Secretary before any change was made to the Settlement Agreement affecting federal and state elections. *See id.* § 5 (quoted in the Secretary's Memorandum in Support of his Motion to Intervene). Particularly where the proposed change goes to the heart of the authorization that the legislature conferred in the special law, it is beyond the City's authority to

support it.

### III.  ALLOWING THE MOTION WOULD POTENTIALLY RAISE FURTHER ISSUES

If the Court were to determine that the term "bilingual ballot," as used in the Settlement Agreement, did extend to including and requiring the transliteration of candidates' names into Chinese characters, such a determination would very likely raise further serious issues.  As explained in the Secretary's Memorandum in Support of his Motion to Intervene, the proposed "clarification" clearly appears to be the precursor to an effort by the United States either to require the Secretary to transliterate candidates' names into Chinese characters on ballots for state and federal elections despite the Secretary's position that state law, including Chapter 111, does not authorize or permit him to do so, or to obtain an order of this Court authorizing the City to prepare and use such ballots despite the fact that Mass. G.L. c. 54, § 40, and Chapter 111, assign the duty and the responsibility for preparing the ballots for federal and state elections to the Secretary.  That in turn would require an identification of what legal basis there would be for such an order.

### IV.  TRANSLITERATION IS IMPRECISE, POTENTIALLY CONFUSING AND DISRUPTIVE TO THE ELECTION

The Secretary believes that transliteration of candidate names into Chinese characters on ballots, an undertaking which necessarily is inexact and imprecise, presents significant potential for misleading or confusing voters, may unfairly influence the result of an election, and may give rise to disruptive litigation, contrary to the public interest.  Tassinari Aff. ¶ 9.  As explained in greater detail in the Secretary's Memorandum in Support of his Motion to Intervene, candidate names may be transliterated in a variety of ways, depending, for example, on whether the

4

transliterator primarily speaks Mandarin, Cantonese, or Taiwanese. The potential for unintended and unfair results and attendant disruption to an orderly election is clear. *See* Secretary's Memorandum in Support of his Motion to Intervene as a Defendant at pp. 5-7.

## CONCLUSION

For the reasons set forth above and in the Secretary's Memorandum in Support of his Motion to Intervene, this Court should deny the United States' "Unopposed Motion to Clarify".

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), the Secretary believes that oral argument may assist the Court and therefore requests a hearing on the "Unopposed Motion to Clarify."

Respectfully submitted,

MARTHA COAKLEY
ATTORNEY GENERAL

　/s/ Peter Sacks
Peter Sacks, BBO No. 548548
Assistant Attorney General
One Ashburton Place
Boston, Massachusetts 02108-1698
(617) 727-2200, ext. 2064
Peter.Sacks@state.ma.us

Date:   July 9, 2007

Certificate of Service
I hereby certify that this document was filed through the Electronic Case Filing (ECF) system and thus copies will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF); paper copies will be sent this day to those who are indicated on the NEF as non-registered participants and who are not represented by counsel.
　/s/ Peter Sacks