UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>          Plaintiff,<br><br>          v.<br><br>CITY OF BOSTON, MASSACHUSETTS, et al.,<br>          Defendants. | Civil Action No. 05-11598 WGY |

SECRETARY OF THE COMMONWEALTH OF
MASSACHUSETTS' ANSWER AND COUNTERCLAIM
[Filed Pursuant to Court's July 19, 2007 Allowance of Secretary's Motion to Intervene]

The Secretary of the Commonwealth of Massachusetts, William Francis Galvin, in his official capacity, answers the allegations of the numbered paragraphs of the complaint as follows:

1. Paragraph one of the complaint contains introductory descriptive material to which no response is required.

Jurisdiction

2. Paragraph two contains legal conclusions not requiring a response. The Secretary notes that the matters as to which the Secretary seeks intervention do not arise under § 203 of the Voting Rights Act and as such do not themselves require determination by a three-judge court.

Parties

3. Admitted, except to the extent that this paragraph contains legal conclusions, to which no responses are required.

4. Admitted, except to the extent that this paragraph contains legal conclusions, to which

no responses are required.

     5.  Admitted, except to the extent this paragraph contains legal conclusions, to which no responses are required.

     6.  Admitted that Michael J. Flaherty is a City Councillor; denied that he is City Council President, as he has been succeeded by Councillor Maureen E. Feeney, who pursuant to Fed. R. Civ. P. 25(d) is automatically substituted.

     7.  Denied that this paragraph lists all current members of the City Council; however, pursuant to Fed. R. Civ. P. 25(d), all new members are automatically substituted for their predecessors.

     8.  Admitted, except to the extent this paragraph contains legal conclusions, to which no responses are required.

     9.  Admitted, except to the extent this paragraph contains legal conclusions, to which no responses are required.

Factual Allegations

     10.  The Secretary states that, according to the 2000 Census enumeration, Boston has a total population (POP) of 589,141 and a total Chinese population of 19,638 persons, or 3.3% of the City's total population.  The Secretary further states that, according to the 2000 Census sampling data, Boston has a voting age citizen population (CVAP) of 388,579 and that, according to the 2000 Census sampling data files, the City's total Chinese population is 19,885 persons, of whom 9,289 (not 9,825 as alleged) are voting age citizens (CVAP), representing 2.4% of Boston's voting age citizens.  Although not germane to the Secretary's proposed intervention, the Secretary admits the allegations concerning Boston's Hispanic population

contained in the second and third sentences of paragraph 10 of the complaint, and states that Boston's total Vietnamese population, according to the 2000 Census enumeration, is 10,818, representing 1.8% of the City's total population, and that according to the 2000 Census sampling data, Boston's total Vietnamese population is 11,126, of whom 4,036 (not 4,220 as alleged) are voting age citizens, representing 2.9% of Boston's voting age citizens.  The Secretary lacks knowledge or information sufficient to form a belief as to the accuracy of the alleged percentages of Boston's Chinese and Vietnamese voting age citizens who are limited English proficient. Except as admitted herein, the Secretary denies the allegations contained in paragraph ten of the complaint.

      11.  Admitted, except to the extent this paragraph contains legal conclusions, to which no responses are required.  Further answering, the Secretary notes that the Director of the Census's designation of Boston as a City subject to the provisions of Section 203 is specifically limited to the Spanish language and does <u>not</u> include the Chinese language.

      12.  Admitted, except to the extent this paragraph contains legal conclusions, to which no responses are required, and the Secretary is without sufficient knowledge or information concerning the Justice Department's contacts alleged in the second and third sentences of this paragraph.

      13.  Admitted, except to the extent this paragraph contains legal conclusions, to which no responses are required.

<u>First Cause of Action</u>

      14.  The responses to paragraphs 1-13 are incorporated herein.

      15.  The Secretary is not intervening as a defendant on this First Cause of Action and

therefore no response is required.

16. The Secretary is not intervening as a defendant on this First Cause of Action and therefore no response is required.

17. The Secretary is not intervening as a defendant on this First Cause of Action and therefore no response is required.

Second Cause of Action

18. The responses to paragraphs 1-17 are incorporated herein.

19. The allegations of paragraph 19 of the complaint are legal conclusions to which no response is required, and § 2 of the Voting Rights Act is a statute that speaks for itself.

20. The Secretary is without knowledge or information sufficient to form a belief as to whether isolated incidents of behaviors alleged in this paragraph may have occurred in previous elections conducted by the City of Boston but, based upon the information available to him, he denies that the City engaged in a policy, pattern or practice of behaviors that abridged the right of Chinese-American voters to vote, and accordingly denies the allegations of paragraph 20 of the complaint. The Secretary is not intervening with respect to any other language minority group and therefore no response is required to the extent that this paragraph makes allegations relating to members of other such groups. Further answering, the Secretary states that the allegations of this paragraph are moot in light of 2005 Memorandum of Agreement and Settlement.

21. The allegations of paragraph 21 are legal conclusions not requiring a response. In the alternative, based upon the information available to him, the Secretary denies the allegations of this paragraph insofar as they relate to Chinese-American voters. The Secretary is not intervening with respect to any other language minority group and therefore no response is

required to the extent that the paragraph makes allegations relating to members of other such groups. Further answering, the Secretary states that the allegations of this paragraph are moot in light of the 2005 Memorandum of Agreement and Settlement.

22. Denied as to Chinese-American voters. The Secretary is not intervening with respect to any other language minority group and therefore no response is required to the extent that the paragraph makes allegations relating to members of other such groups. Further answering, the Secretary states that the allegations of this paragraph are moot in light of the 2005 Memorandum of Agreement and Settlement.

### FIRST SEPARATE DEFENSE

To the extent the plaintiff's Second Cause of Action and second Prayer for Relief seek any form of order that ballots in state and federal elections in Boston, or in local elections in Boston, include candidate names transliterated into Chinese characters, such relief is (1) contrary to state law that is implemented or enforced by the Secretary, and (2) not warranted under Section 2 of the federal Voting Rights Act or otherwise.

### COUNTERCLAIM and CROSS-CLAIM
### FOR DECLARATORY AND INJUNCTIVE RELIEF

Introduction

1. The Secretary brings this counterclaim and cross-claim seeking declaratory judgments concerning the transliteration into Chinese characters of candidate names on bilingual ballots in English and Chinese for elections held in the City of Boston. The Secretary believes that transliteration of candidate names into Chinese characters on ballots, an undertaking which

necessarily is inexact and imprecise, may give rise to unintended meanings, presents a significant potential for misleading or confusing voters, may unfairly influence the result of an election, and may give rise to disruptive litigation, contrary to the public interest. The Secretary seeks declarations that neither the Memorandum of Agreement and Settlement dated September 15, 2005 in this case, nor the special state law enacted to implement it, St. 2006, c. 111, both of which provide for "bilingual" ballots in Chinese in certain areas of Boston, authorize or require transliteration of candidate names into Chinese characters. Nor is such transliterein required by federal law.

Parties

2. Plaintiff in this counterclaim and cross-claim is the Secretary of the Commonwealth of Massachusetts, William Francis Galvin, in his official capacity (the Secretary). The Secretary is the chief elections officer for the Commonwealth.

3. The defendant in counterclaim is the United States of America (United States).

4. The defendants in cross-claim are the parties described in paragraphs 3-9 of the United States' complaint in this action (Docket No. 1; filed July 29, 2005) and in the responses set forth above in the Secretary's answer thereto, viz., the City of Boston, Boston's Mayor and City Councillors in their official capacities, the Boston Elections Department, and the Chair of the Boston Election Department in her official capacity (collectively, the "City of Boston").

Jurisdiction and Venue

5. This Court has supplemental jurisdiction over this counterclaim and cross-claim pursuant to 28 U.S.C. § 1367 and the authority to enter declaratory judgments herein pursuant to

28 U.S.C. §§ 2201-02.

6. This counterclaim and cross-claim, and the declarations sought herein, do not arise under § 203 of the Voting Rights Act, 42 U.S.C. § 1973aa-1a, and are not required to be decided by a three-judge court pursuant to § 204 of the Voting Rights Act, 42 U.S.C. § 1973aa-2a. The Director of the Census has not determined, and the United States has not alleged, that Boston is subject to § 203 with respect to the Chinese language.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (e).

The Settlement Agreement

8. On September 15, 2005, the United States and the City of Boston entered into a Memorandum of Agreement and Settlement (the "Settlement Agreement") in this case. In that Settlement Agreement (at page 2), the City of Boston expressly disputed the allegations made in the complaint. The United States and the City of Boston then agreed to resolve their disputes through a comprehensive series of written commitments by the City to increase its efforts to provide language-minority voters with equal electoral opportunity, prominently including the increased recruitment and training of bilingual election personnel, and the United States agreed to voluntarily dismiss the complaint.

9. The Settlement Agreement also provided, in paragraphs 19 and 20, that the City would provide bilingual ballots in Chinese and English (as well as in Vietnamese and English) in certain polling places in the City.

10. However, Massachusetts law assigns to the Secretary, not the cities and towns, the authority and duty to prepare and furnish all ballots for use in state and federal elections, *see* Mass. G.L. c. 54, § 40; *see also* Mass. G.L. c. 50, § 1 (defining "state election" and "state

officer" to include elections to national office and United States Senators and Representatives in Congress), and state law does not provide for bilingual ballots in Chinese and English. The United States and the City of Boston accordingly agreed in their Settlement Agreement that Boston would seek passage by the State Legislature of a Home Rule Petition "authorizing the use by the City of Chinese and Vietnamese bilingual ballots as required by this Agreement." Settlement Agreement, ¶ 2. The United States and the City of Boston further agreed that if such Home Rule Legislation were not obtained by 90 days before the September 19, 2006 state and federal elections, they would file a joint petition for a declaratory order regarding the City's authority to print and distribute such bilingual ballots in that election. *Id.*

The Special State Law – Chapter 111

11. The Secretary, although not a party to the Settlement Agreement, cooperated with the City in drafting and securing enactment of the special state legislation. Indeed, the special legislation was drafted principally by the Secretary's office.

12. In drafting and supporting this legislation, the Secretary did not understand or intend its provisions for preparing bilingual ballots in Chinese and English to encompass transliteration of candidate names. The Secretary never interpreted the term "bilingual ballot" to include transliteration of candidate names into Chinese characters.

13. At no time prior to the enactment of the special law did any representative of the City or of the United States indicate to the Secretary that they intended or understood the term "bilingual," as used either in the Settlement Agreement or in the proposed legislation, to include transliteration of candidate names into Chinese characters on ballots. Had anyone communicated such an intent or understanding to the Secretary, he would have opposed the use of such term

"bilingual" in the proposed legislation unless it were defined to exclude such an interpretation.

    14. Moreover, on information and belief, at no time prior to the enactment of the legislation did representatives of the City understand or intend the term "bilingual" to include transliteration of candidate names into Chinese characters on ballots.

    15. Indeed, available objective indicia indicate that the City and the United States did not understand the term "bilingual" in this context to extend to the transliteration of candidate names into Chinese characters on the ballots.

    16. The City held a Special Preliminary Municipal Election for City Councillor for District 1 on May 16, 2006. In accordance with Paragraph 19 of the Settlement Agreement, the City printed the ballot bilingually in English and Chinese, <u>i.e.</u>, headings and instructions appeared in English and were also translated into Chinese. The names of candidates were printed only in English (<u>i.e.</u>, using the Roman alphabet) and were not transliterated into Chinese characters.

    17. According to a published report, at a hearing held by the Massachusetts General Court's Joint Committee on Elections Laws on the proposed legislation, the defendant Chair of the Boston Election Department testified in support of the legislation. As this report indicates, the Chair testified that Boston had printed and used bilingual ballots in Chinese and English (and in Vietnamese and English) for the first time for the Special Preliminary Municipal Election that was held two weeks earlier. The report did not state that the Chair gave any indication that those bilingual ballots, on which the names of the candidates were <u>not</u> transliterated into Chinese characters, failed (or even may have failed) in any respect to qualify as "bilingual ballots" within the meaning of the Settlement Agreement and/or of the proposed legislation.

18. Federal observer reports on the May 16, 2006 election, filed with this Court on disk on June 29, 2006, did not mention the absence of transliterated candidate names from the ballots at that election or that any Chinese-American voter had any difficulty voting as a result of the absence of such transliterations.

19. The proposed legislation was enacted as Chapter 111 of the Acts of 2006 ("Chapter 111"), signed by the Governor and effective on June 15, 2006, and authorized "bilingual ballots" in Chinese and English on certain conditions. The full text of Chapter 111 is as follows:

**Chapter 111 of the Acts of 2006**

AN ACT REQUIRING THE PREPARATION OF CERTAIN BALLOTS IN THE CITY OF BOSTON.

Be it enacted by the Senate and House of Representatives in General Court assembled, and by the authority of the same as follows:

SECTION 1. Notwithstanding section 40 of chapter 54 of the General Laws, or any other general or special law to the contrary, in federal and state elections the state secretary shall prepare bilingual ballots in English and Chinese, and English and Vietnamese in addition to any other bilingual ballots required by law, in the designated polling places within the city of Boston as defined by the provisions of Paragraphs (9) and (20) of the Memorandum of Agreement and Settlement, dated September 15, 2005, entered in United States of America v. City of Boston, Civil Docket Number 05-11598-WGY.

SECTION 2. Notwithstanding section 58 of the charter of the city of Boston, or any other general or special law to the contrary, in all city of Boston municipal elections the election commission shall cause bilingual ballots in English and Chinese, and English and Vietnamese in addition to any other bilingual ballots required by law, in the designated polling places within the city of Boston as defined by the provisions of Paragraphs (9) and (20) of the Memorandum of Agreement and Settlement, dated September 15, 2005, entered in United States of America v. City of Boston, Civil Docket Number 05-11598-WGY.

SECTION 3. The city of Boston shall provide the state secretary with the number of bilingual Chinese and Vietnamese ballots and the designated polling locations where they are to be used, as well as any other information the secretary may require, no later than July 21, 2006 for the state primary and no later than September 8, 2006, for the state election. For any state or federal election after

2006, no changes to the number of bilingual ballots used in the polling places that have been designated within the city of Boston for the 2006 state election shall be made without the consultation and approval of the secretary of state no later than 60 days before the primary or election in which the changes are to take place.

SECTION 4. If the parties to the Memorandum of Agreement and Settlement dated September 15, 2005 entered in United States of America v. City of Boston, Civil Docket Number 05-11598-WGY seek to make changes in that Agreement, the secretary shall be notified no less than 120 days preceding the election in which the changes are to take place.

SECTION 5. No changes shall be made in the Memorandum of Agreement and Settlement dated September 15, 2005 entered in United States of America v. City of Boston, Civil Docket Number 05-11598-WGY that affect any state or federal elections without the consultation and approval of the state secretary.

SECTION 6. This act is enacted as part of the Memorandum of Agreement and Settlement dated September 15, 2005 entered in United States of America v. City of Boston, Civil Docket Number 05-11598-WGY, and this act shall remain in effect as long as the Memorandum of Agreement and Settlement remains in force and effect.

SECTION 7. This act shall take effect upon its passage.

Approved June 15, 2006.

Elections Pursuant To Chapter 111

20. Pursuant to Chapter 111, the Secretary prepared and provided bilingual Chinese (and Vietnamese) ballots to Boston for use in the September 19, 2006 State Primary and in the November 7, 2006 General Election. The candidate names were not transliterated into Chinese characters on those ballots. This reflected the Secretary's understanding and interpretation of Chapter 111 in his official capacity as chief elections officer of the Commonwealth.

21. The Secretary did not receive any complaint, objection or comment regarding the absence of transliteration on those ballots from the City of Boston or from the United States following those elections.

22. After the September 19, 2006 primary, the Boston Herald reported that "Federal observers were already on hand at polling locations in Boston and Springfield under legal agreements that required the cities to do a better job serving immigrant voters." The Herald went on to report "a complaint from the New York-based Asian American Legal Defense and Education Fund that candidates' names did not appear on the ballot in Asian languages." The story then quoted the response of the spokesman for the Secretary of the Commonwealth: "'Transliteration was never part of the agreement.'" See Laura Crimaldi, "A few problems turn out with Hub's voters," Boston Herald, September 20, 2006 at p. 5, 2006 WLNR 16387130.

23. Federal observer reports on the November 7, 2006 election, filed with this Court on November 22, 2006, did not mention the absence of transliterated candidate names from the ballots at that election, or that any Chinese-American voter had any difficulty voting as a result of the absence of such transliterations.

Development of Transliteration As An Issue

24. At some point unknown to the Secretary, discussions apparently took place between the United States and the City of Boston on the question of transliteration of candidate names on the Chinese/English ballots. In a letter from the United States to the City of Boston dated March 30, 2007, the United States noted that candidate names were not transliterated on the ballots at the November, 2006 general election. The letter also asserted that the City had represented to the United States that (at some unspecified time) it had "requested the transliteration on the materials produced by the State, but the State declined to do so." The Secretary denies that the City had in fact made such a request. The letter further asserted that the City had assured the United States that "the City will print the ballots in all future elections to ensure that the names are

transliterated into Chinese so that the ballots will be equally accessible to all citizens." No copy of this letter was furnished to the Secretary until late May of 2007.

25. Shortly before the City's April 17, 2007 Special Primary for City Councillor District 2, the Secretary was notified that the City had transliterated candidate names on the ballots, which were printed by the City because they were for a local rather than state or federal election. This was the first indication the Secretary had from either the City or the United States that transliteration of candidate names was envisioned by either party.

26. On or about May 23, 2007, the Secretary was notified by a telephone call from counsel for the United States that the United States expected transliteration of candidate names on the State ballots for the State Special Primary for the First Suffolk and Middlesex Senate District to be held on May 29, 2007. The Secretary learned that the United States intended to seek what it termed a "clarification" of the Settlement Agreement so as to require such transliteration at future federal, state and local elections held in the areas of the City covered by the Settlement Agreement.

27. By letter dated May 24, 2007, the Secretary notified the City that the Secretary considered any action to "clarify" the Settlement Agreement to require transliteration of candidate names into Chinese characters to be a change in the Settlement Agreement. The letter stated that under Chapter 111, § 4, notice of any such change was required to be provided to the Secretary "no less than 120 days preceding the election in which the change is to take place." The letter further indicated that no such notice [i.e., 120-day notice] had been given prior to the April 17, 2007 Special Election in Boston for City Councillor District 2, wherein the ballots contained transliterations of candidate names. The letter further stated that to the extent such

change was proposed to affect state and federal elections, the City could not, under Chapter 111, § 5, make any such change without consulting with and obtaining the approval of the Secretary, which the City had not done. The letter was sent to the City by e-mail and was copied to counsel for the United States by e-mail, prior to the filing of the United States' "Unopposed Motion for Clarification" on May 24, 2007.

28. The Secretary's efforts to resolve this issue have been unavailing.

29. No violation of federal law that might warrant the imposition of a requirement of transliteration as a remedy has been established in this case.

30. An actual controversy or controversies exist between the parties as to their various rights and obligations under the Settlement Agreement and under Chapter 111.

## COUNT ONE – BALLOTS FOR STATE AND FEDERAL ELECTIONS

31. Paragraphs 1-30 are incorporated by reference.

32. The provision in Section 1 of Chapter 111 that the Secretary "shall prepare bilingual ballots in English and Chinese" for use in federal and state elections in certain polling places in Boston does not authorize or require the transliteration of candidate names into Chinese characters on said ballots.

33. This Court should enter a declaratory judgment that St. 2006, c. 111, § 1, does not authorize or require the transliteration of candidate names into Chinese characters.

## COUNT TWO – BALLOTS FOR MUNICIPAL ELECTIONS

34. Paragraphs 1-33 are incorporated by reference.

35. The provision in Section 2 of Chapter 111 that the Boston Election Commission

"shall cause bilingual ballots in English and Chinese" for designated polling places in Boston municipal elections does not authorize or require the transliteration of candidate names into Chinese characters on said ballots.

36. By using ballots with transliterated candidate names at the City's April 17, 2007 Special Primary for City Councillor District 2, the City of Boston violated Chapter 111, § 2, which authorizes and allows only "bilingual" ballots.

37. The City of Boston apparently intends to use ballots with transliterated candidate names at future municipal elections, in violation of Chapter 111, § 2.

38. The Court should enter a declaratory judgment that the City has no authority to provide bilingual ballots with transliterated names in future municipal elections and, if necessary, should enjoin the City from doing so.

## COUNT THREE -  BOSTON'S VIOLATION OF CHAPTER 111 §§ 4 - 5

39. Paragraphs 1-38 are incorporated by reference.

40. What the "Unopposed Motion to Clarify" seeks is _not_ a "clarification" of the Settlement Agreement, but would instead add a new requirement of transliteration of candidate names into Chinese characters on bilingual ballots. Upon information and belief, the City of Boston, when it entered into the Settlement Agreement, did not understand it to require such transliteration.

41. The Commonwealth's statutory authorization to the Secretary and to the City, respectively, to prepare and furnish bilingual ballots in Chinese and English for use at the locations specified in the Settlement Agreement was conditioned upon provisions that the Secretary would be notified no less than 120 days preceding the election at which any proposed

change to the Settlement Agreement was to take place, c. 111, § 4, and that no such changes would be made that affect any state or federal elections without the consultation and approval of the state secretary, *id.,* § 5. No such notice has been provided and no such approval has been obtained.

42. The City of Boston's acquiescence in the United States' "Unopposed Motion for Clarification," and its authorization to the United States to represent in such motion that City of Boston agreed that the Settlement Agreement's use of the term "bilingual" included transliterated candidate names, constitutes a change in the Settlement Agreement that is intended to affect state and federal elections in the City. Absent the consultation with and approval of the Secretary, the City of Boston has no authority to agree to such a change, whether by acquiescence in a motion by the United States or otherwise.

43. This Court should accordingly declare that the authorization that Chapter 111 provided to the City does not extend to the attempt, without the notice, consultation and approval that the statute requires, to add a requirement of transliteration to the bilingual ballots that the statute authorizes in Chapter 111.

### COUNT FOUR - AUTHORITY TO PRINT BALLOTS FOR STATE AND FEDERAL ELECTIONS

44. Paragraphs 1-43 are incorporated by reference.

45. To the extent that the City of Boston may intend to prepare transliterated ballots for use in state or federal elections in Boston, as the Department of Justice's letter quoted above appears to assert, this Court should enter a declaratory judgment that the City has no authority to do so and, if necessary, should enjoin the City from doing so.

46.  The "Unopposed Motion for Clarification," by its reference on page 3 to Paragraph 2 of the Settlement Agreement, indicates the United States' intention, if the Motion is denied, to seek, with the City, a joint declaration from this Court that the City has the authority to print "bilingual" ballots including transliterated candidate names in future state and federal elections in the areas of the City covered by the Settlement Agreement.

47.  State law confers the authority to print ballots for use in state and federal elections exclusively upon the Secretary.  *See* Mass. G.L. c. 54, § 40; St. 2006, c. 111.  Moreover, no violation of federal law that might warrant this Court's granting the declaration contemplated in Paragraph 2 of the Settlement Agreement has been or could be established in this case.  This Court should declare instead that the City has no authority to print any ballots for use in state and federal elections.

## PRAYERS FOR RELIEF

The Secretary respectfully requests that this Court:

1.  Enter a final judgment declaring that state law, including St. 2006, c. 111, § 1, does not authorize or require the transliteration of candidate names into Chinese characters.

2.  Enter a final judgment declaring that state law, including St. 2006, c. 111, § 2, does not authorize or require the transliteration of candidate names into Chinese characters.

3.  Enter a final judgment declaring that the City of Boston does not have the authority to prepare ballots for use in state or federal elections.

4.  Enter a final judgment declaring that adding a requirement of transliteration to the

bilingual ballots that Chapter 111 authorizes would, in the absence of notice, consultation and approval of the Secretary, be a violation of Chapter 111.

5. Deny the United States' "Unopposed Motion to Clarify."

6. If necessary, enter preliminary and permanent injunctions enforcing the declarations requested above.

7. Such other and further relief as this Court deems just and proper.

                                          SECRETARY OF THE COMMONWEALTH OF MASSACHUSETTS
By his attorney,

MARTHA COAKLEY
ATTORNEY GENERAL


 /s/ Peter Sacks
Peter Sacks, BBO No. 548548
Assistant Attorney General
One Ashburton Place
Boston, Massachusetts 02108-1698
(617) 727-2200, ext. 2064
Peter.Sacks@state.ma.us

July 9, 2007

Certificate of Service
I hereby certify that this document was filed through the Electronic Case Filing (ECF) system and thus copies will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF); paper copies will be sent this day to those who are indicated on the NEF as non-registered participants and who are not represented by counsel.
  /s/ Peter Sacks