UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,
         Plaintiff

v.

CITY OF BOSTON, MASSACHUSETTS,
ET AL,
         Defendants

Civil Action No. 05-11598WGY
THREE-JUDGE COURT

ORDER

August 3, 2007

This three-judge Court, on October 18, 2005, at the request of the United States and the City of Boston ("City"), entered a consent decree embodying a Memorandum of Agreement and Settlement ("MOAS") in this suit brought under Section 2 of the Voting Rights Act of 1965, 42 U.S.C. §§ 1973-1973aa-6. The City of Boston did not admit any liability; indeed, it disputed the United States' allegations that it had violated federal law. Nor did the City agree that it was subject to injunctive relief under the decree.

The case was placed on the Court's inactive list, subject to reopening should disputes arise under the MOAS. The order directed that any substantial modification of the MOAS be filed with the Court. That was done to insure that any such proposed modifications be made public.

The United States, on May 24, 2007, with the agreement of the City, filed what it

called an Unopposed Motion to Clarify Memorandum of Agreement and Settlement. The Motion requested that this Court issue a "clarification" that it was the intent of the "bilingual" Chinese ballot requirements set forth in Paragraphs 2, 19, and 20 of the MOAS that all ballots must display the <u>names</u> of candidates, and not just descriptive materials, in Chinese <u>characters</u> as well as in English letters. In fact, the "unopposed" Motion was opposed. The United States did inform the Court, in the text, that the Secretary of the Commonwealth opposed the requested relief as being inconsistent with state law and beyond the power of this Court to enter.

    The Motion to Clarify did not explain by what authority this Court should grant the clarification it sought. The United States did argue that it was seeking the order in an attempt to avoid invoking the "remedies" provided for in Paragraph 2 of the MOAS. That paragraph recognized that enactment of a special state law was necessary to authorize use of bilingual Chinese/English ballots for the areas of Boston covered by the MOAS. Had the Massachusetts legislature failed to enact such a statute 90 days before the September 19, 2006 state and federal elections, the United States and the City reserved the right to seek declaratory relief about the City's authority to print and distribute such bilingual ballots.

    The Commonwealth in fact enacted Chinese bilingual ballot legislation. Section 2 of Chapter 111 of the Acts of 2006 ("Chapter 111") provides that "in all city of Boston municipal elections the [city] election commission shall [prepare] bilingual ballots in

English and Chinese, and English and Vietnamese in addition to any other bilingual ballots required by law, in the designated polling places within the city of Boston as defined by the [MOAS]."  Mass. Acts of 2006 ch. 111, § 2, 2006 Mass. Legis. Serv. ch. 111, § 2 (H. B. 4942) (West).  Section 1 of the act is materially identical to Section 2, except that it provides that "in federal and state elections the state secretary shall prepare" the bilingual ballots.  Id. § 1.  The United States and the City have not sought the declaratory relief provided for under Paragraph 2 of the MOAS.

The Secretary of the Commonwealth, William Francis Galvin ("Secretary"), moved to intervene under Fed. R. Civ. P. 24.  Under Massachusetts law, the Secretary has responsibility for preparing ballots for use in elections for state and federal officers.  Mass. Gen. Laws ch. 54, § 40; Mass. Acts of 2006 ch. 111, § 1.  The Secretary was involved in the drafting of Chapter 111, pursuant to Paragraph 2 of the MOAS.  We earlier allowed the motion to intervene.

The Secretary has opposed the relief sought by the United States on various grounds.  The Secretary asks that the motion to clarify be denied because it is not an accurate reflection of events.  He denies that the original intent of the parties was that the phrase "bilingual" in the MOAS mandated transliterated ballots.  Even if that were a private understanding, the Secretary argues, it is not reflected in the language of the MOAS.  He also takes the position that whatever the intent of the United States and the City, that did not bind the state legislature.  Further, he asserts that the intent of the state

-3-

legislature in enacting Chapter 111 was not to require or permit transliterated names on bilingual Chinese ballots. The Secretary says the rationale for the proposed relief sought by the United States is to provide "a basis for requiring the Secretary to print ballots with such transliterated candidate names in future federal and state elections in the covered areas of the City of Boston." He further asserts that the relief sought would violate state statutes which he has administrative authority to interpret. See id. The Secretary also argues that the relief sought is not a clarification, but a modification of the consent decree, and that Chapter 111 does not allow the City to effectuate such a modification without the Secretary's approval. See Mass. Acts of 2006, ch. 111 § 5.

The Court conducted a hearing on July 25, 2007. At that hearing, the United States expressly disavowed that it was seeking a modification of the MOAS and stated it sought only a clarification. It also more precisely articulated the clarification it sought.

The United States originally sought an order stating "that the term bilingual and/or bilingually, when referring to the Chinese language, and as found in Paragraphs 2, 19, and 20 of the Memorandum of Agreement and Settlement, includes translation or transliteration of candidates' names in Chinese, i.e., display of candidates' names in Chinese characters, and the original intent of the parties in entering into the agreement reflected the same." Pl.'s Proposed Order 1-2 (emphasis added). At oral argument, the United States made clear that it sought an order that the use of the term "bilingual" in the MOAS not just "includes" but also requires transliteration of candidate names into

Chinese characters.

The Secretary again argued that the clarification motion should be denied. The Secretary argued that if the United States intended later to seek modification of the MOAS, then that motion would necessarily raise issues of state law as to whether Chinese-language ballots with transliterated candidate names are contrary to or permitted by state law. The Secretary stated he would file a motion to certify all pertinent state law questions to the Supreme Judicial Court of Massachusetts. The Secretary did file a motion to certify.

We address the United States' motion to clarify and deny it. The parties did not raise the transliteration issue when they sought entry of the MOAS. Even if there were private undisclosed understandings between the United States and the City, the language of the consent decree is the measure. As the United States admits, there is no case law under the Voting Rights Act which establishes or compels its proposed reading of the term "bilingual." This is apparently a case of first impression. When the Court entered the MOAS it did not understand that the term "bilingual" either included or required the transliteration of candidate names into Chinese characters. This issue simply was not raised in any of the proceedings. What the legislature intended in enacting Chapter 111 is an issue of state law, which the state courts have the competence to determine.

The only motion presently before the Court which requires action is the United States' motion to clarify. In a supplemental filing, the United States re-states its position

that the transliteration of candidate names on a ballot is a necessary and appropriate remedy to avoid a recurrence of violations of Chinese voters' rights. It also disputes the Secretary's interpretation of Chapter 111 and submits evidence which allegedly demonstrates that the Secretary was aware that transliteration was envisioned by the City and the United States. In denying this motion to "clarify," the Court expresses no opinion upon these issues or any other matter raised. Because there is no present controversy before this Court, there is no basis to certify questions to the Supreme Judicial Court.

Accordingly, the Motion of the United States for Clarification [Docket No. 72] is DENIED.

SO ORDERED.

For the Three Judge Court

/s/ William G Young
William G. Young
District Judge