UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11598-WGY

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CITY OF BOSTON, MASSACHUSETTS; THOMAS M. MENINO, in his official capacity as Mayor of the City of Boston; BOSTON CITY COUNCIL; MICHAEL F. FLAHERTY, PAUL J. SCAPICCHIO, JAMES M. KELLY, MAUREEN E. FEENEY, CHARLES C. YANCY, ROB CONSALVO, JOHN TOBIN, CHUCK TURNER, MICHAEL P. ROSS, JERRY P. MCDERMOTT, FELIX D. ARROYO, MAURA HENNIGAN, STEPHEN J. MURPHY; BOSTON ELECTION DEPARTMENT; GERALDINE CUDDYER, in her official capacity as Chair of the Boston Election Department; SECRETARY OF THE COMMONWEALTH OF MASSACHUSETTS,

    Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF CITY OF BOSTON DEFENDANTS' MOTION TO DISMISS INTERVENOR DEFENDANT SECRETARY OF THE COMMONWEALTH'S CROSS-CLAIMS**

I.    **INTRODUCTION**

Pursuant to Fed. R. Civ. P. 12(b)(1), the City of Boston Defendants hereby respectfully move this Honorable Court to dismiss the Intervenor Defendant Secretary of the

Commonwealth's cross-claims as the Court does not have subject matter jurisdiction.

A.   **SUMMARY OF ARGUMENT**

After the United States filed its Motion to Clarify, the Secretary of the Commonwealth intervened for the purpose of opposing it.  At oral argument and in his Opposition to the United States' Motion to Clarify, the Secretary went to great lengths to set forth the alleged implications of the Motion to Clarify.  When the Court denied the Motion to Clarify, the Secretary of the Commonwealth obtained his desired relief.  As a result, there is no controversy presently before the Court and the case remains on the inactive civil docket.  The cross-claims filed by the Secretary of the Commonwealth far exceed the purposes for which he intervened and do not implicate federal law.  Accordingly, the cross-claims brought by the Secretary are moot.

In denying the Motion to Clarify, the Court did not speculate whether or not the Massachusetts legislature contemplated transliteration when enacting St. 2006, Chapter 111.  Rather, the Court noted that such a question is an issue of state law best addressed by state courts. Similarly, the question as to whether the City of Boston violated the provisions of St. 2006, c. 111 or Mass. G.L.

c. 54, § 40 is an issue that should be addressed by Massachusetts state courts.

For the all of the reasons stated herein, the City of Boston urges this Court to dismiss the cross-claims filed by the Secretary of the Commonwealth.

## II.   APPLICABLE STANDARD

A motion to dismiss shall be allowed when a plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief.  *Figueroa v. Rivera*, 147 F.3d 77, 80 (1st Cir. 1998).  When considering a motion to dismiss, the Court accepts as true the plaintiff's well-pleaded allegations and construes every reasonable inference in the plaintiff's favor.  *Cooperman v. Individual, Inc.*, 171 F.3d 43, 46 (1st Cir. 1999). Despite this generous standard, the pleading requirement is "not entirely a toothless tiger."  *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir. 1996).  The Court is under no obligation to accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like . . ."  *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999). Applying this standard, there can be no doubt that the cross-claims filed by the Secretary of the Commonwealth should be dismissed.

## III. PROCEDURAL HISTORY

On July 29, 2005, the United States filed an action against the City of Boston, the Mayor in his official capacity, the Boston City Council, the City Councilors in their official capacities, the Boston Election Department, and the Chair of the Election Department in her official capacity. Plaintiff United States alleged that the defendants were in violation of Section 203 of the Voting Rights Act ("VRA"), 42 U.S.C. § 1973aa-1a and Section 2 of the VRA, 42 U.S.C. § 1973. Specifically, Plaintiff alleged that the City of Boston failed to comply with the language minority provisions of the VRA, and that "under the totality of the circumstances" the City of Boston denied "limited English proficient Hispanic and Asian American voters an equal opportunity to participate in the political process and to elect candidates of their choice on an equal basis with other citizens." Docket No. 1 at ¶ 21. The parties subsequently entered into a Memorandum of Agreement and Settlement ("MOAS") on September 15, 2005 and the Court ordered the matter to be placed on the Court's inactive docket. Docket No. 60. The Court further ordered that any substantial modification of the MOAS would be filed with the Court and that the Court would retain jurisdiction

4

through the expiration of the MOAS. *Id.* Finally, the Court noted that the Department of Justice and/or the City of Boston could return to Court to resolve disputes that arose under the MOAS. *Id.* In a separate docket entry, the Court noted the termination of the civil case. October 18, 2005 Docket Entry.

Since the filing of the MOAS, the Department of Justice has not made any subsequent allegation of misconduct on the part of the City of Boston Election Department. The City of Boston continues to comply with Section 203 of the Voting Rights Act ("VRA"), 42 U.S.C. § 1973aa-1a and Section 2 of the VRA, 42 U.S.C. § 1973. Further, since the entry of the MOAS, no dispute has arisen between the Department of Justice and the City of Boston under the MOAS that has required either party to return to Court. Indeed, in open Court on July 25, 2007, counsel for the Department of Justice stated "[t]he position of the government is that the City of Boston procedures currently in place which allow voters to understand for whom they're voting are very adequate." Docket No. 106 at p. 45.

On May 24, 2007, the United States filed an Unopposed Motion to Clarify Memorandum of Agreement and Settlement ("Motion to Clarify"). Specifically, the United States sought an order clarifying Paragraphs 2, 19, and 20 of the

5

MOAS. Docket No. 72 at p. 1. According to the Motion to Clarify, the parties to the MOAS agreed that "when Paragraph 19 of the Agreement states '. . . official and absentee ballots shall also be provided bilingually in Chinese and English . . .,' the phrase 'bilingually in Chinese and English' includes the translation or transliteration of candidates names in Chinese." *Id.* at pp. 1-2. The Motion to Clarify further noted that the parties agreed that "when Paragraph 20 of the Agreement states 'the City agrees to provide ballots bilingual in English and Chinese . . . as agreed in Paragraph 19 above . . .,' the phrase 'bilingual in English and Chinese' includes the translation or transliteration of candidate names in Chinese." *Id.* at p. 2. Finally, the Motion to Clarify provides that the parties agreed that "when Paragraph 2 of the Agreement states the phrase 'bilingual ballots,' when referring to the Chinese language, such phrase includes a ballot with the names of the candidates translated or transliterated in Chinese." *Id.*

On July 9, 2007, the Secretary of the Commonwealth sought to intervene as a defendant in this matter for the "purposes of opposing the United States' 'Unopposed Motion to Clarify Memorandum of Agreement'" and to seek "appropriate declarations concerning the transliteration

6

into Chinese characters of candidate names on ballots for elections held in the City of Boston." Docket No. 79 at p. 1. In the accompanying memorandum, the Secretary of the Commonwealth not only expressed opposition to the stated purpose of the Motion to Clarify but also intimated that the Motion to Clarify could serve as a basis for requiring the Secretary of the Commonwealth to print ballots with transliterated candidate names in future federal and state elections in the City of Boston. *Id.* The Secretary offered that if the Motion to Clarify is a vehicle for imposing transliteration obligations on him, he should be allowed to intervene as such requirements are inconsistent with the Secretary's general statutory authority concerning ballot preparation for federal and state elections under M.G.L. c. 54, § 40 and inconsistent with the Secretary's specific authority to print bilingual translated Chinese/English ballots for the covered areas of Boston under Mass. St. 2006, c. 111. *Id.* at p. 2.

On July 10, 2007, the Secretary of the Commonwealth filed a memorandum of opposition to the Motion to Clarify. The Secretary asserted that the Motion to Clarify constitutes a change to the MOAS; that state law does not permit the City of Boston to agree to the change; that allowing the motion could raise further issues; and that

transliteration is imprecise, potentially confusing, and disruptive to the election. Docket No. 80.

On July 26, 2007, after the Court allowed the Secretary of the Commonwealth's Motion to Intervene but before the Court ruled on the Motion to Clarify, the Secretary of the Commonwealth answered the allegations of the underlying Complaint and filed counterclaims and cross-claims. In Count One of the Secretary's cross-claims, the Secretary seeks a declaratory judgment that St. 2006, c. 111, § 1, does not authorize or require the transliteration. Docket No. 95 at ¶¶ 32-33. Count Two of the Secretary's cross-clams alleges that by using ballots with transliterated candidate names in the City's April 17, 2007 Special Primary for City Councilor District 2, the City of Boston violated Chapter 111, § 2. *Id.* at ¶ 36. As a result, the Secretary seeks a declaratory judgment that the City has no authority to provide bilingual ballots with transliterated names in future municipal elections and, if necessary, should enjoin the City from doing so. *Id.* at ¶ 37. In Count Three of the Secretary's cross-claims, the Secretary alleges that Chapter 111 does not provide the City with the ability to attempt, without notice, consultation and approval that the statute requires, to add a requirement of transliteration to the bilingual ballots

8

that the statute authorizes in Chapter 111. *Id.* at ¶ 43. Count Four of the Secretary's cross-claims speculates that the City of Boston may intend to prepare transliterated ballots for use in state or federal elections in Boston and, as a result, requests that the Court declare that the City has no authority to print ballots for use in state and federal elections. *Id.* at ¶ 45; ¶ 47.

In its August 3, 2007 Order, the three-judge Court denied the United States' Unopposed Motion to Clarify. In its Order, the Court noted that when it entered the MOAS, it did not understand the term "bilingual" to either include or require the transliteration of candidate names into Chinese characters. Docket No. 104 at p. 5. The Court further explained that this matter was not raised in any of the proceedings. *Id.* Finally, the Court noted that what the Massachusetts state legislature intended in enacting St. 2006, Chapter 111 is a question of state law, a question the state courts are equipped to answer. *Id.*

IV. ARGUMENT

   A.   THE SECRETARY'S CROSS-CLAIMS SHOULD BE DISMISSED ON MOOTNESS GROUNDS

      (1)  There is no case or controversy presently before the Court

As noted by the Court in its August 3, 2007 Order, there is no present controversy before the Court. Docket

9

No. 104 at p. 6. The United States brought a Complaint against the City of Boston in July 2005. The allegations raised in that Complaint were addressed and disposed of through a comprehensive Memorandum of Agreement and Settlement ("MOAS"). The Court placed this matter on the inactive docket with the Court retaining jurisdiction through the expiration of the MOAS. Docket No. 60 at p. 2. On May 24, 2007, the United States filed an Unopposed Motion to Clarify Memorandum of Agreement and Settlement. In response to concerns raised by the alleged implications of that motion, the Secretary of the Commonwealth intervened and submitted a memorandum in opposition to the Motion to Clarify. On August 3, 2007, the concerns of the Secretary of the Commonwealth were satisfied as the Court denied the Motion to Clarify. Docket No. 104. This matter remains on the inactive docket and, accordingly, the cross-claims filed by the Secretary of the Commonwealth are moot and should be dismissed by this Court.

The jurisdiction of federal courts is limited by the case and controversy requirement of Article III of the United States Constitution. U.S.C.A. Const. Art. 3, § 2, cl. 1. Standing to bring a complaint is "an essential and unchanging part of the case and controversy requirement." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

In its simplest terms, the standing requirement is satisfied if the plaintiff establishes "injury in fact," causation, and redressability. *Friends of the Earth, Inc. v. Laidlaw Environmental Services*, 528 U.S. 167, 180-181 (2000). The fact that the Secretary of the Commonwealth intervened in this matter does not relieve him of his obligation to satisfy Article III standing requirements. Indeed, if the original parties to a lawsuit are no longer litigating the matter, as is the case here, an intervenor must have Article III standing.[1] *Mangual v. Rotger-Sabat*, 317 F.3d 45, 61 (1st Cir. 2003). Since there is no controversy presently before the Court, the Secretary of the Commonwealth does not satisfy Article III standing requirements.

In a federal case, "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Steffel v. Thompson*, 415 U.S. 452, 459 n. 10 (1974). As a result, if events "transpire[] to render a court opinion merely advisory, Article III considerations require dismissal of the case." *Mangual*, 317 F.3d at 60. A case is moot if "the issues presented are no longer 'live' or the parties lack a legally

---

[1] There is a circuit split as to whether intervenors must establish standing if the original parties are still pursuing the matter. *Mangual*, 317 F.3d at 60.

11

cognizable interest in the outcome." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980), quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969). Article III requirements prohibit a federal court from deciding a "moot" case because they lack the "authority to decide questions that cannot affect the rights of the litigants before them." *United States v. Reid*, 369 F.3d 619, 624 (1st Cir. 2004). Admittedly, a heavy burden rests on the party raising a defense of mootness. *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). It must be demonstrated that the alleged wrongful behavior is not reasonably expected to recur. *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975).

On July 9, 2007, the Secretary of the Commonwealth sought to intervene as a defendant in this matter for the limited purposes of "opposing the United States' 'Unopposed Motion to Clarify Memorandum of Agreement'" and to seek "appropriate declarations concerning the transliteration into Chinese characters of candidate names on ballots for elections held in the City of Boston." Docket No. 78 at p. 1. In the accompanying memorandum, the Secretary of the Commonwealth not only expressed opposition to the stated purpose of the Motion to Clarify but also intimated that the Motion to Clarify could serve as a basis for requiring

the Secretary of the Commonwealth to print ballots with transliterated candidate names in future federal and state elections in the City of Boston. *Id.* The Secretary offered that if the Motion to Clarify is a vehicle for imposing transliteration obligations on him, he should be allowed to intervene as such requirements are "inconsistent with the Secretary's general statutory authority concerning ballot preparation for federal and state elections," under M.G.L. c. 54, § 40 and "inconsistent with the Secretary's specific authority" to print bilingual translated Chinese/English ballots for the covered area of Boston under Mass. St. 2006, c. 111. *Id.* at p. 2.

The Motion to Clarify filed by the United States served as the impetus to the Secretary of the Commonwealth's Motion to Intervene. The Court granted the Secretary's Motion to Intervene on July 19, 2007. Docket No. 85. At the time, the Motion to Clarify was still pending before the Court. However, on August 3, 2007, the Court denied the Motion to Clarify and the reason for intervention became moot as the Secretary obtained his desired relief. As a result, there is no controversy presently before the Court. All federal claims have been disposed of and the case remains on the Court's inactive docket.

For the reasons stated above, the City of Boston urges this Court to dismiss the cross-claims filed by the Secretary of the Commonwealth.

### B. SUPPLEMENTAL JURISDICTION SHOULD NOT BE EXERCISED OVER THE CROSS-CLAIMS RAISED BY THE SECRETARY OF THE COMMONWEALTH

In his cross-claim, the Secretary of the Commonwealth asserts that, pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over his prayer for declaratory relief. However, the cross-claims set forth by the Secretary of the Commonwealth arise out of a distinct and separate nucleus of facts then the underlying Complaint. The cross-claims also raise novel or complex issues of State law. Finally, the cross-claims asserted by the Secretary are state law claims and thus predominate over any federal issue raised in the underlying Complaint. The City of Boston thus urges this Court to decline jurisdiction over this matter as the state courts offer the appropriate forum for disposition of the Secretary's claims.

**(1) The Secretary of the Commonwealth's cross-claims do not arise from the same case or controversy as the underlying Complaint.**

Supplemental jurisdiction is limited to "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or

14

controversy under Article III." 28 U.S.C. § 1367(a). Pursuant to § 1367(a), "a federal court may exercise jurisdiction over a state claim whenever it is joined with a federal claim and the two claims 'derive from a common nucleus of operative fact' and the 'plaintiff would ordinarily be expected to try them both in one judicial proceeding.'" *Vera-Lozano v. International Broadcasting*, 50 F.3d 67, 70 (1st Cir. 1995), *quoting* United Mine Workers v. *Gibbs*, 383 U.S. 715, 725 (1966). Supplemental jurisdiction is a "doctrine of discretion, not a plaintiff's right." *Gibbs*, 383 U.S. at 726.

The Secretary of the Commonwealth's cross-claims do not arise out of the "same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Before the matter was settled through the MOAS and subsequently placed on the Court's inactive docket, the subject controversy concerned alleged violations of Sections 2 and 203 of the Voting Rights Act, 42 U.S.C. § 1973, a federal law aimed at ensuring equal access to the electoral process.

The cross-claims raised by the Secretary of the Commonwealth concern the City of Boston's compliance with a

state law enacted in response to the MOAS.[2] The Massachusetts law, Chapter 111 of the Acts of 2006, concerns the production of bilingual ballots for City of Boston elections.

The Secretary's allegations concern "transliteration into Chinese characters of candidate names on bilingual ballots in English and Chinese for elections held in the City of Boston." Docket No. 95 at ¶ 1. The Secretary seeks declarations that "neither the Memorandum of Agreement and Settlement . . . nor the special state law enacted to implement it, St. 2006, c. 111, both of which provide for 'bilingual' ballots in Chinese in certain areas of Boston, authorize or require transliteration of candidate names into Chinese characters." Id.

The allegations raised by the United States concerned violations of the Voting Rights Act, a federal law, with regards to the City's covered language-minority voting population. On the other hand, the Secretary's concerns

---

[2] "[T]he City of Boston commits to seek passage by the Legislature of the Commonwealth of Massachusetts, before the next scheduled state elections on September 19, 2006, of Home Rule Legislation pursuant to the Home Rule Amendment to the Massachusetts Constitution and the Massachusetts Home Rule Procedures Act, G.L. c. 43B, s. 1, et seq., authorizing use by the City of Chinese and Vietnamese bilingual ballots as required by this Agreement in all federal and state elections administered by the City." ¶ 2 of the MOAS.

arise out of the interpretation of and conduct pursuant to St. 2006, c. 111, a Massachusetts law. Since the claims raised by the Secretary do not arise out of the same nucleus of facts as the underlying Complaint, the City of Boston urges this Court to dismiss them.

### (2) The Secretary's claims raise novel or complex issues of State law

Even if the Court accepts the Secretary's assertion that his cross-claims arise under "the same case or controversy," the City of Boston urges this Court to decline jurisdiction as the cross-claims concern novel or complex issues of state law. According to 28 U.S.C. § 1367(c):

> [A] district court[] may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . .(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

In determining whether or not to exercise its discretion to hear the cross-claims of the Secretary, the Court should consider "concerns of comity, judicial economy, convenience, fairness, and the like." *Roche v. John*

*Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 257 (1st Cir. 1996).

In this case, the claims raised by the Secretary concern the scope, limitations and legislative intent behind the enactment of St. 2006, c. 111. Enacted in June 2006, such questions are of first impression and require a detailed examination of legislative history. The Court previously expressed its hesitancy to delve into this area in its August 3, 2007 Order.[3] Accordingly, the City of Boston urges this Court to decline supplemental jurisdiction.

**(3) The Secretary's state claims substantially predominate over the claim or claims over which the district court has original jurisdiction and the district court has dismissed all claims over which it has original jurisdiction.**

This Court should decline supplemental jurisdiction over the cross-claims raised by the Secretary as the federal claims in the underlying Complaint have been

---

[3] In its August 3, 2007 Order, the three-judge Court denied the United States' Unopposed Motion to Clarify. In its Order, the Court noted that when it entered the MOAS, it did not understand the term "bilingual" to either include or require the transliteration of candidate names into Chinese characters. The Court further explained that this matter was not raised in any of the proceedings. Finally, what the Massachusetts state legislature intended in enacting St. 2006, Chapter 111 is a question of state law, a question the state courts are equipped to answer. Docket No. 104.

disposed of through the MOAS.  The dismissal of the United States' federal claims, which occurred well before the commencement of trial, triggers the dismissal without prejudice of any supplemental state-law claims.  *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995), citing *Gibbs*, supra at 726; *Martinez v. Colon*, 54 F.3d 980, 990 (1st Cir. 1995) (affirming dismissal without prejudice of pendent claims when the district court determined "far in advance of trial that no federal question existed").

As noted by the Secretary of the Commonwealth in his Motion to Certify Questions of Law to the Supreme Judicial Court of the Commonwealth of Massachusetts, **"the key question to be answered in the pending controversy is whether the state law also requires the transliteration of candidate names into Chinese characters on those bilingual ballots."**  (emphasis added) Docket No. 99.

There is no federal question presently before the Court and the Secretary of the Commonwealth's cross-claims concern state law and are not properly before this Court.  For the reasons stated above, the City of Boston urges this Court to decline supplemental jurisdiction.

V.   CONCLUSION

For the reasons stated above, the City of Boston respectfully moves this Court to dismiss all cross-claims filed by the Secretary of the Commonwealth.

Respectfully submitted,

DEFENDANTS, CITY OF BOSTON
AND THOMAS M. MENINO

By their attorneys:

William F. Sinnott
Corporation Counsel

/s/ Sean P. Nehill
Sean P. Nehill, BBO #665738
Assistant Corporation Counsel
Mark Sweeney, BBO #490160
First Assistant Corporation
Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-4049 (Nehill)
(617) 635-4040 (Sweeney)

CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and will therefore by sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 12, 2007.

/s/ Sean Nehill
Sean Nehill