**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br><br>v. )<br><br>CITY OF BOSTON, MASSACHUSETTS, )<br>et al., )<br><br>Defendants )<br> ) | Civil Action No. 05-11598 WGY |

**THE SECRETARY OF THE COMMONWEALTH'S**
**RESPONSE TO BOSTON'S MOTION TO DISMISS**

The Secretary of the Commonwealth (Secretary) filed his "Counterclaim And Cross-Claim" in July seeking declaratory judgments on several related issues concerning the transliteration of candidates' names into Chinese characters on the bilingual ballots provided for affected Boston precincts under the Settlement Agreement in this case and St. 2006, c. 111. The Secretary denominated his pleading as a counterclaim against the United States because it was the plaintiff and as a cross-claim against the City of Boston Defendants (Boston, or the City), but it is one set of claims affecting all interested parties. It asks the Court to declare, *inter alia,* that state law does not require the Secretary to transliterate candidates' names into Chinese characters on the ballots for federal and state elections (several of which are scheduled for 2008), that the state law limits the City's authority to agree to a modification of the Settlement Agreement to include such a requirement, that the City has no authority to prepare or use transliterated ballots in those elections; and that there is no basis in federal law for this Court to order the preparation or use of such transliterated ballots. Docket No. 95, ¶¶ 32-33, 35-38, 41-43, and 46-47.

The City has now moved to dismiss, arguing that the Court lacks jurisdiction, primarily upon the basis that the Court's recent denial of the Motion To Clarify has since resolved all outstanding controversies in this matter. Docket Nos. 110-111 (September 12, 2007). The City also points out that the United States has praised the City's implementation of the Settlement Agreement (which expires on December 31, 2008).

The United States, however, has responded to the same pleading quite differently. Rather than moving to dismiss, the United States has filed an answer ("Reply To Intervenor's Counterclaim"), in which it takes a contrary position with respect to each of the declarations that the Secretary has requested. Docket No. 114 (September 17, 2007), ¶¶ 32-33, 35-38, 41-43, and 46-47. Moreover, in its introductory paragraph, the United States "denies any assertion that transliteration is not required by federal law." *Id.* at ¶ 1. This strongly indicates that the denial of the Motion To Clarify has *not* caused the United States to reconsider either its view of the state law or the position that it took in July that bilingual ballots, "with *transliteration* of candidates' names, is a *necessary* and appropriate *remedy*" for the Boston poll worker misconduct (pre-dating the City's implementation of the Settlement Agreement) that the United States alleged in its Complaint. Docket No. 87, at 14 (emphasis added); *see also* Docket No. 113 (September 12, 2007). In short, the United States has taken the position that both state and federal law require transliteration on the bilingual ballots that the Secretary is responsible for providing to the affected Boston precincts in next year's federal and state elections. Moreover, the threat that the United States will pursue further litigation on these issues is palpable. *See* Docket No. 87*,* at 2 (urging this Court to grant the Motion To Clarify "[t]o avoid the necessity for further litigation").

**Argument**

1.  As indicated in previous filings, the Secretary is planning *not* to transliterate candidates' names into Chinese characters on the bilingual ballots that he is responsible for preparing for next year's federal and state elections.  The Department of Justice, on the other hand, has renewed its position that both federal and state law require transliteration and has made a credible threat to bring coercive proceedings against the Secretary seeking to enforce its views.  The Secretary's pleading thus constitutes a pre-enforcement declaratory judgment action over which this Court clearly has jurisdiction. *Cf. Mangual v. Rotger-Sabat,* 317 F.3d 45, 59-61 (1st Cir. 2003); *Porter v. Jones,* 319 F.3d 483, 489-90 (9th Cir. 2003) ("[i]t is sufficient for standing purposes that . . .  there is a credible threat that the challenged provision will be invoked against the plaintiff"); *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (all rejecting challenges to ripeness of pre-enforcement declaratory judgment actions based upon a credible threat of prosecution).

All the elements of ripeness are present here.  The issues are fit for judicial review.  The state law claims present issues of statutory interpretation, and the United States' federal claim, under Section 2 of the Voting Rights Act, depends not upon any future contingency or hypothetical abstraction, but instead upon the proposition that transliteration is a necessary remedy for alleged past violations of voting rights not adequately remedied by the Settlement Agreement.[1]  There is thus a concrete factual

---

[1]  Of course, the fact that those claims have already been resolved by the Settlement Agreement may well make it problematic, under standard preclusion principles, for the Department to seek further relief on the basis of those same claims at this point, and the Department's recent endorsement of the effectiveness of the City's implementation of the Settlement Agreement over the past two years undercuts the notion that there is a present need for an additional remedy against the Secretary in any event.

predicate and a stark legal controversy to sharpen the focus for judicial resolution, and any declaratory relief awarded would have a conclusive effect.

Furthermore, to dismiss the Secretary's declaratory judgment claims, particularly the federal law claim, could cause real prejudice to the Secretary. The United States is threatening to pursue a claim under section 2 of the Voting Rights Act, under which the Court must make a wide-ranging, fact-intensive inquiry into "the totality of the circumstances" affecting the right to vote of Chinese-speaking voting age citizens in Boston. *See* 42 U.S.C. § 1973. Typically it takes many months of discovery and related preparation to adequately prepare such cases for trial. Thus, if the United States brings a claim only a few months or even weeks before an election and presses for an expedited hearing, that will put the Secretary to a serious practical litigation disadvantage. This hardship would be alleviated if the Secretary's declaratory judgment pleading is not dismissed and the Secretary is able to take discovery in the interim. If, however, the Court instead dismisses that pleading now, the case (which was removed from the closed/inactive docket just yesterday) presumably will promptly be returned to that docket, thereby preventing the Secretary from taking discovery into the factual basis for the United States' claim until the United States acts. Such discovery could include, *inter alia*, depositions of the roughly 40 individuals whose declarations the United States filed less than two days before the Court's hearing in July on the Motion To Clarify.

That said, the Secretary has no interest in unnecessary litigation. If the United States is willing to stand down from its current posture pending the scheduled expiration of the Settlement Agreement and dismissal of the complaint on December 31, 2008, by disavowing an intention to challenge the Secretary's non-transliteration of candidates'

names into Chinese characters on federal and state ballots, the Secretary would not object

to the dismissal of his declaratory judgment claims (without prejudice) on that basis.

Failing such a Justice Department representation, however, it is clear that the declaratory

judgment complaint presents a real and substantial controversy admitting of specific

relief through a decree of conclusive character, over which this Court has jurisdiction.

2.  The City also argues against the exercise of supplemental jurisdiction under 28

U.S.C. § 1367(a) on the basis that the Secretary's claims do not arise from the same

nucleus of operative fact as the underlying case.  That argument is incorrect as a matter of

fact.  The Secretary seeks a declaration that there is no basis in federal law for the Court

to order the preparation or use of transliterated ballots in federal and state elections.  The

United States' contrary assertion, that transliteration is a "necessary remedy," rests

squarely upon the proposition, set forth in the complaint in this case, that prior Boston

poll worker misconduct toward Chinese-speaking voters constituted a violation of section

2 of the Voting Rights Act for which such an additional remedy is currently required.

3.  The controversy over the meaning of the special state law likewise is closely

intertwined with the Settlement Agreement in this case, which contemplated the

enactment of the special law and to which the special state law repeatedly refers.  While

this Court's ruling on the Motion To Clarify further undercuts any argument that state

law requires transliteration, the Secretary agrees that the Massachusetts Supreme Judicial

Court is the appropriate forum for definitive resolution of the state law questions.  But

there are obvious impediments to the Secretary securing such a ruling through bringing

an original action against the United States in state court.  Accordingly, if the United

States is determined to pursue state as well as federal law claims, the appropriate course

would be for this Court to affirm its jurisdiction but, if in any doubt as to the meaning of the state law, to certify those questions to the Supreme Judicial Court.

4.  The existing controversies between the parties should be resolved in an orderly manner through a regular discovery and litigation schedule leading to the entry of declarations reasonably in advance of the times for sending ballots to the printer.  Article III does not require postponing discovery, trial and decision until the United States seeks injunctive relief on an expedited basis, a posture that would seriously disadvantage the Secretary and potentially inconvenience the Court.  Unless the United States stands down from its current position, the Court should deny the motion to dismiss and establish a discovery and litigation schedule that will provide a full and fair opportunity to litigate and resolve the existing controversies, particularly the federal Voting Rights Act issues, in an orderly manner but in time for preparing and sending the ballots to the printer for next fall's federal and state elections.

For reasons stated previously, the motion should decided by the single district judge to whom this matter was originally assigned.

Respectfully submitted,

SECRETARY OF THE
COMMONWEALTH OF
MASSACHUSETTS
By his attorney,

MARTHA COAKLEY
ATTORNEY GENERAL

  /s/ H. Reed Witherby_____

H. Reed Witherby, BBO #531600
Special Assistant Attorney General
Smith & Duggan LLP
Two Center Plaza
Boston, MA 02108
(617) 228-4400
rwitherby@smithduggan.com

Peter Sacks, BBO No. 548548
Assistant Attorney General
One Ashburton Place
Boston, Massachusetts 02108-1698
(617) 727-2200, ext. 2064
Peter.Sacks@state.ma.us

September 26, 2007

<u>Certificate of Service</u>

    I hereby certify that this document was filed through the Electronic Case Filing (ECF) system and thus copies will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF); paper copies will be sent this day to those who are indicated on the NEF as non-registered participants and who are not represented by counsel.

/s/ H. Reed Witherby