IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-11598 WGY |
| | ) | <u>THREE-JUDGE COURT</u> |
| CITY OF BOSTON, | ) | |
| MASSACHUSETTS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**<u>UNITED STATES' REPLY IN SUPPORT OF
CITY OF BOSTON'S MOTION TO DISMISS</u>**

Pursuant to this Court's September 27, 2007 Order, the United States files this Reply in Support of the City of Boston's ("City") Motion to Dismiss the Secretary of the Commonwealth's ("Secretary") Cross-Claims. The City seeks to restore the posture of the case prior to the now-resolved Motion of the United States for Clarification. The Secretary seeks four declaratory judgements, asking this Court to make three findings deciding Massachusetts law and one finding limiting the power of the Federal courts to craft remedies to violations of the

Voting Rights Act.[1]  In doing so, the Secretary proposes, in essence, that this Court foreclose a possible remedy before any claim has been filed against him.

As set forth herein, the Motion of the City should be granted.  Consistent with this Court's earlier order stating that "there is no present controversy before this Court":  (1) these issues are not ripe for review; (2) the complicated state law issues should be decided by the state courts; and (3) the Secretary is erroneously attempting to limit the power of the Federal courts to provide remedies to as of yet undetermined violations of Federal law.  42 U.S.C. §§ 1973-1973aa-6.

## I.  PROCEDURAL HISTORY

The United States and the City entered an Agreement that resolved a complaint charging, *inter alia*, that the City violated Section 2 of the Voting Rights Act by infringing upon the rights of Chinese-speaking voters.  This Court entered an Order on October 18, 2005, authorized the appointment of federal observers, and retained jurisdiction over the suit through the expiration of the Agreement.

---

[1] The Secretary bases his request upon his original Answer and Counterclaim, which included both counter and cross-claims.  See Docket #95, Secretary's Answer to Complaint, Counterclaims, and Cross-Claims.  In his Response to Boston's Motion to Dismiss, the Secretary combines these sets of claims into a single set of claims.  See Docket #115, Secretary's Response to City's Motion to Dismiss.  As discussed below, however, the Secretary effectively seeks in his Response to amend and expand the counterclaims and cross-claims provided in his original Answer.

See Docket #60, Order. Among other provisions, the Agreement provided for a "bilingual ballot" to allow Chinese-speaking voters to vote on an equal basis. On May 24, 2007, the United States filed a motion seeking clarification from this Court as to whether the term "bilingual ballots" as provided under the Agreement allowed for the transliteration of candidate names. See Docket #72, United States' Motion for Clarification.

The Secretary entered, and this Court granted, a Motion to Intervene. See Docket #78 and #85. The Secretary argued, *inter alia*, that the term "bilingual ballot" as provided under the Agreement did not provide for transliterated candidate names and that the United States was essentially seeking a modification of the Agreement rather than a clarification. See Docket #78, Motion to Intervene. The Secretary also filed cross-claims and counterclaims, requesting that this Court enter a declaratory judgment stating, in sum, that neither the Agreement nor Massachusetts law requires transliteration. See Docket #95, Secretary's Answer to Complaint, Counterclaims, and Cross-Claims. Two weeks later, the Secretary supplemented his requests for declaratory judgment, asking that this Court certify the same transliteration issues to the Supreme Judicial Court of the Commonwealth of Massachusetts. See Docket #99, Secretary's Motion To Certify Question to Supreme Judicial Court. The Secretary has represented to this Court that he plans

to implement several alternatives to transliteration. However, no clear plan or procedure has been articulated.

On July 23, 2007, the United States filed a response to the Secretary's pleadings challenging transliteration. See Docket #87, United States' Response to Opposition to Motion to Clarify.

On July 25, 2007, this Court held oral arguments and ordered supplemental briefing. On August 3, 2007, this Court found that transliteration was not required by the Agreement, holding, *inter alia*, that the Court had not understood transliteration to be required under the Agreement and denied the United States' Motion for Clarification. See Docket #104, Order at 5. The Court "expresse[d] no opinion" upon the other issues raised by the Secretary. Id. The Court also denied the Secretary's Motion to Certify, finding "[b]ecause there is no present controversy before this Court, there is no basis to certify questions to the Supreme Judicial Court." Id.

On September 12, 2007, the City filed the instant Motion to Dismiss the Secretary's Cross-claims, averring that: (1) the Secretary's claims failed to meet the United States Constitution's case-and-controversy requirement, and (2) the Secretary's claims require this Court to interpret new and complex state laws, over which this Court lacks jurisdiction. See Docket #111, Memorandum in Support of

Motion to Dismiss. Although the United States believed, based upon the Court's order denying clarification, that there were no issues pending before the Court on September 17, 2007, in an abundance of caution and in order to avoid a default judgment, the United States entered an Answer to the Secretary's original counterclaims. See Docket #114, United States' Answer. The United States did not and has not filed any claim against the Secretary or the Commonwealth.

On September 26, 2007, the Secretary responded to the City's Motion to Dismiss. See Docket #115, Secretary's Response to City's Motion to Dismiss. The following day, this Court ordered all parties to address the City's Motion to Dismiss. The United States now files this reply in support of the City's Motion to Dismiss.

## II. LEGAL STANDARD

Courts must exercise their discretion to grant declaratory judgments with the utmost caution in matters of public concern. Public Affairs Associates, Inc. v. Rickover, 369 U.S. 111 (1962); Ernst & Young v. Depositors Economic Protection Corp., 45 F.3d 530, 535 (1st Cir. 1995)("the discretion to grant declaratory relief is to be exercised with great circumspection when matters of public moment are involved or when a request for relief threatens to drag a federal Court prematurely into constitutional issues that are freighted with uncertainty." (internal citation

omitted)). "Especially where governmental action is involved, Courts should not intervene unless the need for equitable relief is clear, not remote or speculative." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948).

### III. ANALYSIS

The United States believes that the City's motion should be GRANTED because: (1) these issues are not ripe for review; (2) the complicated state law issues should be decided by the state courts; and (3) the Secretary is erroneously attempting to limit the power of the Federal courts to provide remedies to violations of the Voting Rights Act. 42 U.S.C. §§ 1973-1973aa-6.

#### A.    The Issues Raised by the Secretary Are Not Ripe for Review

Consistent with this Court's holding that "there is no present controversy before this Court," the United States submits that the Secretary's claims are not ripe for review. See Docket #104, Order Denying Clarification at 5. The Secretary asks that this Court invalidate a possible remedy in a potential suit that the United States has not brought against him.

Ripeness is the primary concern of a court contemplating a motion for declaratory judgment. Ernst & Young, 45 F.3d at 535. Ripeness involves a two-step inquiry in which the Secretary bears the burden of proof and persuasion. Ernst & Young, 45 F.3d 530 at 535; Rhode Island Ass'n of Realtors, Inc. v. Whitehouse,

199 F.3d 26, 33 (1st Cir. 1999). First, the Secretary must show that the case is fit for review—a showing that "typically involves subsidiary queries concerning finality, definiteness, and the extent to which resolution of the challenge depends upon facts that may not yet be sufficiently developed." Ernst & Young, 45 F.3d at 535 (internal quotation omitted). Second, the Secretary must demonstrate hardship—a showing that "typically turns upon whether the challenged action creates a direct and immediate dilemma for the parties." Id. In the instant case, the Secretary demonstrates neither fitness nor hardship.

First, the Secretary fails to show that this case is fit for review. Under the fitness-for-review inquiry, the Secretary must show, *inter alia,* that "the issue presented is purely legal, as opposed to factual." W.R. Grace & Co. v. EPA, 959 F.2d 360, 364 (1st Cir.1992). In the present case, the Secretary concedes that the issue is not purely legal. Indeed, the Secretary states, "[t]he United States is threatening to pursue a claim under section 2 of the Voting Rights Act, under which the Court must make a wide-ranging, fact-intensive inquiry. . . ." See Docket #115, Secretary's Response to City's Motion to Dismiss. As discussed above, the factual situation is very much in flux, due in part to the Secretary's evolving, alternative

procedures, to serve the needs of Chinese-speaking voters.[2] The multiple facts that influence a decision to bring suit cannot be assessed by the United States, let alone this Court, without an investigation and a thorough record. Because it is undisputed that this Court will need to engage in a "wide-ranging, fact-intensive inquiry" in order to evaluate a potential United States' claim, the issue is not ripe and the declaratory judgment should not be granted. Knight v. Mills, 836 F.2d 659 (1st Cir. 1987) ("Moreover, discretionary declaratory judgments, we are told, should rest on a full bodied record."). As the Court of Appeals has noted, "premature review not only can involve judges in deciding issues in a context not sufficiently concrete to allow for focus and intelligent analysis, but it also can involve them in deciding issues unnecessarily, wasting time and effort." Id. (quoting Roosevelt Campobello Int'l Park Comm'n v. EPA, 684 F.2d 1034, 1040 (1st Cir. 1982)).

---

[2] In separate statements to the Court, written and oral, the Secretary proposed and updated a series of alternative election procedures to the City's current practice of transliterating candidate names. Although not sanguine about the potential of the Secretary's proposed alternatives to transliteration, the United States continues to evaluate and monitor the Secretary's ideas even in this early stage where such alternatives are undefined and untested. Only if a Section 2 claim ultimately were brought based upon the ineffectiveness of these proposals would a Court then have an adequate record to evaluate the effectiveness of the Secretary's alternatives and identify any violation of Federal law. At that stage the Court would be in a position to tailor remedies to any specific violation(s) found. Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 16 (1971)(holding that the nature of the violation determines the scope of the remedy).

Moreover, the United States understands that Massachusetts citizens are currently petitioning their Legislature to pass legislation allowing for a transliterated ballot. Thus, the Secretary seeks for this Court to grant declaratory judgment on issues that are both unripe and, if the citizens of Massachusetts are successful, may never become ripe.

Second, the Secretary also fails to show hardship. The Secretary alleges a single hardship —"a litigation disadvantage." See Docket #115, Secretary's Response to City's Motion to Dismiss. The Secretary points to no authority, binding or persuasive, to support his contention that a litigation disadvantage constitutes hardship for ripeness purposes.[3] In fact, the Supreme Court has suggested the contrary—reducing the stress, costs, or inconvenience of litigation is insufficient to establish hardship. Ohio Forestry Ass'n, Inc. v. Sierra Club, 523 U.S. 726, 735 (1998) ("In any event, the Court has not considered this kind of litigation cost saving sufficient by itself to justify review in a case that would otherwise be

---

[3] The Secretary portrays that there is an imminent, pending lawsuit by the United States against him, which the United States will delay in order to create a hardship upon the Secretary. Presumably, these alleged threats of litigation are based upon the answer that the United States filed addressing the claims he initiated, in a suit that he entered as an intervenor. Additionally, his portrayal presumes bad faith on the part of the United States – a presumption that the United States would purposefully wait until days before an election to bring a claim based upon evidence currently in its possession. Such an assumption is unwarranted, and courts are equipped to address any dilatory or untoward action by any party.

unripe."); Florida Power & Light Co. v. E.P.A., 145 F.3d 1414, 1421 (D.C. Cir. 1998); Association of American Railroads v. Surface Transp. Bd., 146 F.3d 942 (D.C. Cir. 1998).

Further, the Secretary cannot demonstrate any type of pre-enforcement hardship. The hallmark of pre-enforcement hardship is a direct and immediate dilemma for the parties. Riva v. Com. of Mass., 61 F.3d 1003, 1010 (1st Cir. 1995). The Secretary asks that this Court invalidate a possible remedy in a potential suit that the United States has not brought against him. As this Court has already noted, the only issue, thus far presented, is clarification of the original Agreement. See Docket #104, Order Denying Clarification at 5.

The United States has not brought suit, or threatened to bring suit, alleging that the Secretary's failure to provide transliterated ballots is a violation of Section 2 of the Voting Rights Act. No action is imminent in this matter against any party whatsoever. It is the United States' policy that, prior to initiating an action under the Voting Rights Act, it formally notifies the prospective defendants by letter of the intent to file and the claims to be pursued, and provides an invitation to resolve such claims amicably. No such letter has been sent to the Secretary in this case.

In short, the Secretary fails to meet his burden of showing that this case is ripe for review. First, he fails to demonstrate fitness; in fact, conceding that the

Court must engage in a wide-ranging, fact-intensive inquiry.  Second, the Secretary fails to demonstrate hardship, alleging, without support, that failure to grant his motion would put him at a litigation disadvantage.  Because the Secretary fails to demonstrate that this case is ripe, his request for a declaratory judgment should be denied.  Such a denial would be consistent with this Court's holding that "there is no present controversy before this Court." See Docket #104, Order Denying Clarification at 5.

### B.   The Issues Raised by the Secretary Are a Matter for State Courts to Decide

The Secretary also requests that this Court wade into a barrage of complex and emerging state law issues.  The Secretary requests that this Court find that:

> state law does not require the Secretary to transliterate candidates' names into Chinese characters on the ballots for federal and state elections (several of which are scheduled for 2008), that the state law limits the City's authority to agree to a modification of the Settlement Agreement to include such a requirement, that the City has no authority to prepare or use transliterated ballots in those elections…

See Docket #115, Secretary's Response to City's Motion to Dismiss at 1.

Now that the Court has interpreted the Agreement and concluded that "there is no present controversy before this Court," the United States agrees with the Secretary and the City that "the Massachusetts Supreme Judicial Court is the appropriate forum for definitive resolution of the state law questions." See Docket

#104, Order Denying Clarification at 5; and Docket #115, Secretary's Response to City's Motion to Dismiss at 5.[4] These questions regarding the allocation of power between the city and the state are fundamental issues for the state to decide and any determination by this Court would amount to an advisory opinion. Restraint by this Court would be consistent with other Federal court doctrines permitting state courts to have the chance to determine state law before the Federal courts do so. Younger v. Harris, 401 U.S. 37 (1971); Colorado RiverWater Conservation District v. United States, 424 U.S. 800 (1976); Burford v. SunOil Co., 319 U.S. 315 (1943); and Railroad Commission of Texas v. Pullman Co., 312 U.S. 496 (1941). Moreover, such restraint would be consistent with the concerns expressed by this panel during the July 25, 2007 oral argument. See Docket #106, Transcript. Finally, restraint would avoid interference with the ongoing effort of Massachusetts citizens to obtain state legislation on this issue.

The United States submits that this Court should abstain from deciding these purely state-law issues. Deference to the state courts would encourage the "wise

---

[4] In previous filings and at oral argument on July 25, 2007, the United States asked this Court to consider state law for the limited purpose of interpreting the Agreement entered before this Court. After this Court found that transliteration, although it may have been contemplated by the parties, was not specifically detailed and not required under the Agreement, that issue was resolved, and the Court need not explore the state law issues raised by the Secretary.

judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183 (1952).

### C. The Secretary Is Erroneously Attempting to Limit Both the Scope of the Civil Rights Legislation and the Power of the Federal Courts to Provide Remedies to as of Yet Undetermined Violations of Federal Law

The Court has determined that there was no admission or finding of a Voting Rights Act violation, and that transliteration was not required under the terms of the Agreement. The Secretary now attempts in his Response to Boston's Motion to Dismiss to broaden the original counterclaims and cross-claims included in his Answer, and requests that this Court enter a declaratory judgment, in effect, that there can never be a basis under Federal law for a court to order transliterated ballots in response to a violation of Federal law.[5] See Docket #95, Secretary's

---

[5] In his original Answer and Counterclaim, the Secretary submitted only the four following claims:

> (1) "This Court should enter a declaratory judgment that St. 2006, c. 111, § 1, authorize or require the transliteration of candidate names into Chinese characters"; (2) "The Court should enter a declaratory judgment that the City has no authority to provide bilingual ballots with transliterated names in future municipal elections and, if necessary, should enjoin the City from doing so"; (3) "This Court should accordingly declare that the authorization that Chapter 111 provided to the City does not extend to the attempt, without the notice, consultation and approval that the statute requires, to add a

Answer to Complaint, Counterclaims, and Cross-Claims. The Secretary has not sought leave to amend his original counterclaims and cross-claims and, thus, such is not well-taken. See Fed. R. Civ. Pro. 15(a). Moreover, his expanded claim is an unprecedented attempt to limit the Federal courts' remedial powers to remedy violations under the Voting Rights Act.

Even though no violation of Federal law has been found, or even alleged against him, the Secretary attempts to limit, in a factual vacuum, this Court's authority to craft a remedial plan to address a potential violation of the Voting Rights Act. However, there is not need for the Court to address this issue now.

In cases involving the Voting Rights Act, the Supreme Court has held that district courts have "not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." Louisiana v. United States, 380 U.S. 145 (1965); Connor v. Finch, 431 U.S. 407 (1977). In order to fulfil this mandate, the Federal courts must have the authority "to tailor the remedy to fit the evil presented." United

---

requirement of transliteration to the bilingual ballots that the statute authorizes in Chapter 111"; and (4) "This Court should declare instead that the City has no authority to print any ballots for use in state and federal elections."

See Docket #95, Secretary's Answer to Complaint, Counterclaims, and Cross-Claims at ¶¶33, 38, 43, and 47.

States v. McLeod, 385 F.2d 734, 748 (5th Cir. 1967) (affirming a remedial plan that addressed voting rights infringements in Selma, Alabama.").

In fact, Congress intentionally provided courts with broad powers to fashion remedies to address violations of Section 2 of the Voting Rights Act:

> The basic principle of equity that the remedy fashioned must be commensurate with the right that has been violated provides adequate assurance, without disturbing the prior case law or prescribing in the statute mechanistic rules for formulating remedies in cases which necessarily depend upon widely varied proof and local circumstances. The Court should exercise its traditional equitable powers to fashion the relief so that it completely remedies the prior dilution of minority voting strength and fully provides equal opportunity for minority citizens to participate and to elect candidates of their choice.

S.Rep. No. 417 at 31, 1982 U.S.Code Cong. & Admin.News at 208. See also Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 16 (1971)(holding that the nature of the violation determines the scope of the remedy).

His request is not supported by law and is contrary to Supreme Court and Circuit precedent as well as the legislative history of the Voting Rights Act.

This remedial principle is well established in this Circuit in order to enforce all manner of civil rights statutes, including the Voting Rights Act, and this principle is absolutely necessary to enforce civil rights protecting vulnerable members of the community. Morgan v. O'Bryant, 671 F.2d 23 (1st Cir. 1982) (affirming aggressive remedies ordered by the District Court designed to desegregate Boston schools); Che v. Massachusetts Bay Transp. Authority, 342

F.3d 31 (1st Cir. 2003) (discussing equitable remedies in Title VII violations). After all, "[o]nce a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." Rosario-Torres v. Hernández-Colón, 889 F.2d 314, 321 (1st Cir. 1989).

There is no reason for this Court to determine whether there is a basis for placing such a limit on the remedial power of a Federal court. Here, where there has been no finding of any violation, no complaint filed alleging any violation, and thus no basis on which the Court could determine an appropriate remedy, such a limitation would be especially inappropriate.

## IV. CONCLUSION

The United States encourages this Court to grant the City's Motion to Dismiss. The Secretary fails to satisfy his burden of showing that any claim is ripe for review. He has demonstrated neither fitness nor hardship. Indeed, this Court has already held that "there is no present controversy before this Court." See Docket #104, Order Denying Clarification at 5. This Court should exercise restraint in deciding the allocation of responsibility presented under state law. As the Secretary acknowledges, these issues are best resolved by the state courts. See Docket #115, Secretary's Response to City's Motion to Dismiss at 5. Lastly, there

is no need for this Court to consider whether it has an inherent remedial power and whether to declare that transliteration is a remedy available to the Courts. His request is not supported by law and is contrary to Supreme Court and Circuit precedent as well as the legislative history of the Voting Rights Act. For these reasons, the United States urges the City's motion be GRANTED.

        Respectfully submitted,


        RENA J. COMISAC
        Acting Assistant Attorney General
        Civil Rights Division


        */s/ T. Russell Nobile*
        JOHN TANNER
        SUSANA LORENZO-GIGUERE
        T. RUSSELL NOBILE
        JARED M. SLADE
        STEVEN WRIGHT
        T.Russell.Nobile@usdoj.gov
        Attorneys, Voting Section
        Civil Rights Division
        United States Department of Justice
        Room 7247 NWB
        950 Pennsylvania Avenue, N.W.
        Washington, DC 20530
        (202) 307-1190 (phone)
        (202) 307-3961 (fax)


Date:       October 11, 2007

## CERTIFICATE OF SERVICE

      I, T. Russell Nobile, hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 11, 2007.

                                      */s/ T. Russell Nobile*
                                      T. Russell Nobile
                                      Trial Attorney, Voting Section
                                      United States Department of Justice